**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
William R. Baldiga
Daniel J. Saval
May Orenstein
Tally M. Wiener

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 15** |
| | : | |
| **FAIRFIELD SENTRY LIMITED,** | : | **Case No. 10-** |
| | : | |
| **Debtor in a Foreign Proceeding.** | : | |
| | : | |
| **In re:** | : | **Chapter 15** |
| | : | |
| **FAIRFIELD SIGMA LIMITED,** | : | **Case No. 10-** |
| | : | |
| **Debtor in a Foreign Proceeding.** | : | |

**DECLARATION OF KENNETH KRYS**

I, Kenneth Krys, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1.      I am a resident of the British Virgin Islands (the "BVI") and am licensed by the BVI Financial Services Commission as an insolvency practitioner. I am the founder and Chief Executive Officer of Krys & Associates (BVI) Ltd., a firm engaged in the provision of corporate recovery, insolvency and related services in the BVI. On July

21, 2009, Christopher Stride, also a resident of the BVI and a BVI-licensed insolvency practitioner, and I (the "Petitioners") were appointed jointly as the liquidators (the "Liquidators") of Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma"). Sentry and Sigma are the subject of separate proceedings pending before the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court") under Part VI, titled "Liquidation," of the Insolvency Act, 2003 of the BVI (the "BVI Act"). I submit this Declaration in support of the verified petitions filed by the Petitioners on behalf of Sentry and Sigma (together with the Verified Petition filed by Petitioner Christopher Stride on behalf of Fairfield Lambda Limited, the "Verified Petitions") commencing these cases under Chapter 15 of Title 11 of the United States Code (as amended, the "Bankruptcy Code"). The facts hereinafter set forth are based on my personal knowledge or, as indicated below, are derived from the books and records of Sentry and Sigma or from other sources, including court filings and statements of governmental agencies, that I consider to be reliable.

2.    Pursuant to the Verified Petitions, Petitioners seek, inter alia, recognition of the proceedings before the BVI Court with respect to Sentry (the "Sentry Proceeding") and Sigma (the "Sigma Proceeding") as "foreign proceedings" under section 1517 of the Bankruptcy Code.[1] As explained in more detail below, Sentry and Sigma were organized under the law of the BVI as so-called "feeder funds" for the purpose of investment with Bernard L. Madoff Investment Securities LLC ("BLMIS"). A third BVI-organized Fairfield entity, Fairfield Lambda Limited ("Lambda"), is also currently in liquidation

---

[1]    The Sentry Proceeding and the Sigma Proceeding are pending before the BVI Court under Matter Nos. BVIHCV2009/136 and BVIHCV2009/139 respectively.

proceedings (the "Lambda Proceeding") before the BVI Court.[2]  Pursuant to an Order of the BVI Court issued on April 23, 2009, Mr. Stride was appointed the sole liquidator of Lambda.  Mr. Stride, in his capacity as liquidator of Lambda, has concurrently sought recognition of the Lambda Proceeding in and by this Court and, in support of the Verified Petition filed on behalf of Lambda, joins in this Declaration to the extent it pertains to Lambda and the Lambda Proceeding.  See Declaration of Christopher Stride, In the Matter of Fairfield Lambda Limited, filed contemporaneously herewith (the "Stride Declaration").  Sentry, Sigma and Lambda are hereinafter collectively referred to as the "Debtors", and the BVI proceedings for the liquidation of the Debtors are hereinafter collectively referred to as the "BVI Proceedings."

3.     Sentry was the largest of the BLMIS feeder funds; Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency (respectively, Euro and Swiss franc) investment through purchase of shares of Sentry.  Sentry's offering documents provided that its shares, which were denominated in U.S. dollars, could be offered to "persons who are neither citizens nor residents of the United States and to a limited number of United States investors consisting of pension and profit sharing trusts, charities and other tax-exempt entities."  See Private Placement Memorandum Fairfield Sentry Limited, at cover page (the "Sentry PPM"), attached to this Declaration as part of Exhibit A.  Sigma's offering documents provided that its shares, which were denominated in Euros, could not be offered to "citizens, nationals or residents of, or institutions or other entities organized, chartered or resident in the United States."  See Private Placement Memorandum Fairfield Sigma Limited, at cover page (the "Sigma

---

[2]     The Lambda Proceeding is pending before the BVI Court under Matter No. BVIHCV 2009/74.

3

PPM"), also attached to this Declaration as part of Exhibit A. Lambda's offering documents, likewise, provided that its shares, which were denominated in Swiss francs, could not be offered to "citizens, nationals or residents of, or institutions or other entities organized, chartered or resident in the United States." See Private Placement Memorandum Fairfield Lambda Limited, at cover page (the "Lambda PPM"), attached to the Stride Declaration as Exhibit A.

4.     As of the end of October 2008, account statements issued by BLMIS showed Sentry having assets at BLMIS valued in excess of $7 billion.[3]  In fact, however, for years prior, BLMIS' liabilities to Sentry and other account holders had massively exceeded assets actually held by it.  In December 2008, it became publicly known that BLMIS had for many years, if not many decades, been operated by Bernard L. Madoff ("Madoff") as a massive Ponzi scheme.

5.     Following this revelation, the Debtors ceased what had been their routine operations, and the business purpose of the Debtors was permanently altered.  Whereas prior to December 2008, the stated and apparent business purpose of the Debtors was to achieve capital appreciation through investment, following the exposure of the Madoff scheme, the Debtors' business and purpose has become the preservation and realization of the Debtors' assets for purposes of ultimate, orderly and equitable distribution, in compliance with BVI insolvency law, to creditors and other lawful claimants.

6.     As explained herein, other than the Liquidators, no persons currently purport to administer the Debtors' interests anywhere or manage or control their affairs

---

[3]     As of the end of October 2008, books and records of Sigma and Lambda showed, respectively, holdings of approximately EUR 723 million and 39 million CHF (Swiss francs) in investments in Sentry.

with the sanction of the BVI Court.[4]   The Debtors' present and former contract counterparties, including administrative agents, payment agents, and depositories, deal exclusively with the Liquidators as representatives of the Debtors.  As discussed below, contractual relations between Sentry and Sigma and the entity that previously served as their investment manager, (an affiliate of the Fairfield Greenwich Group ("FGG")), have all been formally terminated by the Liquidators and have not been in effect for almost a year.[5]  Certain non-Madoff assets of the Debtors have been or are in the process of being turned over to the Liquidators by the custodians of such assets pursuant to and under the direction and management of the Liquidators.

7.     Moreover, since the appointment of the Liquidators, third parties, including Irving H. Picard, in his capacity as Trustee for the liquidation of BLMIS (the "Madoff Trustee"), have, with regard to the affairs of the Debtors, consistently dealt with the Liquidators as to the business affairs of Sentry, Sigma and Lambda, including with respect to matters arising out the claims asserted by the Madoff Trustee against Sentry on behalf of the estate in liquidation of BLMIS (the "BLMIS Estate").  As discussed below,

---

[4]     As discussed in Part III.B. below, the derivative plaintiffs in the *Morning Mist* action purport to represent Sentry's interests (by asserting claims belonging to Sentry) in connection with the litigation these plaintiffs are pursuing against certain Fairfield Greenwich Group and PricewaterhouseCoopers defendants and other service providers.  The derivative plaintiffs have asserted their claims without the approval of the BVI Court, and the defendants to the *Morning Mist* action assert that the derivative plaintiffs are not the correct representatives of Sentry.  See Bruhl v. Kingate Global Fund Ltd., Index No. 601526/2009 (N.Y. Sup. Ct. Jan. 25, 2010) (dismissing derivative case in almost identical situation based on the absence of court authorization of the derivative action), attached as Exhibit B to this Declaration.  Sentry has fully reserved its rights regarding the impropriety of the *Morning Mist* plaintiffs' actions and their lack of standing to assert claims on behalf of Sentry.  See Morning Mist Holdings Ltd. et al. v. Fairfield Sentry Limited, Stipulation and Order Re Voluntary Discontinuance (N.Y. Sup. Ct. Mar. 1, 2010) (voluntarily dismissing application of Morning Mist plaintiffs for order authorizing them to file derivative suit), attached as Exhibit C to this Declaration.

[5]     Sentry and Sigma formally terminated their relationships with the investment manager as of June 30, 2009.  The investment manager formally terminated its relationship with Lambda as of September 30, 2009.

the Madoff Trustee has expressed his non-objection to the requested recognition of the BVI Proceedings, noting: "As we have indicated from the outset, we encourage the Liquidators to take the steps necessary to recover funds in order to pay any judgment or settlement of the Trustee's claims against Fairfield Sentry." See Letter from counsel for the Madoff Trustee to the Liquidators' counsel dated April 20, 2010, attached to this Declaration as Exhibit D.[6]

8.    I am advised by counsel that Chapter 15 recognition requires that a petition be brought by a "foreign representative" of a "foreign proceeding" as such terms are defined in, respectively, sections 101(24) and 101(23) of the Bankruptcy Code. I am further aware that in order to be recognized under Chapter 15 as a foreign main proceeding or a foreign nonmain proceeding, sufficient evidence must be shown that the foreign proceeding is either pending in the debtor's "center of main interests" ("COMI") or where the debtor has an "establishment," in each case as these requirements have been interpreted for purposes of Chapter 15 recognition. Part I of this Declaration sets forth

---

[6]    The letter, reproduced below and in Part IV, infra, provides as follows:

It is our understanding from our prior discussions with you, Kenneth Krys and Christopher Stride, the Joint Liquidators of Fairfield Sentry Limited, are considering filing proceedings in furtherance of their duties as Liquidators in the United States Bankruptcy Court in the Southern District of New York. It is further our understanding the Liquidators will not be seeking to stay any actions filed by the Trustee against Fairfield Sentry.

The purpose of this letter is to inform you the Trustee has no intention of opposing or interfering with any such filing by the Liquidators as you have described at this time. Obviously the Trustee reserves the right to contest actions in any such proceeding in the future if he deems it in the best interests of the BLMIS Estate and the claimants thereto.

As we have indicated from the outset, we encourage the Liquidators to take the steps necessary to recover funds in order to pay any judgment or settlement of the Trustee's claims against Fairfield Sentry.

Exhibit D.

the evidence in support of the characterization of the Liquidators as foreign representatives and of the BVI Proceedings as foreign proceedings. Parts II through IV provide evidence regarding the historical operations of the Debtors, an overview of their current operations, status, assets and liabilities and an explanation of the Debtors' need for recognition and the relief being requested. Part V sets forth the evidence relating to the administration of the Debtors' interests in the BVI such as to support a conclusion by the Court of COMI in the BVI. Part VI states the manner in which notice of BVI-based proceedings has been provided to the Debtors' investors and creditors to date and proposes that notice of proceedings in the United States be given in the same manner.

I.    **The Liquidators and the BVI Proceedings Meet the Requirements of "Foreign Representatives" and "Foreign Proceedings" Under the Bankruptcy Code.**

9.     Mr. Stride and myself were jointly appointed as the Liquidators of Sentry and Sigma by Orders of the BVI Court dated July 21, 2009. A true and complete certified copy of the Order appointing us as the liquidators of Sentry is attached to the Verified Petition submitted on behalf of Sentry as Exhibit A thereto. A true and complete certified copy of the Order appointing us as the liquidators of Sigma is attached to the Verified Petition submitted on behalf of Sigma as Exhibit A thereto.[7] By virtue of the Order of the BVI Court dated May 7, 2010 and entered on May 11, 2010, Mr. Stride and I were expressly authorized by the BVI Court to seek recognition of the BVI Proceedings by such Court. True and complete certified copies of this Order are attached to each of the Verified Petitions as Exhibit B thereto.

---

[7]     A true and complete certified copy of the Order appointing Mr. Stride as the liquidator of Lambda is attached to the Verified Petition submitted on behalf of Lambda as Exhibit A thereto.

10.    I am advised by counsel that, as such, we are "foreign representatives" within the meaning of 11 U.S.C. § 101(24). Declaration of William Hare, filed contemporaneously herewith (the "Hare Declaration") ¶¶ 13-14. I am further advised by counsel that the BVI Proceedings are "foreign proceedings" within the meaning of 11 U.S.C. § 101(23). Id. ¶¶ 20-22.

## II.    Background to the Debtors' BVI Proceedings.

### A.    Operation of the Debtors Prior to December 2008.

11.    Each of the Debtors was organized in 1990 as an International Business Company under the laws of the BVI,[8] id. ¶ 29, for the purpose of operating as an investment fund and maintains offices only in the BVI, where it is, and has always been, incorporated. The Debtors' Registered Office, which maintains their statutory books and records, the Debtors' Registered Agent, which maintains their registered resolutions and minutes, and the Debtors' Registered Secretary, which maintains their corporate books, records and minutes, are in the BVI. The Debtors were recognized as professional funds under section 20(1) of the BVI Mutual Funds Act of 1996. Id. ¶ 30. As such, the Debtors were at all times within the regulatory ambit of the Financial Services Commission of the BVI, which had the statutory powers (amongst others) to direct the Debtors to furnish information or provide access to their books and records. Id.

12.    While the Memorandum of Association for each of the Debtors incorporated certain restrictions on the ability of the Debtors to carry out business in the

---

[8]    As a result of new legislation adopted in the BVI in 2004, each of the Debtors was subsequently re-registered as a Business Company under the BVI Business Companies Act of 2004.

BVI (restrictions that were based on BVI law that was subsequently repealed)[9] id. ¶ 31,

these restrictions did and do not impact the ability of the Debtor funds to have a principal

place of business in the BVI and to administer all of their interests there. Id. For

example, the funds could, in compliance with the restrictions, hire local functionaries and

---

[9] The Memorandum of Association of each of the Debtors include the following provisions:

(2) The Company may not:

(a) carry on business with persons resident in the British Virgin Islands;
(b) own an interest in real property situated in the British Virgin Islands, other than a lease referred to in paragraph (e) of subclause (3);
(c) carry on banking or trust business, unless it is licensed under the Banks and Trust Companies Act, 1990;
(d) carry on business as an insurance or reinsurance company, insurance agent or insurance broker, unless it is licensed under an enactment authorising it to carry on that business;
(e) carry on the business of company management unless it is licensed under the Company Management Act, 1990; and
(f) carry on the business of providing the registered office or the registered agent for companies incorporated in the British Virgin Islands.

(3) For purposes of paragraph (a) of subclause (2), the Company shall not be treated as carrying on business with persons resident in the British Virgin Islands if:

(a) it makes or maintains deposits with a person carrying on banking business within the British Virgin Islands;
(b) it makes or maintains professional contact with solicitors, barristers, accountants, bookkeepers, trust companies, administration companies, investment advisers or other similar persons carrying on business within the British Virgin Islands;
(c) it prepares or maintains books and records within the British Virgin Islands;
(d) it holds, within the British Virgin Islands, meetings of its Directors or members;
(e) it holds a lease of property for use as an office from which to communicate with members or where books and records of the Company are prepared or maintained;
(f) it holds shares, debt obligations or other securities in a company incorporated under The International Business Companies Ordinance or under The Companies Act; or
(g) shares, debt obligations or other securities in the Company are owned by any person resident in the British Virgin Islands or by any company incorporated under The International Business Companies Ordinance or under the Companies Act.

The Memoranda of Association of Sentry and Sigma are attached hereto as Exhibit E. The Memorandum of Association of Lambda is attached to the Stride Declaration as Exhibit B. The language in the Memoranda of Association quoted above tracks Part II, *Constitution of Companies*, of the International Business Companies Act (Cap. 291), BVI. This Act was repealed in full by the Business Companies Act 2004, BVI effective January 1, 2007. See Hare Declaration ¶ 31.

service providers to provide all of the services associated with their operations, including a local investment manager or advisor, and they could lease space for use as an office. They could maintain all of their assets with a local trust company or custodian. Back office functions could be handled by a local administration company. Id. Accordingly, such restrictions did and do not negatively impact the ability of the Debtors to engage in their day-to-day activities in and out of the BVI.

13. Offering materials provided to prospective investors in the Debtors described the Debtors as BVI entities, subject to supervision of the Financial Services Commission in the BVI. See Sentry PPM & Sigma PPM, attached to this Declaration as Exhibit A, at (iv); see also Lambda PPM, attached to the Stride Declaration as Exhibit A, at (i) – (ii). The reports of the directors of the Debtors and financial statements of the Debtors also described the Debtors as BVI entities. See, e.g., Directors' report and financial statements for the year ended December 31, 2004 Fairfield Sentry Limited Road Town, Tortola British Virgin Islands, attached to this Declaration as Exhibit F.

14. The founders and principal officers of the Debtors were Walter M. Noel, Jr., Andres Piedrahita and Jeffrey Tucker, each of whom was affiliated with the Fairfield Greenwich Group ("FGG"). The overall management of the Debtors was committed to their respective Boards of Directors, all of which included representation by FGG representatives. The Boards also had independent directors. In the years preceding the exposure of Madoff's fraud, the investment manager of each of the Debtors was Fairfield Greenwich (Bermuda) Ltd., an affiliate of FGG organized under the laws of Bermuda ("Fairfield Greenwich Bermuda"). See Sentry PPM, at 2, 7; Sigma PPM, at 2-3, 5-6; Lambda PPM, at 2-3, 5-6.

15.    The stated investment objective of Sentry was to achieve capital appreciation of its assets primarily through investment with BLMIS. Sentry PPM, at 9-10. The stated investment objectives of Sigma and Lambda were to achieve capital appreciation through investment in shares of Sentry. Sigma PPM, at 8; Lambda PPM, at 14. According to the Debtors' offering materials, BLMIS was to utilize a "nontraditional options trading strategy," which was described as "split strike conversion." Sentry PPM, at 9-10. Consistent with this stated investment policy, substantially all of Sentry's assets (some 95%) were turned over to BLMIS for supposed utilization in the described options trading program. Investments in Sigma, whose shares were subscribed for in Euros, and investments in Lambda, whose shares were subscribed for in Swiss Francs, were channeled to Sentry for further investment in BLMIS in accordance with Sigma's and Lambda's respective private placement memoranda. Sigma PPM, at 8-9; Lambda PPM, at 8. Up to 5% of the Debtors' assets were available for investment in non-Madoff directed activities. Sentry PPM, at 10; Sigma PPM, at 9; Lambda PPM, at 8-9. Fairfield Greenwich Limited, was Sentry's placement agent, and oversaw the marketing of its shares. Sentry PPM, at 7.

16.    As of the dates that their respective proceedings in the BVI were commenced, Sentry had issued 4,692,549.74 shares with a nominal value of $0.01 per share, which were held by 725 Registered Shareholders; Sigma had issued 3,198,820.94 shares with a nominal value of EUR 0.01 per share, which were held by 228 Registered Shareholders; and Lambda had issued 202,904.72 shares with a nominal value of 0.01 CHF (Swiss Francs), held by 24 Registered Shareholders.

17.     Day-to-day administrative services, as required by the Debtors, were provided by Citco Fund Services (Europe) B.V., headquartered in The Netherlands, which acted as administrator, registrar and transfer agent.[10]  Citco Bank Nederland, N.V., also a Dutch entity, through its Dublin Branch, acted as custodian and bank for Sentry and as bank and broker for Sigma and Lambda.[11]  Shares of Sentry were listed on the Irish Stock Exchange in Dublin.  Prior to the fiscal year ended 2006, the Debtors' auditors were PricewaterhouseCoopers Accountants N.V. of Rotterdam, The Netherlands ("PwC Netherlands").  From 2006 on, PricewaterhouseCoopers LLP of Toronto Canada ("PwC Canada") served as the Debtors' auditors.

**B.     The Madoff Disclosures.**

18.     In December 2008, it became publicly known that BLMIS had been operated for many years by Madoff as a massive Ponzi scheme.  Although Madoff had purported to invest funds obtained from investors and feeder funds in securities, in reality, funds obtained from investors were not used to purchase securities or to engage in the described options trading strategy.  Instead, new funds obtained from investors, including funds obtained from Sentry, were used by Madoff to fund withdrawals from accounts held by other investors with BLMIS, including Sentry, to pay returns of capital and/or fictitious profits to BLMIS account holders, or were misappropriated by Madoff for other purposes.  As a result of Madoff's perpetration of this massive fraud, billions of dollars of investor funds invested with BLMIS, and supposedly maintained by its

---

[10]     Each of the Debtors' Administration Agreements with Citco Fund Services (Europe) BV is governed by BVI law.

[11]     Citco Bank Nederland, N.V. no longer provides any active functions in administrating the Debtors' assets.

management, including the funds held on behalf of the Debtors, had, by December 2008, been paid out by BLMIS as returns of principal or distributions of fictitious profits or were otherwise dissipated and misappropriated by Madoff and/or others acting in concert with him.

19.     Until the disclosure of the Madoff fraud, investors in the Debtors generally had the right to redeem shares at their net asset value ("NAV") as determined by the Debtors in reliance upon account information obtained from BLMIS. Share redemptions were generally funded by the Debtors from withdrawals made by the Debtors' managers against Sentry's accounts held at BLMIS.

### C.     Developments Post-December 2008 as to Debtors' Business and Operations.

20.     At a meeting held on December 18, 2008, following the arrest of Madoff and the commencement of the liquidation of BLMIS, Sentry's Board of Directors resolved to suspend all NAV calculations and redemptions of Sentry shares. On account of his role as an owner and principal of FGG, Sentry's investment manager, Walter Noel, recused himself from this meeting.

21.     On December 22, 2008, the Debtors' Boards of Directors began reaching out to their respective shareholders via correspondence from the Debtors' registered offices in the BVI to keep shareholders apprised of the steps the Boards were taking in the wake of the collapse of BLMIS. Representative examples of such correspondence are attached as Exhibit G to this Declaration.[12]

---

[12]     By letters dated May 8, 2009 (included as part of Exhibit G), the Boards of Directors of Sentry and Sigma advised their respective shareholders to reach out to the law firm of Conyers Dill & Pearman, a BVI based law firm which then served as Sentry and Sigma's BVI counsel, if they wished to communicate with Sentry and Sigma.

22.     On February 24, 2009, Sentry's Board of Directors resolved to form a Litigation Committee composed of Sentry's non-FGG (i.e., unconflicted) directors, Jan Naess and Peter Schmid. The Litigation Committee was granted "all power and authority as may be necessary or desirable in connection with considering, commencing, negotiating, furthering, settling, compromising, completing or terminating any litigation to be taken by the Fund against any person, or taken against the Fund by any person . . . and to carry out any and all other actions related in any way with the foregoing." See Minutes of February 24, 2009 Sentry Board Meeting, attached hereto as Exhibit H. The minutes of Sentry's Board meetings reflect that Walter Noel participated in only two Sentry Board meetings following the formation of the Litigation Committee: (i) a March 5, 2009 meeting, during which it was resolved that Messrs. Naess and Schmid would have signing authority over Sentry's bank accounts with Citco, and (ii) a May 27, 2009 meeting – when the Board resolved to de-list Sentry from the Irish Stock Exchange. Of the nineteen Sentry Board meetings held after December 18, 2008 and before July 10, 2009 (which appears to be when the Sentry Board last met, before the appointment of the Liquidators), all but two of these meetings were either held in person at the offices of Conyers, Dill & Pearman ("Conyers"), the Debtors' primary counsel at the time, in the BVI, or were originated telephonically by Conyers.[13]

23.     On May 28, 2009, the Irish Stock Exchange officially de-listed Sentry.

24.     By letters of Messrs. Naess and Schmid dated May 29, 2009, Sentry and Sigma separated themselves from Fairfield Greenwich Bermuda, by notifying it of the

---

[13]     With respect to Sigma and Lambda, the Board meetings held after December 18, 2008 and before July 10, 2009 also were held either in person at Conyers' BVI offices or were originated telephonically by Conyers. Walter Noel participated in Sigma's March 5, 2009 meeting. It appears that neither Sigma's nor Lambda's Boards met on May 27, 2009. By then Lambda had already been placed in liquidation.

termination of the investment manager agreement as of June 30, 2009,[14] and earlier, on May 29, 2009, Sentry, acting on the authority of its Board of Directors, commenced legal proceedings against Fairfield Greenwich Bermuda and other affiliates of FGG in the Supreme Court of the State of New York, New York County. A true and complete copy of the Summons and Complaint filed and served to commence the action against the Fairfield Greenwich Bermuda and other defendants associated therewith and with FGG, Fairfield Sentry Limited v. Fairfield Greenwich Group, et al., Index No. 601687/2009, is attached as Exhibit J to this Declaration.

25.     By then, a Lambda creditor and Sentry and Sigma shareholders had petitioned the BVI Court seeking appointment of liquidators.

26.     On December 22, 2008, Dresdner Bank AG, located in London, and now known as Commerzbank AG ("Kleinwort"), issued a default notice to Lambda for the immediate repayment of indebtedness outstanding in connection with a mortgage. The debt remained unsatisfied and, on February 27, 2009, Kleinwort applied to the BVI Court seeking the appointment of a liquidator over Lambda. A true and complete copy of the First Declaration of Jerry Deshield Samuel, submitted in support of Kleinwort's Originating Application, is attached as Exhibit D to the Stride Declaration.

27.     On April 21, 2009, ten shareholders applied to the BVI Court for the appointment of a liquidator over Sentry. Hare Declaration ¶ 9. As set forth in the Amended Notice of Originating Application for Appointment of Liquidator, attached to this Declaration as Exhibit K, the petitioning shareholders and their addresses are:

---

[14]     These letters are attached as Exhibit I to this Declaration. The investment manager terminated its investment manager agreement with Lambda, effective as of September 30, 2009, by letter dated September 15, 2009, and attached as Exhibit C to the Stride Declaration.

**(i) Deutsche Bank International (Cayman) Limited Trustee for The Elvira 1950 Trust**

        Boundary Hall Cricket Square

        171 Elgin Ave.

        Georgetown, Grand Cayman, Cayman Islands;

**(ii) Deutsche Bank International (Jersey) Limited Trustee for Loana Ltd**

        PO Box 530 Lefebvre House

        Lefebvre Avenue

        St Peter Port Guernsey, CI;

**(iii) Paolo Paolini Remia**

        Calle Had. Del Llave No. 10

        Bosq. De Echevaray, Naucalpan

        Estado de Mexico, C.P. 53310, Mexico;

**(iv) Securities & Investment Company (SICO) Bahrain;**

        P.O. Box 1331

        Manama, Kingdom of Bahrain

**(v) Blythel Associated Corp.**

        Swiss Tower, 16th Floor, 53 E. Street, Urb. Marebella

        P.O. Box 0932-00232, World Trade Center

        Panama, Republic of Panama;

**(vi) Wall Street Securities S.A.**

        Calle 48 & Aquilino de la Guardia

        Panama, Republic of Panama;

**(vii) Enrique Descamps Sinibaldo**

        444 Brickell Avenue, Suite 53-5011

        Miami, Florida 33131;

**(viii) Deutsche Bank International (Jersey) Limited Trustee for Bonaire Limited**

        PO Box 530 Lefebvre House

Lefebvre Avenue, St Peter Port Guernsey, CI;

(ix) **Centro Inspection Agency-Defined Benefit Plan**

439 Newman Springs Road

Lincroft, NJ 07738; and

(x) **Erling Speer**

340 Royal Palm Way, Ste 101

Palm Beach, FL 33480

28.　　On April 23, 2009, Belgian shareholder AXA Private Management ("AXA") applied to the BVI Court for the appointment of a liquidator over Sigma. A true and correct copy of the Affidavit of Robert Briant, submitted in support of AXA's application for a consent order to be granted with respect to Sigma's liquidation, is attached as Exhibit L to this Declaration. See also Hare Declaration ¶ 10. Also on April 23, 2009, Mr. Stride was appointed as the liquidator of Lambda. See Stride Declaration ¶ 1; Hare Declaration ¶ 11; Verified Petition submitted on behalf of Lambda, Exhibit A.

29.　　On July 21, 2009, I, jointly with Mr. Stride, were appointed as the Liquidators for the Sentry Proceeding and the Sigma Proceeding. See Verified Petitions submitted on behalf of Sentry and on behalf of Sigma, respectively, Exhibit A; Hare Declaration ¶ 12.

30.　　On August 6, 2009, an informal liquidation committee was established by the Liquidators for Sentry consisting of five investor nominated representatives: Bank Hapoalim (Suisse) SA, EVG Bank Limited, Natexis Banques Populaire CCF, Nordea Life and Pensions, and UBP Luxembourg (representing various entities) (the "Liquidation Committee").[15] The Liquidation Committee is *ad hoc* by nature and was

---

[15]　　Liquidation Committee members Natexis Banques Populaire CCF and UBP Luxembourg (representing various entities) are represented by BVI-based counsel.

formed to provide the Liquidators with a sounding board on the views of the general body of investors and to assist the Liquidators generally. The BVI insolvency regime contains no provision for a committee to be formed consisting of investors. As the majority of Sentry's stakeholders are shareholders, the Liquidators wanted to give them the opportunity to actively participate in the administration of the liquidation. The Liquidators consult on a regular basis with the Liquidation Committee to inform them of developments and ascertain the views of its members on key issues in the BVI Proceedings.[16]

31.     Additionally, the Liquidators have established official websites for each of the Debtors (collectively, the "Websites") to which materials concerning the BVI Proceedings are posted.[17]

## III.    Assets and Liabilities

32.     Due to the disruption in the affairs of the Debtors following the disclosure of the Madoff fraud and notwithstanding the diligent efforts of the Liquidators, a fully comprehensive and accurate description of the Debtors' assets and liabilities is not yet available. Specifically, for an extended period following the Madoff disclosures, only limited information and cooperation was obtained by the Debtors from the former investment manager, Fairfield Greenwich Bermuda. The Liquidators have received no

---

[16]     With respect to Sigma, only two investors expressed a desire to form a committee and no committee was in consequence formed. With respect to Lambda, which has only approximately 24 registered shareholders and very few other stakeholders, Mr. Stride, who serves as Lambda's Liquidator, did not seek appointment of a committee. The reason for this is that Lambda has no assets apart from its claims in the BLMIS liquidation and possible inter-debtor and other claims; therefore, Mr. Stride did not wish to incur costs over and above those required to be incurred by fulfillment of his statutory obligations.

[17]     The addresses of the Websites are: http://www.fairfieldsentry.com/, http://www.fairfieldsigma.com/ and http://www.fairfieldlambda.com/.

cooperation or information from Walter Noel, the representative of FGG who formerly served on the Debtors' boards. The Liquidators have conducted extensive examination into the Debtors' books and records accessible to them and have met with a number of relevant parties to obtain information, including the Debtors' directors, various counsel who performed services for the Debtors in the BVI, the Debtor's registered agent in the BVI, Codan Trust Company (B.V.I.) Ltd., and the two independent directors, Jan Naess and Peter Schmid. A summary of the present status of the assets of the Debtors based on such information as is available currently is set forth below.

### A.    Tangible and Liquid Assets.

33.    Shortly after the Madoff disclosures made in December 2008, it became known that all of the securities purportedly held on behalf of the Debtors with BLMIS as custodian or subcustodian were fictitious. At such point in time (December 2008), the Debtors' principal tangible and liquid assets are believed to have been (i) $132,771,173 of uninvested monies held on account with by Citco Bank Nederland B.V. (Dublin Branch) (the "Citco Accounts"), of which $70,099,115 was held in a Sentry account (the "Sentry Citco Account") and $62,672,058 million was held in a Sigma account (the "Sigma Citco Account"), and (ii) non-BLMIS investments of Sentry, generally consisting of share or membership interests in hedge funds (the "Non-Madoff Investments"). Prior to termination of the investment management agreements formerly in place between the Debtors and their former investment manager, these Non-Madoff Investments had purportedly been managed by Fairfield Greenwich Bermuda. Based on information provided by Fairfield Greenwich Bermuda and other sources, these Non-Madoff Investments had an approximate value of $79.5 million as of the Liquidators'

appointment. To the extent that the location of the custodian of the Non-Madoff Investments is known by the Debtors, such custodians are located in Ireland. The jurisdictions of organization of the entities that are the issuers of the Non-Madoff Investments are believed to be the Cayman Islands, the BVI, Luxembourg or are unknown to the Liquidators at the present time.

34. The Sentry Citco Account was attached in connection with two proceedings brought in The Netherlands, each by a shareholder. On or about December 23, 2008, Stichting Shell Pensioenfonds obtained a pre-judgment attachment; on or about April 18, 2009, Atlanta Business Inc. obtained a pre-judgment attachment. The funds in the Sentry Citco Account remain subject to attachment and the Liquidators are reviewing various strategies for their release. With the agreement and consent of the Madoff Trustee, all of the funds held in the Sigma Citco Account ($62,411,835.27 and Euros 185,873.49) and unattached portions of the Sentry Citco Account, initially consisting of $11,537,476.11 of liquidations and/or redemptions of Non-Madoff Investments which were received into the Sentry Citco Account (see paragraph 35, infra), were transferred to a UK-based escrow account with Clydesdale Bank (the "Clydesdale Account").

35. Following the exposure of the Madoff fraud, the Debtors' remaining directors determined to liquidate or redeem all of the Non-Madoff Investments. Since their appointments, the Liquidators have taken over this work and have continued, implemented and managed that strategy. To date, $46,987,184 (which includes the $11,537,476.11 amount detailed in paragraph 34 above) of Sentry's assets have been redeemed or liquidated, and substantially all of the proceeds from these Non-Madoff Investments were deposited into the Clydesdale Account under the control and direction

of the Liquidators after first being sent to the Sentry Citco Account.[18]  Before the transfer

of certain of these funds from the Clydesdale Account to accounts of Sentry and Sigma in

the BVI (see paragraph 36 infra), the Clydesdale Account held $101,660,978 in the

aggregate, of which $39,057,517 was allocable to Sentry and $62,603,462 was allocable

to Sigma.

36.     Pursuant to a further agreement entered into between the Madoff Trustee

and the Liquidators, approximately $17,000,000 of Sentry funds and approximately

$3,000,000 of Sigma funds have been transferred from the Clydesdale Account to Sentry

and Sigma accounts at Scotiabank British Virgin Islands, a commercial bank in the BVI

(the "Sentry BVI Scotia Account" and the "Sigma BVI Scotia Account" and, collectively,

with the Sigma BVI VP Account, the "Funds' BVI Accounts").  The monies in the

Clydesdale Account and the Funds' BVI Accounts are to be invested at the direction and

under the control of the Liquidators.  Transfers and withdrawals of such funds as

necessary for payment of liquidation-related administration expenses and other specified

expenses are subject to certain notice and review rights by the Madoff Trustee, and any

other transfer or withdrawal requires the Madoff Trustee's consent.

37.     As of the date of this Declaration, the tangible, liquid funds of Sentry and

Sigma are as follows:

|  |  |
|---|---|
| Sentry Citco Account (Ireland): | $73,008,174 |
| Clydesdale Account (Sentry) (UK): | $22,057,464 |
| Clydesdale Account (Sigma) (UK): | $59,603,409 |

---

[18]     Additionally, $316,952 of Sigma assets have been redeemed, and this sum, less certain
costs of administration, is being held by the Liquidators in VP Bank and Trust Company (BVI) in
the BVI (the "Sigma BVI VP Account").

Sentry BVI Scotia Account (BVI): $16,999,955

Sigma BVI Scotia Account (BVI): $2,999,955

Sigma BVI VP Account (BVI): $311,191

38.     Lambda holds approximately 0.33% of shares in Sentry. Sigma holds approximately 6.86% of shares in Sentry and a debt due from Sentry, pursuant to a promissory note dated 26 February 2009, in the amount of EUR 80,000. In addition, each of the Debtors is a co-party to a lease of property in the BVI located in Cane Garden Bay, Road Town, Tortola. The property houses books and records and stores documents produced to the Liquidators for review.

**B.     Claims and Causes of Action.**

39.     Apart from their liquid assets, the Debtors' principal assets are their claims and causes of action. Efforts by the Liquidators to identify, preserve and assert these claims are ongoing. To date, the following claims have been asserted by or on behalf of the Debtors:

> a.  <u>Customer claims in the Liquidation of BLMIS pending before the United States Bankruptcy Court for the Southern District of New York</u>. As discussed below, customer claims under the Securities Investor Protection Act ("<u>SIPA</u>") have been submitted on behalf of Sentry, Sigma and Lambda. The amounts claimed are:
>
> | | |
> |---|---|
> | Sentry: | $6,284,321,581.00 |
> | Sigma: | $773,635,188.00 |
> | Lambda: | <u>$36,676,205.92</u> |
> | | |
> | Total | $7,094,632,974.92 |
>
> b.  <u>BVI writs issued against fictitious profit redeemers</u>. Beginning in the fall of 2009, the BVI Court issued a total of six writs against subscribers, including financial institutions, to whom fictitious profits were paid prior to December 2008. Although only six writs were issued, each writ names multiple defendants, such that the writs cover redemptions in the total

amount of $152 million made by 160 subscribers. The claims made in these writs seek restitution of the amounts paid to these subscribers. The writs were issued to prevent claims from becoming time barred, but they have not yet been served on defendants. In order to prevent the writs from expiring, they must be served within a year of issue (that is, approximately six months from now).

c. New York civil actions against fictitious profit redeemers. Beginning in April 2010, the Debtors began filing actions against redeemers in New York, rather than the BVI, because of consent-to-jurisdiction provisions in the relevant subscription agreements, giving New York courts jurisdiction over foreign entities who might be otherwise be difficult to pursue. As of the date of this filing, the Debtors have commenced, by filing Summonses with Notice, 70 civil actions against subscribers to whom transfers of fictitious profits were made and against unknown parties (John Does) believed to be the beneficial holders of the monies paid to subscribers acting as nominees. These actions cover redemptions made by 70 subscribers in a total amount in excess of $3 billion, which represents the total amount of redemptions taken by the subscribers named in these actions from the last redemption that was not already time barred to December 2008. The claims in these actions seek, inter alia, restitution of amounts paid to subscribers on legal and equitable grounds. Debtors have 120 days from the date of filing of a particular action to serve the summons on the respective defendant.

d. New York civil action against FGG and related parties. On May 29, 2009, Sentry commenced a civil action in the Supreme Court for the State of New York against its former investment advisors, including FGG, Fairfield Greenwich Bermuda, Fairfield Greenwich Advisors LLC, Fairfield Greenwich Limited, Fairfield International Managers, Inc. and related individuals. In this action, Sentry has asserted claims for breach of contract, breach of fiduciary duty, unjust enrichment, rescission and other statutory and equitable claims arising out of its contractual relationship with defendants and defendants' mismanagement of fund assets. The damages sought in this action include more than $900 million in fees paid to the defendants for purported investment advice. Sentry filed the action on May 29, 2009; defendants thereafter removed the action to federal court, and Sentry moved to remand. The federal court granted Sentry's remand motion on December 23, 2009, and the action is now pending in the Commercial Division of the Supreme Court for the State of New York. The defendants in this action have moved to stay all proceedings pending a decision on motions to dismiss filed in another proceeding captioned *Anwar et al. v. Fairfield Greenwich Limited, et al.*, 09-CV-0118 (S.D.N.Y.).[19] In accordance with State Court's scheduling

---

[19]    *Anwar* is an additional proceeding relating to the Debtors pending in the United States District Court for the Southern District of New York. This action is a putative class action

order, Sentry opposed this motion with respect to its direct action against the defendants. The defendant's motion is presently *sub judice*. *Fairfield Sentry Limited (in liquidation) v. Fairfield Greenwich Group, et al.*, Index No. 601687/2009 (N.Y. Sup. Ct.) (*"Fairfield Sentry"*).

e. <u>New York purported derivative action</u>. Two purported shareholders of Sentry have commenced a putative derivative action in the Supreme Court for the State of New York, *Morning Mist Holdings Limited et al. v. Fairfield Greenwich Group, et al.*, 09-CV-5012 (N.Y. Sup. Ct.) (*"Morning Mist"*), for and on behalf of Sentry against certain FGG defendants, PwC Canada, PwC Netherlands and other service providers. Sentry is named as a nominal defendant. In this action, the derivative plaintiffs purport to assert claims on behalf of Sentry for, *inter alia*, breach of contract, breach of fiduciary duty, and negligent misrepresentation against FGG defendants, and similar claims against PwC Canada, PwC Netherlands and other service providers. This action has been consolidated for administrative purposes with *Fairfield Sentry*, the civil action discussed in the preceding subparagraph. The defendants in *Morning Mist*, which include almost all of the defendants in *Fairfield Sentry*, have also moved to stay this proceeding pending the outcome of motions to dismiss filed in *Anwar et al. v. Fairfield Greenwich Limited, et al.*, 09-CV-0118 (S.D.N.Y.), and the stay motion in connection with *Morning Mist* is also *sub judice*.[20]

## C. Assets and Liabilities Related to the BLMIS Liquidation.

40. Pursuant to an adversary proceeding filed by the Madoff Trustee in connection with the pending SIPA and bankruptcy proceedings, <u>Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC</u>, SIPA

---

brought on behalf of a class of investors in Sentry, Sigma, Greenwich Sentry L.P. and Greenwich Sentry Partners, L.P. The defendants are FGG and related parties, PwC Canada, PwC Netherlands and other service providers. None of the Debtors is a party to this action. The claims asserted in this action include claims for violations of federal securities laws, fraud, negligent misrepresentation, gross negligence, breach of fiduciary duty and breach of contract. The defendants in these actions submitted motions to dismiss on December 22, 2009; opposition briefs were submitted on March 22, 2010; reply briefs were filed on May 21, 2010; and plaintiffs' sur-reply brief is due by June 15, 2010. Oral argument will follow.

[20] Sentry has fully reserved its rights regarding the impropriety of the *Morning Mist* plaintiffs' actions, which were not authorized by the BVI Court. See note 4, supra; Morning Mist Holdings Ltd. et al. v. Fairfield Sentry Limited, Stipulation of Order re Voluntary Discontinuance (N.Y. Sup. Ct. Mar. 1, 2010) (voluntarily dismissing application of Morning Mist plaintiffs for order authorizing them to file derivative suit), attached as Exhibit C to this Declaration.

Liquidation No. 08-1789 (BRL) (the "BLMIS SIPA Proceeding"), the Madoff Trustee

seeks to recover approximately $3.5 billion from Sentry and others on account of

transfers allegedly made to Sentry by BLMIS during the six year period preceding the

filing of the BLMIS SIPA Proceeding - Irving H. Picard, Trustee for the Liquidation of

BLMIS v. Fairfield Sentry Limited, et al., Adv. Pro. No. 09-1239 (BRL) (the "BLMIS

Adversary Proceeding"). These transfers are alleged by the Madoff Trustee to have been

preferential transfers under Section 547 of the Bankruptcy Code and/or fraudulent

transfers under Sections 544 and 548 of the Bankruptcy Code and applicable state law. A

true and complete copy of the Complaint commencing the BLMIS Adversary Proceeding

is attached to this Declaration as Exhibit M. As explained below, good faith settlement

discussions between the Liquidators and the Madoff Trustee are ongoing. Such

discussions have resulted in what amounts to an ongoing *de facto* stay of the BLMIS

Adversary Proceeding. Sentry's response and the Court's case management conference,

which had originally been, respectively, due and scheduled for early Fall 2009, have been

extended and adjourned to July 2010.

41.     Each of the Debtors is a "net loser" as to the BLMIS SIPA Proceeding,

having invested with BLMIS (directly in Sentry's case and indirectly in Sigma's and

Lambda's cases) more than the amount withdrawn. SIPA customer claims on behalf of

each of the Debtors have been timely filed in the BLMIS SIPA Proceeding. Sentry filed

a SIPA customer claim on March 3, 2009 (prior to the appointment of the Liquidators),

and an amended claim on June 22, 2009, setting forth a claim $6,284,321,581. The

Madoff Trustee has sought disallowance of Sentry's claim as part of the relief sought in

the BLMIS Adversary Proceeding. As discussed above, the Debtors have not yet

responded to the complaint in the BLMIS Adversary Proceeding, as the time to do so has been extended as the parties engage in settlement discussions. SIPA customer claims for Sigma and Lambda were timely filed in the summer of 2009 respectively for $773,635,188 and $36,676,205.92. By notices dated December 8, 2009, the Madoff Trustee denied the Lambda and Sigma claims on the ground that neither fund was a statutory "customer" of BLMIS under SIPA. Timely objections to the Sigma and Lambda denial of claims were filed by the relevant Liquidator(s) on January 7, 2010. The omnibus issue of customer status regarding indirect investors like Sigma and Lambda has been set for hearing on October 19, 2010 before the Court in accordance with a court-ordered schedule. Submissions on that issue by Sigma and Lambda are due on July 12, 2010.

**IV.** **The Debtors' Need for Recognition.**

42.  Various potentially interrelated issues are raised by (i) the Debtors' claims in the BLMIS SIPA Proceeding, (ii) the claims asserted against the Debtors by the Madoff Trustee in the BLMIS Adversary Proceeding, and (iii) the existence of overlapping claims and causes of action that the Debtors and the Madoff Trustee may have against the same parties arising out of the same or related transactions. While fully preserving all rights, the Liquidators and the Madoff Trustee are engaging in good faith discussions towards a consensual resolution of the issues between them that would, *inter alia*, avoid resource draining litigation between the Liquidators and the Madoff Trustee and facilitate enhanced returns to and for the benefit of their respective stakeholders. As stated in the Trustee's Amended Third Interim Report for the Period Ending March 31, 2010 (the "Third Interim Report"), the Liquidators and the Madoff Trustee "seek to work

cooperatively and most advantageously in the filing of claims against various responsible parties, the individual principals of the Fairfield Greenwich Group, and the management companies." Third Interim Report, available at www.madofftrustee.com, p. 68.

43.     The Liquidators anticipate that Chapter 15 recognition will enhance and facilitate the ability of the Liquidators to fulfill their duties to realize and distribute the assets of the Debtors in accordance with the BVI Insolvency law.  Specifically, Chapter 15 recognition will advance the Liquidators' litigation efforts by, *inter alia*, (i) facilitating the Liquidators' enhanced access to United States courts in connection with the pursuit of claims on behalf of the Debtors, (ii) affording the Liquidators the right to seek discovery to identify parties that bear liability to the Debtors and the claims against those parties; (iii) providing protection of the recoveries made by the Liquidators in the United States from piecemeal attack; (iv) providing a means to facilitate a consensual resolution of the Madoff Trustee's BLMIS Adversary Proceeding against Sentry benefiting stakeholders in and of Sentry and the Madoff estate; and (v) providing a means to ensure that recoveries will be distributed in an orderly and equitable manner through the BVI proceedings in accordance with the BVI insolvency law.

44.     As part of the continuing discussions between the Madoff Trustee and the Liquidators, the Madoff Trustee has advised the Petitioners that he will not oppose or interfere with the Debtors' efforts to Chapter 15 recognition or the relief being requested. In a letter dated April 20, 2010, attached to this Declaration as Exhibit D, counsel for the Madoff Trustee wrote:

> It is our understanding from our prior discussions with you, Kenneth Krys and Christopher Stride, the Joint Liquidators of Fairfield Sentry Limited, are considering filing proceedings in furtherance of their duties as Liquidators in the United States Bankruptcy Court in the Southern District of New York.  It is

further our understanding the Liquidators will not be seeking to stay any actions filed by the Trustee against Fairfield Sentry.

The purpose of this letter is to inform you the Trustee has no intention of opposing or interfering with any such filing by the Liquidators as you have described at this time. Obviously the Trustee reserves the right to contest actions in any such proceeding in the future if he deems it in the best interests of the BLMIS Estate and the claimants thereto.

As we have indicated from the outset, we encourage the Liquidators to take the steps necessary to recover funds in order to pay any judgment or settlement of the Trustee's claims against Fairfield Sentry.

Letter from counsel for the Madoff Trustee to the Liquidators' counsel dated April 20, 2010, attached to this Declaration as Exhibit D. The Madoff Trustee's non-interference position is based on the understanding (i) that Sentry, the party against which the BLMIS Adversary Proceeding is directed, will not seek a stay of the BLMIS Adversary Proceeding in its application for Chapter 15 recognition (and that the bilateral negotiations between Sentry and the Madoff Trustee which have extended Sentry's time to respond to that litigation will continue), and (ii) that a Chapter 15 recognition Order will accordingly include a carve-out of the stay of the BLMIS Adversary Proceeding, which would otherwise automatically go into effect upon foreign main proceeding recognition. See id. Both the Debtors and the Madoff Trustee have reserved all rights with respect an application by the Debtors for such relief in the future in the event that ongoing, good faith negotiations between the parties do not resolve claims asserted in the BLMIS Adversary Proceeding.

## V.   The Debtors' Center of Main Interests is the BVI.

45.   As stated above, I am advised by counsel that, to obtain recognition of the BVI Proceedings as "foreign main proceedings" under section 1502(4) of the Bankruptcy Code, it must be shown that the BVI is the "center of main interests" of the Debtors. The

sole business of the Debtors is their winding up and liquidation, which activities are based in the BVI and include the collection, procurement, management and administration of Debtors' assets by the Liquidators. All of this business and all of these activities are being directed by the Liquidators under supervision of the BVI Court and in consultation with the Sentry Liquidation Committee. To the knowledge of the Liquidators, since their appointment, and with the sole exception of the *Morning Mist* derivative plaintiffs (see Part III.B. and note 4 supra), no person other than the Liquidators has otherwise asserted or exercised the right or power to administer the interests, business or assets of the Debtors.

46.    I am further advised that an entity's "center of main interest" is equivalent to its principal place of business. The Debtors' current principal place of business is the BVI. To the knowledge of the Liquidators, the Debtors have *no place of business* outside of the BVI. I respectfully suggest that the following facts, among others, demonstrate that the center of main interests of the Debtors is in the BVI:

a.    Each of the Debtors is being wound up in the BVI, where it is incorporated, registered and regulated.

b.    The Liquidators who are responsible for managing, and directing the investigations into the affairs of, the Debtors, and who act for the Debtors solely or jointly, are BVI residents and are BVI-licensed insolvency practitioners.

c.    The Liquidators report, and have responsibility, to the BVI Court, which exercises a close watch over the Liquidators' management and direction, including approval of their remuneration.

d.    Each of the Debtors is and has always been incorporated in the BVI.

e.    Each of the Debtors is registered as a fund under the BVI Mutual Funds Act of 1996 and is subject to the regulatory control and supervision of the Financial Services Commission of the BVI.

f.  The Private Placement Memoranda provided to prospective investors in Sentry, Lambda and Sigma indicated that the Debtors are British Virgin Islands entities subject to supervision of the Financial Services Commission in the BVI.

g.  The Debtors' subscription agreements informed investors that Sentry was organized under BVI law.

h.  The Sentry Directors' reports and financial statements indicated that Sentry was a BVI entity.

i.  The Debtors' Registered Office, which maintains their statutory books and records, is in the BVI.

j.  The Debtors' Registered Secretary, which maintains their registered resolutions and minutes, is in the BVI.

k.  The Debtors' Registered Agent, which maintains their corporate books, records and minutes, is in the BVI.

l.  Each of the Debtors' Registered Offices is and has always been in the BVI.

m.  The Debtors' only business premises are physically located in the BVI. The Debtors do not own, lease or maintain a place of business outside of the BVI.

n.  A substantial amount of the work being performed by the Liquidators and the staff members employed by Krys & Associates (BVI) Ltd. is being performed from the Liquidators' offices located in Tortola, BVI.

o.  Data concerning the Debtors' liquidations is located locally on network attached storage devices in the BVI.

p.  The Debtors currently contract for ongoing services from the following providers that are organized under the laws of the BVI, have offices in the BVI and employ residents of the BVI:

    1.  Forbes Hare, BVI legal advisors to the Debtors.
    2.  Codan Trust Company (B.V.I.) Ltd., registered agent for the Debtors.
    3.  Codan Management (B.V.I.) Ltd., registered secretary for the Debtors.

q.  Each of the Debtors' Administration Agreements with Citco Fund Services (Europe) BV is governed by BVI law.

r. Sentry and Sigma maintain bank accounts in the BVI which, as of the date hereof, hold $16,999,955 and $3,311,146, respectively.

s. The Debtors are leasing property in the BVI, which is being used to house books and records and store documents produced to the Liquidators for review.

t. Since December 2008, all meetings of the Boards of Directors have been either held in the BVI or have been originated telephonically by the Debtors' BVI-based counsel Conyers.

u. The foreign secured creditor who applied to the BVI Court seeking the appointment of a liquidator over Lambda identified the BVI Court as the appropriate forum for Lambda's liquidation based on Lambda's connections to the BVI.

v. Previously, Bank of Montreal, another secured creditor of Lambda, had caused its security interest with respect to property of Lambda, to be filed with the Registry of Corporate Affairs, BVI Financial Services Commission. As such, Bank of Montreal, necessarily identified the BVI as the appropriate location for filing its security interest based on Lambda's connections to the BVI. A true and correct copy of Bank of Montreal's filing is attached as Exhibit E to the Stride Declaration.

w. The foreign shareholders from the Grand Cayman, the Channel Islands, Mexico, the Kingdom of Bahrain, the Republic of Panama and the United States who sought the appointment of a liquidator over Sentry identified the BVI Court as the appropriate forum for Sentry's liquidation based on Sentry's connections to the BVI.

x. The Belgian shareholder who sought the appointment of a liquidator over Sigma identified the BVI Court as the appropriate forum for Sigma's liquidation based on Sigma's connections to the BVI.

y. Subsequent to the exposure of the Madoff fraud, updates and information provided to shareholders were sent from the Debtors' address in the BVI, Romasco Place, Wickhams Cay 1, Road Town, Tortola, British Virgin Islands, VG 1110V.

z. In letters dated May 8, 2009, the Boards of Sentry and Sigma advised their respective shareholders to contact the firm Conyers Dill & Pearman in the BVI if they wished to communicate with, respectively, Sentry and Sigma.

aa. Since the Liquidators' appointment, the Liquidators have advised shareholders and other of their constituencies to direct communications to

the Liquidators. True and complete letters sent from Krys & Associates' BVI office to shareholders on May 4, 2010 are attached, by way of example, as Exhibit N to this Declaration.

bb. Sigma and Lambda hold, respectively, approximately 6.86% and 0.33% of the issued shares of Sentry and, therefore, at least 7.19% of Sentry's beneficial shareholders are situated in the BVI.

cc. As a matter of BVI law, the situs of the shares of each of the Debtors is the BVI. Hare Decl. ¶ 27.

dd. Two members of the Liquidation Committee are BVI-based, including the chair person.

ee. Third party expectations, including those of the Madoff Trustee, are that the Liquidators serve as the sole management of the Debtors, as indicated by the ongoing dealings of third parties solely with the Liquidators.

47.    I am also advised by counsel that, to obtain recognition of the BVI Proceedings as "foreign nonmain proceedings" under section 1502(5), it must be shown that such proceedings are pending in a country where the debtor has an "establishment." I am further advised that an "establishment" is any place of operations where the debtor carries out nontransitory economic activity. In the event the Court does not recognize the BVI Proceedings as foreign main proceedings, I refer the Court to the facts set forth above as demonstrating that the Debtors carry out nontransitory economic activity in the BVI.

## VI.    Notice.

48.    As Liquidators, we are responsible for effecting notice to stakeholders regarding activities in the BVI Proceedings. When giving notice, we provide individual written notice to the members of the Liquidation Committee by e-mail or, if a member's e-mail address is unknown, by postal mail. We also publish on the Websites information regarding the progress of the BVI Proceedings. We further contact registered

stakeholders to notify them when any such information or documents are made available on the Websites.

49.     In my opinion, based on my experience with the BVI Proceedings, notifying the Debtors' investors of legal proceedings in the United States through individual notice to members of the Liquidation Committee and, also, notifying investors and creditors through posting of relevant documents on the Websites, would be an effective means of notifying the Debtors' investors and creditors, would be familiar to the Debtors' investors and creditors, and would not be unduly burdensome to the Debtors.

WHEREFORE, I respectfully request that this Court enter an Order, substantially in the form of the proposed Order attached to the Application of Foreign Representatives Kenneth Krys and Christopher Stride for Order (I) Scheduling Hearing on Chapter 15 Petitions for Recognition, (II) Specifying Deadline for Filing Objections, and (III) Specifying Form and Manner of Service of Notice as Exhibit A, and

WHEREFORE, I respectfully request that this Court enter an Order, substantially in the form of the proposed Order Recognizing Foreign Main Proceedings and Granting Related Relief attached to the Verified Petition of each Debtor, granting the relief requested and such other and further relief as may be just and proper.

IN WITNESS WHEREOF, I have executed this Declaration the 14th day of June, 2010.

_____
KENNETH KRYS