**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
William R. Baldiga
Daniel J. Saval
May Orenstein
Tally M. Wiener

*Attorneys for the Petitioners*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) **Chapter 15 Case** |
| **Fairfield Sentry Limited, et al.,** | ) |
| | ) **Case No. 10-13164** |
| **Debtors in Foreign Proceedings.** | ) |
| | ) **Jointly Administered** |
| | ) |

**DECLARATION OF WILLIAM HARE IN FURTHER SUPPORT OF THE DEBTORS'
PETITIONS**

I, William Hare, do hereby declare, under penalty of perjury under the laws of

the United States of America, that the following is true and correct to the best of my

knowledge and belief:

1.      I am the managing partner and head of the litigation and insolvency group

at Forbes Hare ("Forbes Hare"), a law firm I founded in 2005 based in the British Virgin

Islands ("BVI"). In April 2010, Forbes Hare opened an additional office in the Cayman Islands.

2.      My practice in the BVI primarily involves insolvency and litigation

involving offshore companies, investment funds and trusts. I have previously provided expert

evidence on foreign law for numerous courts, including the courts of the State of New York and

United States Bankruptcy Courts.

-1-

3.    Messrs. Kenneth Krys and Christopher Stride (the "<u>Petitioners</u>" or "<u>Liquidators</u>"), in their capacities as the duly appointed liquidators of Fairfield Sentry Limited ("<u>Sentry</u>") and Fairfield Sigma Limited ("<u>Sigma</u>"), and Mr. Stride in his capacity as duly appointed Liquidator of Fairfield Lambda Limited ("<u>Lambda</u>" and, together with Sentry and Sigma, the "<u>Debtors</u>"), filed petitions (the "<u>Petitions</u>") in this Court for recognition of the BVI insolvency proceedings (the "<u>BVI Proceedings</u>") pending in respect of each of the Debtors before the Commercial Division of the High Court of Justice, British Virgin Islands (the "<u>BVI Court</u>"), under the BVI Insolvency Act, 2003 (the "<u>Insolvency Act</u>"), as foreign proceedings under Chapter 15 of the Bankruptcy Code. The Liquidators retained Forbes Hare both (i) as counsel in the BVI Proceedings, and (ii) as counsel charged with overall coordination of legal strategy and advice worldwide concerning activities relating to the BVI Proceedings.  As such, Forbes Hare was closely involved in convening the initial meeting of investors of the Debtors, and in subsequently arranging interviews with and selecting US counsel Brown Rudnick LLP to assist with those aspects of the BVI Proceedings involving issues of US law.  All Forbes Hare counsel representing and advising the Liquidators in matters relating to the BVI Proceedings and actions in foreign jurisdictions are resident in the Tortola, BVI office of Forbes Hare.

4.    I am advised that on May 15, 2009, after liquidation proceedings were commenced in the BVI in April 2009 by stakeholders in Sentry, Morning Mist Holdings Limited and Miguel Lomeli, purported shareholders of Sentry (the "<u>Putative Shareholders</u>"), commenced a civil action in the Supreme Court for the State of New York (the "<u>NY Supreme Court</u>"), captioned <u>Morning Mist Holdings Limited et al. v. Fairfield Greenwich Group, et al.</u>, 09-CV-5012 (N.Y. Sup. Ct.) (the "<u>New York Derivative Action</u>"), purportedly asserting certain causes of action belonging to Sentry. Such causes of action were asserted by the Putative Shareholders

against various third parties including claims for, *inter alia*, breach of contract, breach of fiduciary duty, and negligent misrepresentation against certain Fairfield Greenwich Group ("FGG") defendants, and similar claims against certain Pricewaterhouse Coopers LLC ("PwC") entities and other service providers. Krys Decl. ¶ 39(e).

5.    The New York Derivative Action is now pending in the Commercial Division of the NY Supreme Court.[1]

6.    I am further advised that the Putative Shareholders have filed an objection (the "Putative Shareholders' Objection") to the Petitions.  This declaration is provided in support of the Petitions and in reply to the Putative Shareholders' Objection.  I am fully familiar with the facts set forth herein.[2]

7.    To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the BVI.

**Central Management and Administration of Sentry Is Performed in the BVI by the Liquidators, With Oversight from the BVI Court.**

8.    As stated above, the Liquidators retained Forbes Hare as principal counsel in the BVI Proceedings, as well as to coordinate worldwide legal strategy of issues concerning and implicating the BVI Proceedings (e.g., taking control of Debtors' assets and pursuing Debtors' claims for the benefit of all of the Debtors' creditors and members).  Forbes Hare first appeared before the BVI Court on behalf of the Liquidators on September 16, 2009, in order to

---

[1]    The defendants of the New York Derivative Action have moved to stay both the New York Derivative Action and the Sentry Direct Action (as defined below) pending a decision on motions to dismiss filed in another proceeding commenced by investors in the Debtors captioned Anwar et al. v. Fairfield Greenwich Limited, et al., 09-CV-0118 (S.D.N.Y).  That motion is presently *sub judice*.

[2]    Additionally, I refer to my previous declaration of June 14, 2010 (the "June 14 Declaration"), and all exhibits thereto, submitted to this Court in support of the Petitions for recognition of the BVI Proceedings filed by the Liquidators pursuant to Chapter 15 of the Bankruptcy Code, and I hereby reaffirm and incorporate into this Declaration all statements made therein. See Declaration of William Hare In Support, filed in Fairfield Sentry Limited, et al., Case No. 10-13164, [Docket No. 5].

make a first report on the Debtors to the BVI Court. At that hearing, the Liquidators' first interim consolidated report (and an accompanying confidential report) were presented to the BVI Court. Also at that hearing, the BVI Court's files in each of the Debtors' liquidation proceedings were sealed.

9.      The BVI Court maintains strict control and supervision over the BVI Proceedings. Pursuant to the Insolvency Act and the Appointment Orders (defined below), the Liquidators are required to seek and, represented by Forbes Hare, have sought directions and permissions from the BVI Court on numerous issues. In particular, the permission of the BVI Court is required in order for the Liquidators to bring, defend, discontinue or compromise any legal proceedings in the BVI or in any other jurisdiction. Any proceedings brought by or against the Liquidators or the Funds in any jurisdiction must be conducted in accordance with directions given from time to time by the BVI Court.

10.      More than 30 orders have been made by the BVI Court in respect of each or all three sets of liquidation proceedings since the appointment of the Liquidators. Due to the sealing of the BVI Court's files in the BVI Proceedings, the exact details of each of those orders cannot be disclosed. However, the following chart provides a summary of the applications and orders made since the appointment of the Liquidators:

| Date of Order | Summary of Application to BVI Court and Order made |
|---|---|
| 09.22.09 | Liquidators given leave to: <br> 1)  File protective claim forms in the BVI against redeemers (the "BVI Redeemer Claims"); <br> 2)  Instruct Brown Rudnick to defend the Trustee's adversary proceedings against Sentry; <br> 3)  Instruct Brown Rudnick to take certain steps (i.e. to make certain filings) in the New York Derivative Action and the Sentry Direct Action (defined below). |
| 10.09.09 | Liquidators given leave to file further BVI Redeemer Claims. |
| 10.13.09 | Liquidators given leave to take further steps in Morning Mist. |
| 10.27.09 | Liquidators given: <br> 1)  directions relating to the BVI Court's review and approval of the |

|  | Liquidators' (and their advisers') remuneration;<br>2) leave to instruct Brown Rudnick to take certain steps in Morning Mist'<br>3) leave to instruct Brown Rudnick to oppose any and all attempts by members or purported members of the Funds to bring putative derivate actions in the US. |
|---|---|
| 11.04.09 | Liquidators given leave to:<br>1) file further protective BVI Redeemer Actions;<br>2) take certain steps in the Sentry Direct Action. |
| 11.13.09 | Liquidators given leave to instruct Brown Rudnick to take steps in relation to the opposition of the Net Equity determination. |
| 11.17.09 | BVI Court approval for the remuneration of the Liquidators and their counsel for fees and disbursements. |
| 12.16.09 | 1) Liquidators given leave to instruct Brown Rudnick to take certain steps in the Sentry Direct Action.<br>2) BVI Court directs sealing of all related proceedings in BVI. |
| 02.15.10 | 1) BVI Court approval for the remuneration of the Liquidators and their counsel for fees and disbursements.<br>2) Liquidators given leave to instruct Brown Rudnick to maintain the status quo in the US.<br>3) Liquidators given directions by the BVI Court on the process for and extent to which Liquidators are to consult with the Liquidation Committee.<br>4) Liquidators given directions on notice requirements.<br>5) Liquidators given leave to enter a settlement agreements in relation to Dutch pre-judgment attachment orders directed against Sentry's assets maintained at the Dublin branch of Citco Bank Nederland NV ("Citco"). |
| 03.24.10 | Liquidators given leave with respect to conducting certain activities in Canada and the Netherlands concerning, respectively, PwC LLP (Canada) and PwC Accountants NV (Netherlands). |
| 03.31.10 | Liquidators given directions in respect of formal requests for information and documents from PwC entities. |
| 04.12.10 | Liquidators given leave to file claims against redeemers in the state of New York. |
| 05.07.10 | Liquidators given leave to file for Chapter 15 recognition in the United States. |
| 05.13.10 | Leave given to a shareholder in Sentry to change the custodian of its shares (as the leave of the BVI Court to perform this action is required pursuant to section 175 of the Insolvency Act). |
| 06.08.10 | 1) Liquidators given leave to seek recognition of BVI proceedings in Ireland and to regain control of assets maintained at Dublin branch of Citco Bank Nederland BV.<br>2) Liquidators given leave to instruct Brown Rudnick to serve claim forms issued against redeemers in the State of New York.<br>3) Liquidators given leave to instruct an international process server to serve the BVI Redeemer Claims.<br>4) Liquidators given directions on certain claims in the state of New York. |
| 06.24.10 | 1) Liquidators given leave to defend proceedings commenced against Sentry in Amsterdam.<br>2) Liquidators given directions in relation to the proceedings commenced in the BVI against redeemers. |

11.     In addition to the aforementioned applications and orders made in the BVI

Proceedings, the Liquidators, represented by Forbes Hare, have obtained orders from the BVI

Court in respect of commencing the various proceedings in the BVI Court against redeemers.

12.     Applications made to the BVI Court by Forbes Hare on behalf of the

Liquidators have to be supported by evidence and legal argument justifying the course of action

for which court approval is sought.  Where permission of the BVI Court is sought to bring or

defend proceedings abroad (including the instant Chapter 15 recognition proceedings), the

evidence must contain a cost/benefit analysis clearly justifying the proposed action.  This

requires Forbes Hare to advise, instruct and coordinate with counsel in other jurisdictions on

behalf of the Liquidators as to the nature of the evidence required from them on the merits and

likely costs of maintaining actions.

13.     Forbes Hare also plays a key lead role in advising the Liquidators regarding

actions to be taken or advice to be obtained in respect of activities related to the BVI Proceedings

in other jurisdictions. To date, Forbes Hare's role in this regard has included liaising and

coordinating with counsel in the United States (Brown Rudnick LLP), Canada (Stikeman &

Elliot LLP), The Netherlands (Brada Kuttner), Ireland (Gallen Alliance), and specialist cross-

border insolvency barrister in England (Stephen Moverly Smith QC) (collectively, "Foreign

Counsel").   In addition to the recognition proceedings currently pending before this Court,

Forbes Hare has advised and coordinated with Foreign Counsel in respect of the following

issues:

- Pre-judgment attachment orders obtained by shareholders of Sentry in
the District Court of Amsterdam.   These pre-judgment attachment
orders were sought and obtained from the Amsterdam District Court
against the Irish branch of Citco Bank Nederland NV ("Citco") with
whom Sentry held an account, by two shareholders of Sentry:

Stichting Shell Pensioenfonds ("Shell") and Atlantic Business Inc. Shell proceeded to initiate substantive proceedings against Sentry, the first proceeding of which was held on July 7, 2010, and Brada Kuttner, the Liquidators' Dutch counsel, appeared on Sentry's behalf. The proceeding was continued, however, due to the fact that Shell failed to file certain documents evidencing service of the proceedings, which the court then ordered them to file by July 21, 2010. These proceedings were formally served on Sentry on July, 14 2010 under the Hague Convention on Service of Judicial Documents at Sentry's registered office in the BVI. A true an accurate copy of the letter of service is attached to this declaration as Exhibit A. The Liquidators have 6 weeks, i.e., until on or about September 1, 2010, to file a defence, which they and Forbes Hare will coordinate with Brada Kuttner.

- Irish Recognition and Recovery Proceedings. The pre-judgment attachment orders described above have operated to freeze Sentry's assets held with Citco in its Dublin branch. On July 12, 2010, Gallen Alliance, Irish counsel to the Liquidators, filed claims seeking (i) recognition of Sentry's BVI Proceeding, and the Liquidators as the duly appointed representatives thereof, in the High Court of Ireland (ii) a declaration that Sentry is entitled to the balance on Sentry's account maintained at Citco's Dublin branch there or, in the alternative, placement of a constructive trust on the balance of Sentry's account for the benefit of Sentry, and (iii) a declaration that the pre-judgment attachment orders issued by the Amsterdam District Court are not entitled to recognition in Ireland.

- BVI Redeemer Claims. The Liquidators have commenced 6 sets of proceedings in the BVI against a total of 160 redeemer-defendants in approximately 18 different jurisdictions seeking the recovery of redemptions paid out of Sentry during the months October 2003 through March 2004. Those proceedings have been issued and are in the process of being served under the Hague Convention pursuant to orders of the BVI Court for permission to serve out of the jurisdiction.

14.    The above makes clear that activities occurring with respect to the BVI Proceedings, both in the BVI and in other jurisdictions, have been, and continue to be, subject to the BVI Court's strict control and supervision. The foregoing also demonstrates that that the Liquidators, represented by Forbes Hare, have managed, and continue to manage, all aspects of the BVI Proceedings from the BVI, including the coordination of worldwide global strategy with regards to issues pertaining to and implicating the BVI Proceedings. Whilst it is true that they

have also used some of their staff based in the Cayman Islands, the BVI Insolvency Regulator, in approving the joint appointments in July 2009, made certain stipulations as to the conduct of the liquidation in the BVI.  By an email dated July 20, 2009, sent by David Abednego, the Acting Director of Insolvency Services for the BVI Financial Services Commission ("FSC"), to representatives of the registered shareholders of Sentry who applied to have the Liquidators appointed over Sentry, he confirmed that the FSC had no objection to the appointment of the Liquidators provided that the FSC received confirmation from the Liquidators that "[s]ubstantial work in the case will be carried out in the BVI, all statutory obligations and key documentations will be kept in the BVI and that the [FSC] will be regularly copied on key Reports[.]"  A true an accurate copy of this email is attached to this declaration as Exhibit B.  To the best of my knowledge this obligation has been more than satisfied: members of my staff or I have for nearly a year been typically in contact with the BVI-based staff of the Liquidators most days, several times a day, both by email and telephone, and regularly meeting them in person in either their or our offices in the BVI.

**Internal Governance of the Debtors is Controlled by the Law of the BVI, the Debtors' Jurisdiction of Organisation.**

15.     Each of the Debtors was organised as an International Business Company under the laws of the BVI. See Declaration of Kenneth Krys In Support (the "Krys Decl."), filed in Fairfield Sentry Limited, et al., Case No. 10-13164, [Docket No. 3] ¶ 11.  As a result of new legislation adopted in the BVI, the Debtors were subsequently re-registered in the BVI as Business Companies under the BVI Business Companies Act 2004 (the "BVI BC Act").  Id.  The Debtors were "professional funds" under section 20(1) of the BVI Mutual Funds Act of 1996 and, as such, were at all times subject to the regulatory control of the Financial Services Commission of the BVI.

16.     As BVI companies, the internal corporate affairs of the Debtors were governed by the BVI BC Act. See id.  The BVI BC Act contains comprehensive provisions pertaining to the duties and obligations of directors and officers of BVI business entities and the rights and remedies of shareholders. See BVI BC Part VI, Division III (Duties of directors) and Part XA (Members' Remedies).

17.     Although not US qualified, I have familiarised myself with New York choice of law rules concerning the law applicable to a foreign company's internal affairs, including derivative actions brought by a foreign company's shareholders.[3]  Based on my review of this law, it is my opinion that New York courts would also conclude that the Debtors' corporate affairs are governed by the BVI BC Act.[4]

---

[3]     See, e.g., Seghers v. Thompson,, 2006 WL 2807203, *4 (S.D.N.Y. 2006) ("where a derivative suit is based upon diversity jurisdiction, […] courts apply the 'internal affairs' doctrine which states that 'the right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation[.]'"); Bruhl v. Kingate Global Fund, Ltd., Index No. 601526/2009 (N.Y. Sup. Ct. Jan. 25, 2010) (in an almost identical situation, concluding that "BVI law applies here and that [the BVI BC Act] § 184(C) requires a shareholder-prospective plaintiff to obtain the approval of the BVI High Court[.]").

[4]     I am advised by U.S. Counsel that section 626 of New York Business Corporation Law ("NYBCL") applies to shareholders' derivative actions governed by New York law and requires a shareholder to set forth in particularity the demands made upon the corporation's board of directors to initiate an action on behalf of the corporation or, if no such demands were made, to set forth the reasons why making such demands would have been futile. NYBCL § 626.  It is my opinion that even if the NY Supreme Court were to apply New York law, the Putative Shareholders would still lack standing to pursue the New York Derivative Action because the Putative Shareholders did not make demands to commence an action on Sentry's behalf upon any members of Sentry's Board of Directors or upon the Liquidators once they were appointed over Sentry. See Bruhl v. Kingate Global Fund, Ltd., Index No. 601526/2009 (N.Y. Sup. Ct. Jan. 25, 2010) (concluding that shareholder's derivative action on behalf of BVI Corporation would fail even if New York law was applied because shareholder failed to make demand upon liquidators, who were provisionally appointed by the BVI High Court at the time the shareholder commenced his derivative action). Moreover, due to the fact that, only fourteen (14) days after the New York Derivative Action was commenced, Sentry's Board of Directors initiated claims against virtually the same defendants that are defendants in the New York Derivative Action,

18.     Additionally, the Putative Shareholders have acknowledged that the New York Derivative Action is governed by the BVI BC Act.   See Putative Shareholders' Memorandum of Law in Support for Leave to Pursue Shareholder Derivative Action, Index No. 601527/2009 at 2 (N.Y. Sup. Ct. July 2, 2009) ("Fairfield Sentry is a company incorporated under BVI law […] Accordingly, the Court should look to BVI law here.") (internal citations omitted).

## The New York Derivative Action Has Been Improperly Commenced In the NY Supreme Court.

19.     Under BVI law, injuries and damages sustained by a BVI corporation are the property of such corporation and can be asserted solely by such corporations acting through its duly authorised officers.  In contrast to the law of the various states of the United States, the internal law of the BVI does not recognise the right of a shareholder to commence an action to assert claims that belong to the corporation based on the alleged or actual failure, refusal or disability of the board of directors of a corporation to take proper action.  A shareholder of a BVI corporation has no power or authority to initiate litigation purportedly for or on behalf of a corporation unless it has obtained, upon application to the High Court of the British Virgin Islands (the "BVI High Court"), formal judicial authority, in the form of a court order, authorising the commencement of such an action.  Thus, subsection (1) of 184C of the BVI BC Act provides that:

> "Subject to subsection (3) [concerning certain standards that the Court must satisfy itself are met before granting leave to bring a derivative action], the Court may, on the application of a member of a company, grant leave to that member to:
>
> (a) bring proceedings on behalf of that company; or
>
> (b) intervene in proceedings to which the company is a party for the purpose of continuing, defending or discontinuing the proceedings on

-10-

behalf of the company."

A true and accurate copy the BVI BC Act is attached to this declaration as Exhibit C.

20.     Subsection (3) of 184C of the BVI BC Act, referenced in subsection (1),

describes the conditions upon which the High Court may grant such leave:

> "Leave to bring or intervene in proceedings may be granted under
> subsection (1) *only if the Court is satisfied that*:
>
> (a) the company does not intend to bring, diligently continue or defend, or
> discontinue the proceedings, as the case may be; or
>
> (b) it is in the interests of the company that the conduct of the proceedings
> should not be left to the directors or to the determination of the
> shareholders or members      as a whole."

(Emphasis added).

21.     All references to the "Court" found in Section 184C of the BVI BC Act,

are, unambiguously, to the BVI High Court and to no other court. See BVI BC Act § 2 ("Court

means the High Court"), attached as part of Exhibit C to this declaration.  Additionally, section

184C(6) of BVI BC Act makes clear that the BVI High Court has the exclusive authority to grant

leave to pursue a derivative action on behalf of a company. See BVI BC Act § 184C(6).  Section

184C(6) of the BVI BC states: "Except as provided in this section [i.e., 184C], a member is not

entitled to bring or intervene in any proceedings in the name or on behalf of the company."

Accordingly, an action commenced by a member purporting to assert derivative claims without

the authorisation of the BVI High Court is legally improper and cannot be maintained by that

member.

22.     Under BVI law, the Putative Shareholders had no authority or standing to

commence the New York Derivative Action in that they did not first obtain leave from the BVI

High Court as required by section 184C of the BVI BC Act.  Moreover, under BVI law, the High

Court had discretion to grant leave only upon demonstration by the Putative Shareholders that the conditions of Subsection (3) of BVI BC Act § 184C were satisfied. No such demonstration has been made or even attempted. In fact, the only application for leave to pursue the New York State Action made by the Putative Shareholders was to the NY Supreme Court, and was thereafter withdrawn by the Putative Shareholders. See Morning Mist Holdings Ltd. et al. v. Fairfield Sentry Limited, Stipulation and Order Re Voluntary Discontinuance (N.Y. Sup. Ct. Mar. 1, 2010) (voluntarily dismissing application of Morning Mist plaintiffs for order authorising them to file derivative suit), attached as Exhibit C to the Krys Decl. Even had such application for authority been pursued in the NY Supreme Court by the Putative Shareholders, the only disposition of such application consistent with BVI law would have been its denial since the BVI High Court has exclusive jurisdiction over applications by BVI shareholders to assert claims belonging to corporations. See Bruhl v. Kingate Global Fund, Ltd., Index No. 601526/2009 (N.Y. Sup. Ct. Jan. 25, 2010) (denying shareholder/prospective derivative plaintiff's petition for leave to bring derivative action on behalf of BVI corporation on the grounds that BVI law applied to the proposed derivative action and, pursuant to section 184C of the BVI BC Act, the shareholder was required to obtain leave from the *BVI High Court*, not the NY Supreme Court, which the shareholder had failed to do).

**Under BVI Law, Shareholders Cannot Obtain or Exercise Authority to Prosecute Corporate Claims Following the Commencement of Liquidation Proceedings.**

23.    Commencing on or about February 27, 2009, and periodically thereafter, shareholders or creditors of each of the Debtors commenced insolvency proceedings in respect of each Debtor in the BVI Court pursuant to the Insolvency Act seeking the appointment of a liquidator over the Debtors' respective businesses. Krys Decl. at ¶¶ 25-28. By Order of the BVI Court dated April 23, 2009, Petitioner Christopher Stride was appointed as the liquidator of

Lambda (the "Lambda Order"). Id. ¶ 28.  Likewise, by Orders of the BVI Court dated July 21,

2009, the Petitioners were jointly appointed as the liquidators of Sentry and Sigma (respectively,

the "Sentry and Sigma Orders" and, together with the Lambda Order, the "Appointment

Orders"). Id. at ¶¶ 28-29.  True and correct copies of the Appointment Orders are attached to this

declaration as Exhibit D. Pursuant to the Appointment Orders, the Liquidators are duly

authorised to act as the foreign representatives of the Debtors and are responsible for all aspects

of the Debtors' business.

24.    Upon appointment, the Liquidators obtained, among other things, custody

and control of the Debtors' assets, the power to do all acts and execute, in the name and on

behalf of the Debtors, any deeds, receipts or other documents, and the power to compromise

claims, commence litigation and to dispose of property. See, e.g., Sentry and Sigma

Appointment Orders at 11-13, ¶ 3.  In other words, commencement of the BVI Proceedings and

appointment of the Liquidators vested the entire management function of the Debtors, including

the ability to compromise claims, commence and continue litigation and to dispose of property,

with the Liquidators. See Section 175(1)(b) of the Insolvency Act (upon commencement of a

liquidation proceeding, "the directors and other officers of the company remain in office, but

they cease to have any powers, functions or duties other than those required or permitted by [Part

VI of the Insolvency Act]."), a true and accurate copy of which is attached to this declaration as

Exhibit E; see also Sentry & Sigma Appointment Orders at 11-13, ¶ 3.

25.    Furthermore, under BVI law, the commencement of a liquidation

proceeding supervenes any right of a shareholder to seek, pursuant to section 184C(1) of the BVI

BC Act, authority to prosecute claims belonging to the corporation in liquidation.  To the extent

that a shareholder of a corporation in liquidation has any grounds for relief based on any alleged

acts or failure to act with respect to the entity in liquidation, or against third parties who are alleged to have injured the entity in liquidation, such remedies are governed by the Insolvency Act.  Under BVI law, and pursuant to the Appointment Orders of the BVI Court, the Liquidators are vested with the sole authority to prosecute claims on behalf of the Debtors, including those claims for breach of contract, breach of fiduciary duty, and negligent misrepresentation asserted against FGG, its affiliated defendants and other service providers.  Accordingly, even assuming that the Putative Shareholders are registered members of Sentry (which, as described below, they are not), the only right now available to them is to apply to the BVI Court for an order directing the Liquidators to pursue the claims asserted in the New York Derivative Action, which the Liquidators have already indicated they intend to pursue for the benefit of all of Sentry's stakeholders.  In any event, the BVI Court would only direct (as opposed to permit) the Liquidators to bring a claim if it was satisfied that they would otherwise be failing in their duties, which they are not.

26.     Furthermore, the Liquidators (and Sentry's board of directors, prior to the Liquidators' appointment) have kept shareholders apprised of the steps they have taken to preserve, recover and maximize the Debtors' assets, including any causes of action. See Krys Decl. ¶ 30.

27.     Based on the foregoing, it is my opinion that the Putative Shareholders would be unsuccessful in an application to obtain leave to pursue the New York Derivative Action from the BVI High Court.

**The Putative Shareholders Fail to Satisfy Section 184C of the BVI BC Act.**

28.     Even if appointment of the Liquidators did not pose an insurmountable obstacle to the Putative Shareholders obtaining leave from the BVI Court to pursue the New

York Derivative Action, the Putative Shareholders are nevertheless unable to satisfy other requirements of section 184C of the BVI BC Act which are required to pursue the New York Derivative Action.

29.    For example, the BVI BC Act specifically states that *only registered "members"* of a BVI company are able to apply to the BVI High Court for leave to bring a derivative action on behalf of the company.  See BVI BC Act §§ 184C (1) and (6).  Section 184A of the BVI BC Act, attached to this declaration as part of Exhibit C, defines "members" of a BVI company as: (a) a shareholder or personal representative of a shareholder, (b) a guarantee member of a company limited by a guarantee, or (c) an unlimited member of an unlimited company.  Under section 78 of the BVI BC Act, also attached to this declaration as part of Exhibit C, a "shareholder" means a person whose name is *entered in the register of members* as the holder of one or more shares, or fractional shares, in the company; a "guarantee member" means a person whose name is *entered in the register of members* as a guarantee member; and an "unlimited member" means a person whose name is *entered in the register of members* as a member who has unlimited liability for the liabilities of the company (emphasis added).  The Putative Shareholders are not "members" or "shareholders" of Sentry and therefore lack standing to even apply to the BVI High Court for leave to bring a derivative claim, much less prosecute a derivative claim, on behalf of Sentry.

30.    The Putative Shareholders do not appear on the register of members of Sentry.  By letter dated June 25, 2009, attached to this declaration as Exhibit F, counsel for Citco BV, the Debtors' administrator, has confirmed this fact.  Following the Liquidators' appointment, the register was delivered to the Liquidators, and the Liquidators' review of same confirms that the Putative Shareholders do not appear on the register of members of Sentry.

Reply Declaration of Kenneth Krys, filed contemporaneously herewith, at ¶ 6.  Accordingly, the

Putative Shareholders are neither "shareholders" nor "members" under the express terms of

Sections 78 and 184A of the BVI BC Act and, therefore, do not have the requisite standing to

request leave from the BVI High Court to bring a derivative action on behalf of the Debtors

pursuant to Section 184C.

31.    In addition to not qualifying as "members" or "shareholders" of the

Debtors, the Putative Shareholders do not satisfy Sections 184C(2)(b) and (e) or Sections

184C(3)(a) or (b) of the BVI BC Act.

32.    In deciding on an application for leave to pursue a derivative action,

Sections 184C(2)(b) and (e) of the BVI BC Act require the BVI High Court to consider "whether

the derivative action is in the interests of the company taking account of the views of the

company's directors on commercial matters" and "whether an alternative remedy to the

derivative claim is available."  Furthermore, leave to bring a derivative action may be granted

*only if* the BVI High Court is satisfied that "(a) the company does not intend to bring, diligently

continue or defend, or discontinue the proceedings, as the case may be; or (b) it is in the interests

of the company that the conduct of the proceedings should not be left to the directors or to the

determination of the shareholders or members as a whole." BVI BC Act, Sections 184C(3)(a)

and (b).

33.    Sentry has at all times fully reserved its rights regarding the impropriety of

the Putative Shareholders' actions and their lack of standing to assert claims on behalf of Sentry.

On May 29, 2009, Sentry, acting at the direction of its Board of Directors, commenced an action

in the Supreme Court of the State of New York, New York County, styled <u>Fairfield Sentry</u>

<u>Limited v. Fairfield Greenwich Group, et al.</u> (the "<u>Sentry Direct Action</u>"), Index No.

601687/2009, in which it asserted claims for breach of contract, breach of fiduciary duty, unjust

enrichment, rescission and other statutory and equitable claims against Fairfield Greenwich

Bermuda and other affiliates of FGG (the same defendants as in the New York Derivative

Action). Krys Decl. at ¶ 39(d).  Additionally, the Liquidators, who are now solely responsible for

the management of Sentry's affairs and assets, have indicated they intend to pursue these claims

for the benefit of all of Sentry's stakeholders.

34.    Furthermore, the Putative Shareholders have alternative remedies

available to them under BVI law other than the New York Derivative Action.  Specifically, the

Putative Shareholders may assert claims against Sentry in the BVI Proceedings and, pending

such claims being admitted under the Insolvency Act, the Putative Shareholders will be entitled

to receive a ratable payment from Sentry's assets, subject to the rights of recovery of other

creditors of Sentry.  See, e.g., Insolvency Act § 207 (providing for the payment of classes of

admitted claims and expenses in accordance with statutory priorities, and if the amount available

for such claims is insufficient to pay claims in full, directing their ratable payment by class).

35.    Given the actions taken by Sentry and the Liquidators, as well as the

alternative remedies available to the Putative Shareholders, the Putative Shareholders cannot

satisfy the requirements of section 184C of the BVI BC Act.

36.    In summary, the New York Derivative Action is bound to fail because:

(a)  The internal governance of the Debtors is subject to the law of the BVI;

(b)  Under BVI law (Section 184C of the Business Companies Act 2004) the
     Putative Shareholders were not entitled to bring the New York derivative
     Action without first obtaining the permission of the BVI Court, which they
     failed to do;

(c)  There were and are no grounds for obtaining such permission;

(d) In any event, it is no longer open to the Putative Shareholders to obtain such permission as the Debtors are in liquidation; and

(e) In any event, the Putative Shareholders would lack standing to apply for permission to bring the New York Derivative Claim as, since their names are not entered on the register of members, they are not shareholders.

IN WITNESS WHEREOF, I have executed this Declaration the 15th day of July,

2010.


/s/ William Hare
WILLIAM HARE