**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
May Orenstein
Daniel J. Saval
Kerry L. Quinn

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| **Fairfield Sentry Limited, et al.,** | Case No. 10-13164 (BRL) |
| **Debtors in Foreign Proceedings.** | Jointly Administered |

**MOTION OF THE FOREIGN REPRESENTATIVES FOR AN ORDER
COMPELLING THE PRODUCTION OF DOCUMENTS AND
AUTHORIZING EXAMINATION OF WITNESSES PURSUANT TO
§ 1521 OF THE BANKRUPTCY CODE AND RULE 2004 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Kenneth Krys and Joanna Lau, in their capacities as the duly appointed foreign representatives (together with their predecessors, the "Foreign Representatives") of the liquidation proceedings of Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda" and, together with Sentry and Sigma, the "Debtors") pending before the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court"), through their United States counsel Brown Rudnick LLP, hereby move this Court (the "Motion"), pursuant to 11 U.S.C. § 1521 and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order (a) compelling the following parties to produce documents to the

Foreign Representatives: (i) Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Ltd., Fairfield Greenwich Advisors LLC, and Fairfield Risk Services Ltd. (collectively, the "FGG Entities"); (ii) PricewaterhouseCoopers LLP, a limited liability partnership organized under the law of Ontario, Canada ("PwC Canada"), PricewaterhouseCoopers Accountant N.V. (PwC Netherlands), PricewaterhouseCoopers LLP, a Delaware limited liability partnership ("PwC US"), PricewaterhouseCoopers (a Bermuda partnership) ("PwC Bermuda") and PricewaterhouseCoopers International Limited ("PwC Int'l" and, together with PwC Canada, PwC Netherlands, PwC US and PwC Bermuda, collectively, the "PwC Entities"); (iii) Walter Noel Jr. ("Noel"); and (iv) Citigroup Global Markets Limited, JPMorgan Bank Luxembourg SA, JPMorgan Securities Limited and Nomura International PLC (collectively, the "Bank Redeemers" and, together with the FGG Entities, the PwC Entities, Noel and the Bank Redeemers, the "Discovery Parties"), and (b) authorizing the Foreign Representatives to conduct examinations of the Discovery Parties.

In support of this Motion, the Foreign Representatives respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  The Foreign Representatives, as the BVI Court-appointed liquidators of the Debtors, represent the interests of the Debtors' creditors and investors, which are victims of the Ponzi scheme perpetrated by Bernard L. Madoff for many years. Consistent with and in accordance with this Court's recognition of the Debtors' BVI liquidation proceedings as foreign main proceedings under Chapter 15, the Foreign

Representatives are undertaking efforts to realize upon assets of the Debtors within the United States – including claims and causes of action – for the benefit of the Debtors' stakeholders.

2. Those who invested in the Debtors – so-called "feeder funds" to BLMIS – are all indirect investors in the Madoff Ponzi scheme; accordingly, even if these investors are "net losers" under the terminology of these proceedings, they may be denied any recoveries from the BLMIS estate.[1] Therefore, these Madoff victims may need to look to recoveries realized by the Foreign Representatives, and distributed through the BVI liquidation proceedings, as the sole or material remedy for their losses. In furtherance of their efforts to realize meaningful recoveries for the Debtors' stakeholders, the Foreign Representatives are pursuing their rights and remedies under the Bankruptcy Code. Specifically, by this Motion, the Foreign Representatives seek leave to exercise their discovery rights under Section 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004.

3. The Foreign Representatives hereby seek to compel the production of documents from, and the authority to later conduct examinations of, parties that, upon information and belief, have possession of material documents of and concerning the Debtors and their assets, including claims and causes of action. Those parties include the Debtors' former investment manager, auditors, and institutions that made substantial redemptions from the Debtors in the months prior to the revelation of the Madoff fraud. The Foreign Representatives have much to unravel and much to unearth as part of the

---

[1] As this Court is aware, the BLMIS Trustee has taken the position that the SIPA "customer claims" asserted against the BLMIS estate by indirect investors in BLMIS, such as the Debtors' investors, should be disallowed. This issue is presently scheduled for hearing before the Court on October 19, 2010.

3

liquidation of the Debtors, and the discovery sought herein is a necessary step in that process.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1410. This matter is a core proceeding under 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. § 1521(a)(4) and Bankruptcy Rule 2004.

## BACKGROUND

**I.    The Chapter 15 Proceedings.**

3. On June 14, 2010, the Foreign Representatives filed petitions in this Court for recognition of the BVI Proceedings as foreign main proceedings under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 15 cases (the "Cases") of Sentry, Lambda and Sigma (collectively the "Debtors") have been administratively consolidated by the Court.

4. On July 22, 2010, the Court entered a Minute Order in the Cases recognizing the BVI liquidation proceedings for each of the Debtors as foreign main proceedings under Chapter 15 of the Bankruptcy Code. See Docket No. 47 (as amended by Docket Nos. 48 and 51).

5. On or about August 17, 2010, the Foreign Representatives obtained permission from the BVI Court to seek discovery from the Discovery Parties in the form

of document requests pursuant to Section 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rule 2004.[2]

6. On or about September 8, 2010, Christopher Stride resigned from his positions as joint liquidator of Sentry and Sigma and liquidator of Lambda. On that same date, Joanna Lau succeeded to Mr. Stride's liquidator positions, and Kenneth Krys was appointed a joint liquidator of Lambda along with Ms. Lau. As a result, Mr. Krys and Ms. Lau are now the joint liquidators of each of the Debtors. See *Notice of Change in Status of Foreign Representatives' Appointment Pursuant to 11 U.S.C. § 1518* [Docket No. 77].

**II.    The Debtors' Businesses.**

7. Each Debtor was originally organized in 1990 as an International Business Company under the laws of the BVI for the purpose of operating as an investment fund. Each Debtor's registered office is located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.

8. Sigma and Lambda were feeder funds to Sentry, which, in turn, was the largest of all the feeder funds to Bernard L. Madoff Investment Securities LLC ("BLMIS"). As of the end of October 2008, Sentry's account statements with BLMIS showed in excess of $6 billion of assets supposedly held by BLMIS, Sigma's account

---

[2] The BVI Court has required that the Foreign Representatives obtain its approval for any material activities undertaken in connection with the Debtors' liquidation proceedings. The Foreign Representatives have to date only requested BVI Court approval to seek document discovery from the Discovery Parties. Following a review of the documents produced to the Foreign Representatives, they will be in a position to make an informed assessment regarding the depositions that are necessary and to make an application before the BVI Court for approval to conduct such depositions. However, in the interests of economy and efficiency, the Foreign Representatives now seek this Court's approval to conduct examinations of the Discovery Parties on matters relating to the Discovery Requests (as defined herein), pending the BVI Court's approval of same.

statements showed holdings of approximately EUR 723 million and Lambda's account statements showed holdings of approximately 39 million CHF (Swiss francs).

9. According to Sentry's offering materials, BLMIS was to utilize a "nontraditional options trading strategy" which was described as "split strike conversion." Consistent with this stated investment policy, substantially all of Sentry's assets (some 95%) were turned over to BLMIS for utilization in the described options trading program. Up to 5% of Sentry's assets were available for investment in non-Madoff directed activities (the "Non-Madoff Investments").

10. In December 2008, it became publicly known that Bernard L. Madoff ("Madoff") had operated BLMIS for many years as a massive Ponzi scheme. Although Madoff purported to invest funds obtained from investors and feeder funds in securities, in reality, he did not use funds obtained from investors to purchase securities or to engage in the described options trading strategy. Instead, Madoff used new funds obtained from BLMIS investors, including the Debtors, to fund investor withdrawals, pay investors fictitious profits or otherwise misappropriate such funds. As a result of Madoff's perpetration of this massive fraud, billions of dollars of investor funds invested with BLMIS, including the funds held on behalf of the Debtors, had, by December 2008, been paid out by BLMIS as returns of principal or distributions of fictitious profits or were otherwise dissipated and misappropriated by Madoff and/or others acting in concert with him.

11. Until the disclosure of the Madoff fraud, investors in the Debtors generally had the right to redeem shares at their net asset value ("NAV") as determined by the respective Debtor in reliance on account information provided by BLMIS. Sentry

generally funded share redemptions from withdrawals against the Sentry's accounts with BLMIS, and Sigma and Lambda generally funded share redemptions from withdrawals against their respective accounts with Sentry. On December 18, 2008, following Madoff's arrest and the commencement of the liquidation of BLMIS, Sentry's and Sigma's Board of Directors announced the suspension of NAV calculation and redemptions.

### III. The Foreign Representatives' Need for Discovery.

12. In connection with the BVI Proceedings, the Foreign Representatives have undertaken the process of identifying potential assets of the Debtors, including potential claims and causes of action against various parties, and seeking to realize recoveries from such assets for the benefit of the Debtors' creditors. Among other things, the Foreign Representatives are investigating the Debtors' claims and causes of action against those parties that bear responsibility for the Debtors' massive losses in value resulting from their investments in BLMIS, as well as claims against those investors in the Debtors that improperly received redemption payments, including on account of fictitious profits, at the expense and to the detriment of other investors.

13. To date, the Foreign Representatives have undertaken substantial efforts to recover and reconstruct the Debtors' books and records, which were in disarray at the time of the Foreign Representatives' appointment as liquidators for the Debtors. Although the Foreign Representatives have had some success in obtaining certain documents and information through informal document requests and information sharing agreements with third parties, the Foreign Representatives believe that the exercise of their discovery rights under the Bankruptcy Code and Bankruptcy Rules is now necessary

7

to fully identify and realize assets – including claims and causes of action – so as to maximize recoveries available for the Debtors' creditors.

14. The Discovery Parties played central roles in connection with the Debtors' businesses and, upon information and belief, have within their possession, custody or control material documents and other information concerning the Debtors' assets, affairs, claims and causes of action. Below is a description of the Discovery Parties' relationships with the Debtors:

- **FGG Entities:** The FGG Entities, collectively, served as, among other roles, the Debtors' investment manager, investment advisor and placement agent, and provided the Debtors with investment management, risk-management, administrative and back-office services.

- **PwC Entities:** PwC Canada and PwC Netherlands served as the Debtors' auditors and issued various audit opinions for the Debtors. In addition, PwC Bermuda, PwC US, and PwC Int'l provided audit services for other large "feeder funds" to BLMIS, and may have assisted PwC Canada and PwC Netherlands in connection with their audits of the Debtors. In connection its role as auditor for the Kingate funds, PwC Bermuda conducted due diligence on Madoff, including interviewing him and visiting his offices at least once in 2005. Upon information and belief, PwC US may have been involved in the due diligence of Madoff as well. PwC Int'l appears to have coordinated the audits for all PwC entities performing work for BLMIS feeder funds.

- **Noel:** Noel served as a member of Sentry's 3-member board as well as the boards of FGG and other FGG-related funds and management company entities. He was also a founder of FGG.

- **Bank Redeemers:** The Bank Redeemers were significant investors in Sentry, and made substantial redemptions of their investments – in excess of $230 million in the aggregate – in the 3 months prior to the revelation of the Madoff fraud.

8

**RELIEF REQUESTED**

15. By this Motion, the Foreign Representatives seek an order (i) compelling each of the Discovery Parties to produce the documents responsive to the applicable document requests set forth on <u>Exhibits A1-A4</u> attached hereto (the "<u>Document Requests</u>")[3] and (ii) authorizing the Foreign Representatives to take the depositions of each of the Discovery Parties pending BVI Court approval of same.

16. The Foreign Representatives reserve their right to request and/or conduct any other discovery pursuant to Section 1521(a)(4), Rule 2004 or other applicable law to the extent that they are authorized to do so by the BVI Court, including serving additional document requests on or taking deposition testimony from any person or entity, including, without limitation, the Discovery Parties.

**BASIS FOR REQUESTED RELIEF**

**I.      Legal Standard**

17. Discovery in a Chapter 15 proceeding is governed by Section 1521(a)(4) of the Bankruptcy Code, which provides, in pertinent part, as follows:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including —
>
> (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.

18. Courts in the Southern District of New York have recognized that Chapter 15 provides for the production of documents and examination of witnesses in recognized

---

[3] The Discovery Requests directed to each Discovery Party are as follows: Exhibit A1 – FGG Entities; Exhibit A2 – PwC Entities; Exhibit A3 – Noel; Exhibit A4 – Bank Redeemers.

foreign proceedings. See In re SPhinX Ltd., 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006) (recognizing various forms of relief available to a foreign representative in Chapter 15 proceedings, including "the examination of witnesses and the delivery of information"); In re Hughes, 281 B.R. 224, 228 (Bankr. S.D.N.Y. 2002) ("Chapter 15 specifically permits a recognized foreign representative to examine witnesses and take evidence regarding the debtor's assets, affairs, obligations or liabilities"); In re Hopewell Int'l. Ins. Ltd., 258 B.R. 580, 584 (Bankr. S.D.N.Y. 2001) (discussing § 304: "discovery can be ordered in order to aid the foreign representative in locating and remitting assets"....).

19. Bankruptcy Rule 2004 provides an additional ground for seeking discovery in a Chapter 15 proceeding. See In re Hatteras Reinsurance Ltd., No. 06-11304 (Bankr. S.D.N.Y. June 29, 2006) [Docket No. 26] (in Chapter 15 case, court authorized the issuance of subpoenas pursuant to Fed. R. Civ. P. 45 and Bankruptcy Rules 2004 and 9016); see also In re Gandi Innovations Holdings, LLC., No. 09-51782-C, Order Recognizing Foreign Proceeding Pursuant To Chapter 15 (Bankr. W.D. Tex. June 5, 2009) (Bankr. W.D. Tex 2009) (court order granted the foreign representative "the authority to compel production of Debtors' books and records and the examination of any person pursuant to Bankruptcy Rule 2004"); In re Pro-Fit Holdings Ltd., 391 B.R. 850, 860 (Bankr. C.D. Cal. 2008) (Relief under Section 1521(a)(4) "includes the examination of witnesses pursuant to Rule 2004 and the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities[.]"); In re Hughes, 281 B.R. at 226-27 (in action ancillary to a foreign proceeding pursuant to Section 304, court found that Rule 2004 could be used "with respect to financial matters as well as other matters affecting the administration of the estate" and that there would be no prohibition against

the foreign representative using "information gained from testimony taken pursuant to the subpoena to assess potential claims").

20. Rule 2004(b) provides, in relevant part, as follows:

(a) <u>Examination on Motion</u>. On motion of any party in interest, the court may order the examination of any entity.

(b) <u>Scope of Examination</u>. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge...

(c) <u>Compelling Attendance and Production of Documentary Evidence</u>. The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

21. "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved.'" <u>See</u> <u>In re Coffee Cupboard, Inc.</u>, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing <u>Cameron v. United States</u>, 231 U.S. 710, 717 (1914)); <u>See also</u> <u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 432 (S.D.N.Y. 1993), <u>aff'd</u>, 17 F.3d 600 (2d Cir. 1994) ("Because the purpose of the Rule 2004 examination is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation.").

22. The scope of a Rule 2004 examination is "unfettered and broad," as the plain language of the rule indicates. <u>See</u> 9 Collier on Bankruptcy ¶ 2004.02[1] at 2004-6 (15th ed. Rev. 1997) (quoting <u>In re Table Talk, Inc.</u>, 51 B.R. 143, 145 (Bankr. D. Mass. 1985)); <u>see also</u> <u>In re Drexel Burnham Lambert Group, Inc.</u>, 123 B.R. 702, 711 (Bankr.

S.D.N.Y. 1991); In re Gee, 53 B.R. 891, 899 (Bankr. S.D.N.Y. 1985); In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984). Indeed, it is well-settled that the scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure. See In re Ionosphere Clubs, Inc., 156 B.R. at 432; In re Duratech Indus., 241 B.R. 283, 289 (Bankr. E.D.N.Y. 1999); In re Drexel Burnham Lambert Group, 123 B.R. at 711 (Bankr. S.D.N.Y. 1991).

23. Courts have gone so far as to use with approval words and phrases such as "fishing expedition," "exploratory and groping," and "inquisition." See, e.g., Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 42 B.R. 362, 364 (S.D.N.Y. 1984); In re Drexel Burnham Lambert Group, 123 B.R. at 711. Thus, Rule 2004 affords a party in interest an opportunity to conduct a wide-ranging examination with respect to the financial affairs of the bankruptcy estate. See In re Texaco Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987).

## II. The Requested Discovery From the Discovery Parties.

24. The discovery sought by the Foreign Representatives falls squarely within the scope of Rule 2004, as well as section 1521(a)(4). Specifically, the Foreign Representatives seek the Court's authority to request that the Discovery Parties produce documents responsive to the Document Requests and, if deemed appropriate by the Foreign Representatives following a review of the documents produced and upon approval by the BVI Court, to take depositions of such parties. As set forth below, the Document Requests are appropriate because they seek information in furtherance of the Foreign Representatives' duties and efforts to identify and recover assets of the Debtors, including claims and causes of action. The Debtors' liquidations and these Chapter 15

cases arise out of the largest Ponzi scheme in history, and broad Rule 2004 discovery is a necessary tool to aid the Foreign Representatives in untangling the web resulting from that scheme – a predicate to maximizing recoveries for the Debtors' creditors. See In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985) ("Bankruptcy Rule 2004 examinations are allowed for the purpose of discovering assets and unearthing frauds.").

### A. Discovery From the FGG Entities.

25. Through their myriad roles in managing and servicing the operations of the Debtors' businesses, the FGG Entities likely have possession of a substantial amount of documents pertaining to the Debtors and investments made on the Debtors' behalf. Such documents may be necessary for the Foreign Representatives to identify and obtain control of assets of the Debtors – including the Non-Madoff Investments – and to develop claims and causes of action against third parties. Although some information has been provided to the Foreign Representatives through informal information exchanges with the FGG Entities, the Foreign Representatives submit that formal discovery is necessary to receive, in a timely and efficient manner, a complete and accurate set of all relevant documents.

26. Sentry is the plaintiff in a civil action commenced in the Supreme Court for the State of New York against the FGG Entities and related parties. *Fairfield Sentry Limited (in liquidation) v. Fairfield Greenwich Group, et al.*, Index No. 601687/2009 (N.Y. Sup. Ct.) (the "FGG Action"). By Notice of Removal filed on September 10, 2010, the FGG Action was removed to the United States District Court for the Southern District of New York and subsequently transferred to this Court (Adv. Pro. No. 10-03800).[4] In

---

[4] The Notice of Removal also noticed referral of the FGG Action to this Court, but the referral has yet to be administratively processed.

the FGG Action, Sentry has asserted claims for breach of contract, breach of fiduciary duty, unjust enrichment, rescission and other statutory and equitable claims arising out of its contractual relationship with the defendants and defendants' mismanagement of fund assets. The damages sought in the FGG Action include more than $900 million in fees paid to the defendants for purported investment advice.

27. The Foreign Representatives do not seek discovery against the FGG Entities to improperly end-run the discovery rules applicable to that action. Given that the FGG Entities played integral roles in the management and operations of the Debtors, and notwithstanding the pendency of the FGG Action, the Foreign Representatives are entitled to seek discovery from the FGG Entities in order to identify assets of the Debtors – including, among others, their books and records, Non-Madoff Investments, and claims and causes of action against other parties. See In re Recoton Corp., 307 B.R. 751, 760 (Bankr. S.D.N.Y. 2004) (granting motion for Rule 2004 discovery despite pending class action lawsuits where "the discovery sought . . . relates to potential claims in the bankruptcy cases and is consistent with the purposes of Rule 2004"); In re Int'l. Fibercom, 283 B.R. 290, 293 (Bankr. D. Ariz. 2002) (granting motion for Rule 2004 discovery despite pending litigation in other jurisdictions where party seeking discovery "does not appear to be initiating the use of Rule 2004 to circumvent or overcome the more restrictive procedural rules in place for discovery in an adversary proceeding . . . [r]ather, [plaintiff] has initiated the use of Rule 2004 for its proper purpose, to investigate matters that may affect the administration of the debtor's estate").

### B. Discovery From the PwC Entities.

28. As former auditors for the Debtors and/or related parties, the PwC Entities likely have possession of a substantial amount of records relating to the Debtors and their investments in BLMIS as well as Non-Madoff Investments. Through the Discovery Requests, the Foreign Representatives seek the production of documents from the PwC Entities relating to, *inter alia*, audit reports conducted by PwC concerning the Debtors and due diligence conducted on the Debtors' behalf. Those documents may provide the Foreign Representatives with information necessary to identify and develop certain of the Debtors' claims and causes of action. Although the Debtors' PwC auditors have provided certain documents to the Foreign Representatives on an informal basis, the Foreign Representatives believe it is important and necessary to obtain a complete set of documents from the PwC Entities relating to the Debtors.

### C. Discovery From Noel.

29. As a founder of FGG and member of the boards of Sentry and other FGG-related entities, Noel likely has possession of records and information concerning the Debtors, including information that may support the Debtors' claims and causes of action and identify other assets (such as Non-Madoff Investments). Through the Discovery Requests, the Foreign Representatives seek the production of such documents.[5]

### D. Discovery From the Bank Redeemers.

30. As noted, the Bank Redeemers are former investors in Sentry that redeemed a substantial portion of their investments in the months immediately preceding

---

[5] Noel is also a defendant in the FGG Action. Given his intimate historical role in the affairs of the Debtors, and the fact that the Discovery Requests are not specifically targeted to the claims against him in the FGG Action, the Foreign Representatives submit that requested discovery from Noel is appropriate and permissible.

the discovery of the Madoff fraud. Documents and information concerning those redemptions and related investment activities will allow the Foreign Representatives to understand the circumstances under which the redemptions were made (including, for example, whether they were made with the redeemers' knowledge of the fraud) and whether the Debtors hold claims to recover all or a portion of those redemptions.[6]

## III. Additional Discovery.

31. Upon receiving and reviewing the documents responsive to the Document Requests, the Foreign Representatives may determine that further discovery from the Discovery Parties is necessary to complete their investigations and recovery efforts. As the scope of such additional discovery will not be fully determined until after the Foreign Representatives have had a meaningful opportunity to review the documents responsive to the Document Requests, the Foreign Representatives respectfully request that this Court also authorize them to conduct, without further of order of this Court, additional discovery beyond that specifically requested in the Document Requests, including, without limitation, additional document requests and/or examinations from the Discovery Parties or any other person or entity, to the extent authorized by the BVI Court and deemed necessary by the Foreign Representatives, and to the extent such additional

---

[6] One of the Bank Redeemers, Nomura International PLC ("Nomura"), is a party to a civil action asserted by the Foreign Representatives on behalf of the Debtors, initially commenced in New York state court (through the issuance of a notice and summons) and subsequently removed to the District Court with a request for referral to this Court. The case is styled *Fairfield Sentry Limited (In Liquidation) et al v. Nomura International plc et al.* (1:10-cv-06600-GBD) (the "Nomura Action"). The Foreign Representatives have not yet filed a complaint in the Nomura Action. Moreover, the requested discovery includes documents that relate to redemption payments subsequently transferred to Nomura's beneficiaries and other matters that do not relate to the claims that will be directly asserted against Nomura. For those reasons, the Foreign Representatives submit that the requested discovery against Nomura is appropriate.

discovery relates to the potential recovery of assets for the benefit of the Debtors' creditors.

## NOTICE

32. The Foreign Representatives have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC; (c) each of the Discovery Parties or their counsel; and (d) all parties that have filed a notice of appearance in these Chapter 15 cases. The Foreign Representatives respectfully submit that no other or further notice need be given.

## NO PRIOR REQUEST FOR RELIEF

33. No previous motion for the relief sought herein has been made to this or any other Court.

## WAIVER OF MEMORANDUM OF LAW

34. In accordance with Rule 9013-1(b) of the Local Bankruptcy Rules of the Southern District of New York, no separate memorandum of law is necessary as all authorities relied on in support of this Motion are set forth herein.

**CONCLUSION**

WHEREFORE, for the reasons stated herein, the Foreign Representatives respectfully request that this Court enter an order in the form attached hereto as Exhibit B: (i) requiring the production of documents from the Discovery Parties responsive to the Document Requests; (ii) authorizing the Foreign Representatives to take examinations of each of the Discovery Parties; and (iii) granting the Foreign Representatives such other and further relief as this Court may deem just and proper.

Dated: September 30, 2010
      New York, New York

                **BROWN RUDNICK LLP**

                By: : /s/ David J. Molton
                      David J. Molton
                      May Orenstein
                      Daniel J. Saval
                      Kerry L. Quinn
                      Seven Times Square
                      New York, New York 10036
                      (212) 209-4822

                      *Attorneys for the Foreign Representatives*

# 8266814