**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:

FAIRFIELD SENTRY LIMITED, *et al*.,

   Debtors in Foreign Proceedings.

------------------------------------------------------------X
FAIRFIELD SENTRY LIMITED, *et al.,*
(In Liquidation), acting by and through the
Foreign Representatives thereof,

     Plaintiffs,
  -against-

THEODOOR GGC AMSTERDAM, *et al.*,

     Defendants.
------------------------------------------------------------X

**FOR PUBLICATION**

Chapter 15

Case No. 10-13164 (BRL)

(Jointly Administered)

Adv. Pro. No. 10-03496[1]

(Administratively Consolidated)

**ARGUING ON THE MOTION:**

BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
By: David J. Molton
   May Orenstein
   Daniel Saval
   Kerry L. Quinn

*Attorneys for the Foreign Representatives*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
By: Thomas J. Moloney

*Attorneys for HSBC Private Bank (Suisse) SA, HSBC Securities Services (Luxembourg) SA,*
*HSBC Bank USA NA (sued here as HSBC Bank USA), HSBC Private Bank (C.I.) Limited (sued*

---

[1] A list of the consolidated adversary proceedings as of May 20, 2011 is attached hereto as Appendix 1, submitted by counsel for the Foreign Representatives upon the Court's request.

*here as HSBC Private Bank (Guernsey) Ltd), HSBC Private Banking Nominee 1 (Jersey) Limited (sued here as FS/HSBC Private Banking Nom), Robinson & Co., Caceis Bank Luxembourg, CDC IXIS, Citibank NA London, Citibank (Switzerland) AG, Citigroup, Citivic Nominees Limited, BNP Paribas Securities Services Luxembourg, BGL BNP Paribas (sued here as BNP Paribas Luxembourg SA), BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis, & BNP Paribas (Suisse) SA Private*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:     (212) 558-4000
Facsimile:      (212) 558-3588
<u>By</u>:     Robinson B. Lacy
         Jeffrey T. Scott
         Joshua Fritsch
         Yavar Bathaee

*Attorneys for Defendant Safra National Bank of New York and BanqueSafraLuxembourg*

Before: Hon. Burton R. Lifland
           United States Bankruptcy Judge

## <u>MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR REMAND OR ABSTENTION</u>

Before the Court are the motions (the "Remand Motions") filed by certain defendants (the "Movants") in 42 of the 209 above-referenced administratively consolidated adversary proceedings (the "Actions")[2] currently pending before this Court in connection with the above-referenced chapter 15 cases of Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," and together with Sentry and Sigma, the "Debtors") requesting that this Court remand the Actions to the New York Supreme Court for the County of New York, Commercial Division (the "State Court") or abstain from adjudicating

---

[2] This decision applies equally to non-moving defendants in the remaining removed administratively consolidated adversary proceedings or future such actions. *See* 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."); Amended Order Authorizing the Consolidation of Redeemer Actions Pursuant to Federal Rule of Bankruptcy Procedure 7042, Case No. 10-013164, Dkt. No. 25, ¶ 2 [hereinafter "Consolidation Order"] ("Any other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the Redeemer Actions shall be consolidated for pretrial and discovery purposes.").

the Actions pursuant to, *inter alia*, 28 U.S.C. §§ 157, 1334(c) and 1452(b), and Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rules") 5011 and 9027(d).

With upward of 209 actions pending and almost $6 billion in play, which is the best

ballpark to host the games?   After extensive briefing and oral argument, the Court finds the

Movants to be incorrect in their broad assertion that the Actions, seeking within the territorial

jurisdiction of the United States to recover multi-billions in potential foreign estate assets, "have

nothing to do with the federal bankruptcy laws and no real connection to any bankruptcy case."

HSBC Mot., p. 1.[3]   To the contrary, the relief sought in the Actions strikes directly at the core

bankruptcy functions of this Court under chapter 15 to provide ancillary assistance within the

United States to the recognized, foreign main proceedings and the efforts of the Foreign

Representatives to maximize the value of the BVI estate.   These Actions are but a small subset of

the complex litigation scheme pending before this Court involving the Debtors and the

international Madoff Ponzi scheme, such that "[h]aving these intimately related cases

consolidated before one judge who is familiar with the background . . . will be more efficient and

promote the uniform application of the bankruptcy laws."   *In re Fairfield Sentry Ltd., et al.*, Nos.

10-CIV-7340, *et al*., 2010 WL 4910119, at *3 (S.D.N.Y. Nov. 22, 2010) (denying withdrawal of

the reference in these cases).[4]

Accordingly, for the reasons set forth below and at oral argument, the Remand Motions

are DENIED.

---

[3] Memorandum of Law in Support of Defendants' Motion to Remand and for Abstention, Adv. Pro. No. 10-03633, Dkt. No. 12 [hereinafter "HSBC Mot."].

[4] The issues raised in the Remand Motions have been fully and extensively briefed, argued and submitted for determination here in the courts of the Southern District of New York. Recently, this Court has been advised *informally* that the BVI court is newly reviewing certain BVI issues of law potentially impacting the merits of portions of the pending proceedings in this jurisdiction. Nothing in this Court's determination of the Remand Motions is intended to reach the merits of, or the application of BVI law to, these proceedings.

## BACKGROUND

I.    THE DEBTORS AND THE CHAPTER 15 CASES

The Debtors were established for the purpose of allowing mainly non-U.S. persons and certain tax-exempt United States entities to invest with Bernard L. Madoff Investment Securities LLC ("BLMIS").  While the Debtors were operating, investors were able to redeem their shares at will, receiving what was believed at the time to be their proportional interest in the assets of the Debtors.   On December 11, 2008, however, it was revealed that Bernard L. Madoff ("Madoff") had for decades perpetrated a Ponzi scheme through the investment advisory side of BLMIS, which is currently in liquidation before this Court pursuant to 15 U.S.C. §§ 78aaa *et seq.*, the Securities Investor Protection Act ("SIPA").   *Sec. Inv. Prot. Corp. v. BLMIS (In re BLMIS)*, Case No. 08-01789 (Bankr. S.D.N.Y. 2008).

Subsequent to the revelation of the BLMIS fraud, redemption payments ceased, and certain of the Debtors' shareholders and creditors commenced insolvency proceedings on behalf of the Debtors (the "BVI Proceedings") in the British Virgin Islands (the "BVI") before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands (the "BVI Court").  The BVI Proceedings were commenced on separate dates with respect to each of the Debtors: Lambda on February 27, 2009, Sentry on April 21, 2009, and Sigma on April 23, 2009.  The BVI Court appointed Christopher Stride ("Stride") as liquidator of Lambda by order dated April 23, 2009, and Stride and Kenneth Krys ("Krys") as joint liquidators of Sentry and Sigma by orders dated July 21, 2009.  Joanna Lau ("Lau," and together with Krys and their predecessors, the "Foreign Representatives") subsequently succeeded to Stride's liquidator positions, and Krys was appointed as joint liquidator of Lambda with Lau.  As a result, Krys and Lau are the current joint court-appointed liquidators of the Debtors' estates, as well as the

Foreign Representatives with respect to each of the Debtors' chapter 15 cases.  *See* Notice of Change in Status of Foreign Representatives' Appointment Pursuant to 11 U.S.C. § 1518, Case No. 10-13164, Dkt. No. 77.

The Foreign Representatives filed the Debtors' chapter 15 petitions seeking recognition of the BVI Proceedings before this Court on June 14, 2010 (the "Petition Date").  The Debtors' chapter 15 cases were consolidated for administrative purposes by order dated June 17, 2010. *Id.* at  Dkt. No. 11.  On July 22, 2010 (the "Recognition Date"), after a hearing held on the matter, this Court entered an Order (the "Recognition Order")[5] recognizing the Debtors' BVI Proceedings as foreign main proceedings and granting other relief under sections 1517(b)(1) and 1521 of the Bankruptcy Code (the "Code").  *See generally In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010).

## II.    THE FOREIGN REPRESENTATIVES' ROLE AND THE PENDING ACTIONS

As the Debtors are the largest of the so-called "feeder funds" to have invested with Madoff through BLMIS, the Debtors' investors are not only creditors to this proceeding, but also victims of the massive Ponzi scheme.  In order to marshal assets for fair and efficient distribution among these creditors and victims, in accordance with BVI insolvency law, the Foreign Representatives are "entrust[ed] [with] the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States."  11 U.S.C. § 1521(a)(5); *see also In re Fairfield Sentry Ltd.*, 440 B.R. at 67 ("[G]ranting the requested relief under section 1521 of the Code fosters the 'fair and efficient administration of [the Debtors'] cross-border insolvencies' by ensuring that only one unbiased party-the Liquidators-quarterback the Debtors'

---

[5] Exhibit A – Bench Memorandum and Order Granting Chapter 15 Petitions of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited For Recognition of Foreign Proceedings, Dkt. No. 47, as amended by Errata Orders at Dkt. Nos. 48, 51.

causes of action 'in the interests of all creditors and other interested entities, including the debtor.' ") (quoting 11 U.S.C. § 1501(a)(3)).  Recognition of the BVI Proceedings as foreign main proceedings under chapter 15, among other things, grants the Foreign Representatives "the capacity to sue and be sued in a court of the United States" and the ability to "apply directly to a court in the United States for appropriate relief in that court."  11 U.S.C. § 1509(b) ("Right of Direct Access").  Moreover, as liquidators appointed by order of the BVI Court, the Foreign Representatives "have custody and control of all the assets" of the Debtors and the powers to, *inter alia*, "commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of [the Debtors] in the British Virgin Islands or elsewhere" and "all other things incidental to the exercise of" such powers.  BVI Insolvency Order, pp. 11–12.[6]

In furtherance of these powers and duties, the Foreign Representatives have identified and asserted causes of action against a number of parties on behalf of the Debtors.  In April 2010, with the BVI Court's approval, the Foreign Representatives began commencing actions in the United States against direct or indirect subscribers for the return of redemption payments (the "Redemption Payments") withdrawn from Sentry's BLMIS account (the "Redeemer Actions").  Following this Court's entry of the Recognition Order, the Foreign Representatives removed those Redeemer Actions that had been asserted in the State Court to this Court pursuant to 28 U.S.C. section 1452, and continued filing any post-recognition Redeemer Actions before this Court.  The instant Remand Motions were then filed in 42 of the 56 Redeemer Actions removed from the State Court.  *See* Redeemer Actions Statistics Letter, p. 2.[7]  Thus, the Actions subject to

---

[6] Corrected Declaration of Kerry L. Quinn in Support of Foreign Representatives' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Remand or Abstain, Adv. Pro. No. 10-03496, Dkt. No. 17 [hereinafter "Quinn Decl."], Ex. A [hereinafter "BVI Insolvency Order"].

[7] Letter To The Honorable Judge Burton R. Lifland Regarding Statistics on Redeemer Actions, Adv. Pro. No. 10-03496, Dkt. No. 265 [hereinafter "Redeemer Actions Statistics Letter"].

the instant Remand Motions constitute 42 of the Redeemer Actions pending before this Court.

The original complaints filed in the Redeemer Actions assert claims titled money had and received, unjust enrichment, mistaken payment and constructive trust (the "Common Law Claims"). These claims are equitable and restitutionary in nature, seeking Redemption Payments, including "fictitious profits," paid to the Debtors' shareholders based on a miscalculated net asset value that was falsely inflated as a result, ultimately, of the Madoff Ponzi scheme. The legal theories asserted in the Common Law Claims are identical to those asserted in certain other claims commenced in the BVI Proceedings, including against some overlapping defendants, and seem to differ only in the timing of the particular transfers at issue. *See, e.g.*, Supp. Krys Decl., ¶ 20 & Ex. G[8] ("The BVI [restitution actions] involve claims to recover improperly-calculated redemption payments made by the Debtors during the months of October 2003 through March 2004 to certain redeeming shareholders pursuant to theories of restitution under BVI law . . . . In contrast, the common law claims in the instant Redeemer Actions seek to recover improperly-calculated redemption payments made by the Debtors from 2004 onward . . . ."); Keeley Decl., Ex. 2[9] (BVI Court notice of claim for "[r]estitution severally from the Defendants of the sums . . . paid by [Debtor] under a mistake of fact . . . upon the redemption of the various Defendants' shareholdings in the [Debtor] during November 2003").

Subsequent to the filing of the Remand Motions, with BVI Court approval by order entered December 9, 2010, the Foreign Representatives amended 34 of the 42 Actions within the "as of right" period to include statutory avoidance actions under BVI law (the "BVI Avoidance

---

[8] Supplemental Declaration of Kenneth Krys in Support of Foreign Representatives' Omnibus Supplemental Memorandum of Law in Further Opposition to Defendants' Motions to Remand or Abstention, Adv. Pro. No. 10-03496, Dkt. No. 158 [hereinafter "Supp. Krys Decl."].

[9] Declaration of Charles J. Keeley, III, in Support of Moving Defendants' Motion to Withdraw the Reference of the Above-Captioned Actions to the Bankruptcy Court, Adv. Pro. No. 10-03633, Dkt. No. 3 [hereinafter "Keeley Decl."].

Claims"). *See* BVI Order Permitting Amendments, ¶¶ 1, 2;[10] Redeemer Actions Statistics Letter, p. 2.  The BVI Avoidance Claims are asserted under sections 245 and 246 of the BVI Insolvency Act for "unfair preferences" and "undervalue transactions," targeting transfers occurring during the BVI statutory vulnerability period.  *See* Supp. Hare Decl., Ex. B, pp. 137–39 (Sections 245 and 246 of The BVI Insolvency Act).  Like the Common Law Claims, the BVI Avoidance Claims seek Redemption Payments, including fictitious profits, for the benefit of the Debtors' estates and their creditors and stakeholders as a whole.

While the number of Redeemer Actions and the amounts sought have continually increased, evading any lasting calculation, at the time of this decision there are 209 adversary proceedings pending, seeking in the aggregate over $5.79 billion, including fictitious profits in excess of $690 million.  *See* Redeemer Actions Statistics Letter, p. 1.  For administrative purposes, after a hearing held on November 9, 2010, these Redeemer Actions, and "[a]ny other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the Redeemer Actions," were procedurally consolidated for pretrial and discovery purposes by order dated November 10, 2010, as amended by order dated November 17, 2010. *See* Consolidation Order, ¶ 2.  This Court additionally entered a scheduling order, subsequently revised, implementing a coordinated schedule for the Actions.  *See* Revised Second Amended Preliminary Scheduling Order for Redeemer Actions, Adv. Pro. No. 10-03496, Dkt. No. 220.

In addition to the Redeemer Actions, the Foreign Representatives are pursuing Sentry's action against its former investment advisors, including Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors

---

[10] *See* Supplemental Declaration of William Hare, Adv. Pro. No. 10-03496, Dkt. No. 91, [hereinafter "Supp. Hare Decl."], Ex. A [hereinafter "BVI Order Permitting Amendments"].

LLC, Fairfield International Managers, Inc. and certain related individuals, seeking in excess of $919 million in investment management and performance fees from Sentry's BLMIS account (the "Sentry Direct Action"). The Sentry Direct Action was commenced in the Commercial Division of the Supreme Court of the State of New York, New York County, on May 29, 2009, and ultimately removed to the United States District Court for the Southern District of New York (the "District Court") and referred to this Court, where it is currently pending. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800 (Bankr. S.D.N.Y.). The parties entered into a stipulation whereby the defendants' time to move, answer or otherwise respond to the complaint is set for June 6, 2011. *See id.*, Dkt. No. 9. There has been no remand motion filed with respect to this action. The complex issues involving these claims are the subject of a pending settlement described below.

In addition to the actions now pending, the Foreign Representatives are investigating potential claims against any parties bearing responsibility for the Debtors' massive losses in value in connection with their BLMIS investments.

Aside from actions pursued by the Foreign Representatives, there is also pending before this Court a putative derivative action (the "Sentry Derivative Action") commenced by shareholders of Sentry (the "Morning Mist Plaintiffs"). *See Morning Mist Holdings Ltd. v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03765 (Bankr. S.D.N.Y.). Originally filed in the Commercial Division of the New York State Supreme Court, after previous removal to the District Court and remand, the Sentry Derivative Action was ultimately removed to this Court on September 10, 2010 by the Foreign Representatives. Although a motion to remand was filed by plaintiffs in this action, the parties have entered into a so-ordered stipulation whereby the remand

motion was adjourned *sine die* and "deemed suspended" without prejudice to reinstatement upon certain conditions that have not occurred.  *See id.*, Dkt. No. 9, p. 2.

Finally, this Court is overseeing the action commenced prior to the Recognition Date by the Trustee of the SIPA liquidation proceeding of BLMIS (the "BLMIS Trustee") seeking, *inter alia*, over $3 billion in fraudulent transfers and preferences from the Debtors (the "BLMIS Trustee's Action").  *See Picard v. Fairfield Sentry Ltd., et al. (In re BLMIS)*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.).  Pursuant to the Recognition Order, this proceeding has remained active, with the parties engaged in ongoing negotiations.  *See In re Fairfield Sentry Ltd.*, 440 B.R. 60, 66 (Bankr. S.D.N.Y. 2010) (staying upon recognition and the request of the Foreign Representatives "all actions concerning the Debtors' rights and assets, with the limited exception of recognizing and implementing the stipulation entered into in the BLMIS Trustee's adversary proceeding against the Debtors, with respect to which the parties continue to engage in good faith efforts to facilitate settlement.").  A preliminarily proposed settlement has been reached, and a motion for approval has been scheduled to be heard by this Court on June 7, 2011 and by the BVI Court on June 8, 2011.  *Picard v. Fairfield Sentry Ltd, et al. (In re BLMIS)*, Adv. Pro. No. 09-01239, Dkt. No. 69 (Bankr. S.D.N.Y.); *In re Fairfield Sentry Ltd, et al.*, Case No. 10-13164, Dkt. No. 411 (Bankr. S.D.N.Y.).

### III.    THE REMAND MOTIONS AND THE DISTRICT COURT ORDER DENYING WITHDRAWAL OF THE REFERENCE

The Movants seeking remand are defendants in 42 of the 209 pending Redeemer Actions, leaving 14 removed Redeemer Actions and 167 total Redeemer Actions pending before this Court without request for remand or challenge to subject matter jurisdiction.  *See* Redeemer Actions Statistics Letter, p. 2.

The Movants previously filed approximately 40 motions before the District Court requesting withdrawal of the reference and determination by the District Court of the remand issue (the "Withdrawal Motions"). The Withdrawal Motions were consolidated before a single judge and denied on November 22, 2010. The District Court determined that "judicial efficiency would be served and the uniform administration of the bankruptcy laws improved by allowing the bankruptcy judge to decide this [remand] issue in the first instance," and accordingly held that "[t]he bankruptcy court is empowered to consider the merits of any motions to remand to state court" in these related and administratively consolidated Redeemer Actions. *In re Fairfield Sentry Ltd., et al.*, 2010 WL 4910119, at *2, *4.

## DISCUSSION

### I.    THIS COURT HAS JURISDICTION OVER THE ACTIONS UNDER 28 U.S.C. § 1334

As an issue of first impression in the Second Circuit, in accordance with the reasoning articulated by the Fifth Circuit Court of Appeals in *Fogerty v. Petroquest Res., Inc. (In re Condor Ins. Ltd.)*, 601 F.3d 319 (5th Cir. 2010) (Higginbotham, J.), this Court retains subject matter jurisdiction over the BVI Avoidance Claims in particular, and the Actions as a whole, as core proceedings directly affecting this Court's core bankruptcy functions under chapter 15, and otherwise certainly "related to" the Debtors' chapter 15 cases.

The Actions were removed to this Court by the Foreign Representatives pursuant to 28 U.S.C. section 1452, which provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, *if such district court has jurisdiction of such claim or cause of action under section 1334 of this title*." 28 U.S.C. § 1452 (emphasis added). Upon the instant Remand Motions, the Foreign Representatives, as the party removing the actions, bear the burden of establishing such

11

jurisdiction by a preponderance of the evidence. *Blockbuster Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) (reviewing removal under 28 U.S.C. § 1446); *Pan Atl. Group, Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 638 (S.D.N.Y. 1995).

Bankruptcy court jurisdiction derives from 28 U.S.C. section 1334, which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *see also* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."); Standing Order of Referral of Cases to Bankruptcy Judges, United States District Court for the Southern District of New York (July 10, 1984). Matters that "arise under" title 11 or "arise in" cases under title 11 are within the bankruptcy court's "core" jurisdiction, and may therefore be heard and determined by the bankruptcy court. 28 U.S.C. § 157(b) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . ."); *see also Silverman v. Gen. Ry. Signal Co.* (*In re Leco Enters., Inc.*), 144 B.R. 244, 248 (S.D.N.Y. 1992) ("[T]he core proceedings listed in 28 U.S.C. § 157(b)(2) are essentially identical to the claims defined as 'arising in' and 'arising under' proceedings in 28 U.S.C. § 1334.") (citations omitted); *Moelis & Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc., et al.)*, Adv. Pro. No. 10-04273, 2011 WL 766129, at *3 (Bankr. S.D.N.Y. Feb. 25, 2011) ("Core matters include those that 'arise under' or 'arise in' bankruptcy cases."). Matters that are not core proceedings, but are "otherwise related to a case under title 11" may be heard by the bankruptcy court and determined by the district court upon consideration of the bankruptcy court's findings. 28 U.S.C. § 157(c)(1).

### A. THIS COURT HAS CORE JURISDICTION OVER THE ACTIONS

A non-exclusive list of core proceedings that arise under title 11 or arise in cases under title 11 is set forth in 28 U.S.C. section 157(b)(2), including (i) matters concerning the administration of the estate; (ii) orders to turn over property of the estate; (iii) proceedings to determine, avoid, or recover preferences; (iv) proceedings to determine, avoid, or recover fraudulent conveyances; (v) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity security holder relationship; and (vi) recognition of foreign proceedings *and other matters under chapter 15 of title 11*. *See* 28 U.S.C. § 157(b)(2)(A),(E), (F), (H), (O), (P) (emphasis added).

Courts in the Second Circuit maintain that "core proceedings should be given a broad interpretation," including any proceeding that (1) is unique to or uniquely affected by the bankruptcy proceedings, or (2) directly affects a core bankruptcy function. *United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. and Indem. Assoc., Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 636 (2d Cir. 1999) (internal quotations omitted); *see also LFD Operating, Inc. v. Gen. Elec. Capital Corp. (In re Ames Dep't Stores, Inc.)*, No. 06-CIV-5394, 2008 WL 7542200, at *6 (S.D.N.Y. June 4, 2008). A determination that a proceeding is core "shall not be made solely on the basis that its resolution may be affected by State law," 28 U.S.C. § 157(b)(3), but rather "on a case by case basis by evaluating both the form and the substance of the particular proceeding." *Ames Dep't Stores, Inc.*, 2008 WL 7542200, at *6; *see also Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995) ("A determination of whether a matter is 'core' depends on the nature of the proceeding.").

Particularly relevant here is the last category in the non-exclusive statutory list of core proceedings, "recognition of foreign proceedings and other matters under chapter 15 of title 11,"

13

28 U.S.C. § 157(P), added by Congress in adopting chapter 15 of the Code.  H.R. Rep. 108-40(I),

108th Cong., 1st Sess. (Mar. 18, 2003) ("[A] new subsection (P) to section 157 of title 28 makes

cases under this chapter part of the core jurisdiction of bankruptcy courts . . . .").  This addition

dictates that certain chapter 15 matters, including but not limited to the adjudication of the

recognition petition itself, fall within the core jurisdiction of the bankruptcy court.  In fact, the

bankruptcy court is statutorily prohibited from permissively abstaining in the interests of comity

with state courts or respect for state law with respect to chapter 15 cases.  28 U.S.C. § 1334(c)(1)

("*Except with respect to a case under chapter 15 of title 11*, nothing in this section prevents a

district court in the interest of justice, or in the interest of comity with State courts or respect for

State law, from abstaining from hearing a particular proceeding arising under title 11 or arising

in or related to a case under title 11.") (emphasis added).  This centralization and federalization

of core chapter 15 proceedings is not undone by section 1509 of the Code, which advises that the

foreign representative has the capacity to sue in other courts in the United States only "*[i]f the

court grants recognition . . . and subject to any limitations that the court may impose consistent

with the policy of [chapter 15].*"  11 U.S.C. § 1509(b) (emphasis added).  The legislative history

of section 1509 of the Code reaffirms that

> chapter 15 is intended to be the exclusive door to ancillary assistance to foreign
> proceedings. *The goal is to concentrate control of these questions in one court.*
> That goal is important in a federal system like that of the United States, with
> many different courts, state and federal, that may have pending actions involving
> the debtor or the debtor's property.

H.Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 100-111 (2005) (emphasis added).  Consistent

with the purposes of chapter 15 to promote uniformity and ease communication and

coordination, the effect of these provisions, read in light of existing core jurisdiction precedent,

is to centralize within the bankruptcy court civil proceedings arising under, or arising in cases

under, chapter 15 that by nature are unique to bankruptcy or directly affect the core bankruptcy

functions of the court providing foreign ancillary assistance under chapter 15. *See In re U.S. Lines, Inc.*, 197 F.3d at 637 ("Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.") (internal citations omitted); Daniel M. Glosband, *et al.*, *The American Bankruptcy Institute Guide to Cross-Border Insolvency in The United States*, 26 (American Bankruptcy Institute 2008) ("Chapter 15 places control over assistance to a foreign representative of a foreign proceeding in a single court, the bankruptcy court in which a Chapter 15 case may be commenced under the venue rules.").

Against this backdrop, the BVI Avoidance Claims are precisely the "other matters under chapter 15 of the Code" over which this Court retains core jurisdiction. 28 U.S.C. § 157(b)(2)(P). The BVI Avoidance Claims for "unfair preferences" and "undervalue transactions" are, as their names suggest, statutory claims under BVI insolvency law, assertable only by the Foreign Representatives, to avoid and recover certain transfers of assets from the Debtor for the benefit of the BVI estate. Supp. Hare Decl., ¶ 18 & Ex. B, pp. 137–39. They are analogous to traditionally core United States bankruptcy proceedings "to determine, avoid, or recover preferences," "to determine, avoid, or recover fraudulent conveyances" or "affecting the liquidation of the assets of the estate," and are likewise inextricably tied to the value of the BVI estate. 28 U.S.C. § 157(b)(2)(F), (H), (O). The Foreign Representatives' pursuit of these claims falls directly under this Court's grant of discretionary relief in the Recognition Order, "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative." 11 U.S.C. § 1521(a)(5); *In re Fairfield Sentry Ltd.*, 440 B.R. 60, 67 (Bankr. S.D.N.Y. 2010); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008)

("Relief [under sections 1507, 1521 and 1525] is largely discretionary and turns on subjective factors that embody principles of comity."). Such assets include not only tangible funds, but also intangible assets, including the Actions themselves, located within the United States.[11]    11 U.S.C. § 1502(8); *In re JSC BTA Bank*, 434 B.R. 334, 342 (Bankr. S.D.N.Y. 2010) ("The phrase 'within the territorial jurisdiction of the United States,' . . . highlights the in rem nature of jurisdiction in a chapter 15 case and refers to tangible property within the territory of the United States *and intangible property deemed under applicable nonbankruptcy law to be located within this country*.") (emphasis added). As a result, adjudication of these claims lies at the core of this Court's ancillary bankruptcy function, consistent with principles of comity to the laws and policies of the BVI foreign main proceeding, to ensure "protection and maximization of the value of the debtor's assets" and "fair and efficient administration . . . that protects the interests of all creditors, and other interested entities, including the debtor."[12]  11 U.S.C. § 1501(a)(3), (4);

---

[11] Jurisdiction is consistent with the Movants' rather uncontroversial arguments that the mere assertion of a lawsuit in the United States by the foreign representative (creating intangible property in the U.S.) should not preclude otherwise proper state court adjudication of a civil proceeding commenced in a chapter 15 case. *See* Supplemental Memorandum of Law in Support of Defendants' Motion to Remand and for Abstention, Adv. Pro. No. 10-03496, Dkt. No. 127, p. 2, n.3 [hereinafter "HSBC Supp. Mot."] (citing *Brandy v. XE Servs. LLC*, No. 5:09-CV-449-BO, 2011 WL 285241, at *4 (E.D.N.C. Jan. 26, 2011) (holding that a claim itself was not a *res* in the U.S. for purposes of creating standing for a nonresident alien to sue in a federal court in the absence of any federal statute conferring standing)). Indeed, subject to limitations imposed by the court granting recognition, section 1509 grants access to both federal and state U.S. courts. *See* 11 U.S.C. § 1509. Here, however, core bankruptcy jurisdiction over the Actions is based not only upon their proper assertion in the United States—which is indeed relevant pursuant to, *inter alia*, section 1521(a)(5) of the Code—but more particularly on the nature of the claims asserted and the particular discretionary chapter 15 relief granted. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. at 333 ("Relief [under sections 1507, 1521 and 1525] is largely discretionary and turns on subjective factors that embody principles of comity."). The Actions are not "just like any other tort-like statutory claims under foreign law" or state law, which may lack a basis for federal jurisdiction and be properly remanded by an ancillary court, but rather are directly connected to the BVI estate and characteristic of the deference and ancillary assistance contemplated by chapter 15. *See* HSBC Supp. Mot., p. 13.

[12] It should be noted that a purpose of chapter 15 under section 1501 of the Code is for the ancillary court to protect "the debtor's assets" generally, without qualification by the territorial jurisdiction language. *Compare* 11 U.S.C. § 1502(8) ("within the territorial jurisdiction of the United States', *when used* with reference to property of a debtor, refers to tangible property located within the territory of the United States and intangible property deemed under applicable nonbankruptcy law to be located within that territory . . . .") (emphasis added) *with* 11 U.S.C. § 1501(a)(4) (providing that a purpose of chapter 15 is to provide mechanisms for the "protection and maximization of the value of *the debtor's assets*") (emphasis added). Under BVI insolvency law, the Debtors' "assets" include, *inter*

16

*In re Condor Ins. Ltd.*, 601 F.3d at 322. ("Chapter 15 provides for the 'recognition' of a 'foreign proceeding' and an ancillary proceeding to assist the foreign proceedings.").

It has already become apparent that during the course of the litigation of the BVI Avoidance Claims, issues arising under title 11 and "unique to" U.S. bankruptcy law will require adjudication. *In re U.S. Lines, Inc.*, 197 F.3d at 637; *see also O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551, 559 (E.D. Va. 2010) ("Chapter 15 is clearly designed to be integrated into the rest of the Bankruptcy Code."). For instance, while the Foreign Representatives stated at oral argument that "[section] 103 of the Bankruptcy Code . . . excludes section 546(e) or section 546 in its entirety from chapter 15," Hr'g Tr., p. 64,[13] Movants counter that the safe harbor of section 546(e) of the Code "applies in chapter 15 cases pursuant to Section 546(d) to the same extent as in a proceeding under chapter 7 or 11." Safra Letter, p. 2 (quotations omitted).[14] In addition to adjudicating this threshold dispute, the court presiding over these claims will likely be called upon to determine on the merits whether the safe harbor provided by section 546(e) of the Code insulates the particular transfers at issue from the particular relief sought in the Actions. These budding issues speak to the nature of the BVI Avoidance Claims as core bankruptcy proceedings not rightly passed off to state courts.

The Common Law Claims are inexorably tied to the BVI Avoidance Claims and may well be considered core under the circumstances here.[15] Although these are claims for mistaken

---

*alia*, "every description of property wherever situated and obligations and every description of interest, whether present or future or vested or contingent, arising out of, or incidental to, property." Quinn Decl., Ex. B. Thus, this Court would not act outside of its jurisdiction to adjudicate proceedings constituting intangible United States assets in an effort to protect assets located elsewhere.

[13] Transcript Regarding Hearing Held on March 9, 2011, Adv. Pro. No. 10-03496, Dkt. No. 195.

[14] Letter to Judge Lifland re: Hearing on the Motions to Remand and Abstain Held on March 9, 2011, Adv. Pro. No. 10-03496, Dkt. No. 194 [hereinafter "Safra Letter"].

[15] Even if the Common Law Claims are not core, however, they are certainly "related to" the chapter 15 cases and therefore within this Court's jurisdiction, as supported by the recent Second Circuit decision in *Parmalat Capital*

payment or unjust enrichment in name, it is well established that "[a] determination of whether a matter is 'core' depends on the *nature* of the proceeding," *In re Best Prods. Co.*, 68 F.3d at 31 (emphasis added), and "shall not be made solely on the basis that its resolution may be affected by State law," 28 U.S.C. § 157(b)(3).  These claims are traditionally core in nature in that they seek restitution of Redemption Payments, including fictitious profits, made by the Debtors to their redeeming shareholders, "affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  28 U.S.C. § 157(b)(2)(O); *see also Mann v. Kreiss (In re Kreiss)*, 58 B.R. 999, 1005 (E.D.N.Y. 1986) ("[T]he nexus between the proceeding and the bankruptcy estate is sufficiently close to find that it is a 'core' proceeding in which the bankruptcy judge may issue a final judgment . . . .").  Although arising under neither U.S. nor BVI insolvency statutes, the legal theories asserted in the Common Law Claims are available, and have been employed, in the BVI insolvency proceedings, and they were commenced here with approval from the BVI Court.  Supp. Krys Decl., ¶ 20 (stating that claims "to recover improperly-calculated redemption payments made by the Debtors" to shareholders have also been asserted in the BVI Proceedings); BVI Insolvency Order, pp. 11–13 (ordering that the Foreign Representatives may "commence . . . legal proceedings . . . in the British Virgin Islands *or elsewhere*" and "all other things incidental to the exercise of" such powers) (emphasis added).  The Common Law Claims and BVI Avoidance Claims seek recoveries based on the same set of facts for allocation among the same stakeholders in accordance with the BVI distribution scheme, and their resolution affects relief granted by this Court to the Foreign Representatives upon recognition.  *In re Fairfield Sentry Ltd.*, 440 B.R at 67 (entrusting

---

*Fin. Ltd. v. Bank of Am. Corp.*, Nos. 09-CV-4302 (L), *et al.*, 2011 WL 1365008, at *4 (2d Cir. Apr. 12, 2011); s*ee infra* at Section I, B.

realization of the Debtors' assets within the U.S. to the Foreign Representatives).  The "fair and efficient administration" of the BVI estate is served by their joint adjudication by a single court. 11 U.S.C. § 1501(a)(3).  Accordingly, jurisdiction over the Common Law Claims is necessary under the circumstances here to serve unique chapter 15 purposes.

This Court's adjudication of the Actions as a whole is consistent with chapter 15 principles of comity, which are effective only to the extent that deference to the laws or policies of the foreign proceeding is in the "interests of the United States, the interests of the foreign state or states involved, and the mutual interests of the family of nations in just and efficiently functioning rules of international law."  *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009); *see also Hilton v. Guyot*, 159 U.S. 113, 164 (1895) ("Comity . . . is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws."). Consideration of the Common Law Claims and BVI Avoidance Claims in no way conflicts with BVI law, as the BVI Court expressly empowered the Foreign Representatives to broadly pursue actions on behalf of the Debtors in the United States, "including without limitation, the United States Bankruptcy Court of the Southern District of New York" and specifically authorized the assertion of the BVI Avoidance Claims.  BVI Order Permitting Amendments, ¶¶ 1–2; *see also* BVI Insolvency Order, pp. 11–13.  Consonant with policies in the BVI and the United States, the Actions should proceed in the most efficient and judicially economical manner, before this Court alongside others similar in nature and based on the same set of facts.  Thus, nothing in this Court's adjudication of such Actions would be "manifestly contrary to the public policy of the United States" under section 1506 of the Code, which must be narrowly construed.  11 U.S.C. §

1506; *see also RSM Richter Inc. v. Aguilar (In re Ephedra Prods. Liab. Litig.)*, 349 B.R. 333, 336 (S.D.N.Y. 2006).

This Court additionally finds that subject matter jurisdiction over the Actions is not otherwise prohibited by chapter 15, consistent with the pioneer decision on this issue from the Fifth Circuit Court of Appeals.  *See generally In re Condor Ins. Ltd.*, 601 F.3d at 319–27.  In *Condor*, the bankruptcy court below granted foreign main recognition of the debtor's insolvency proceedings in Nevis.  The foreign representatives commenced avoidance actions under Nevis law in the chapter 15 case, seeking to recover more than $313 million in assets allegedly transferred by the debtor to a U.S. affiliate (the "Nevis Avoidance Claims").  They relied for this relief upon section 1521(a) of the Code, which provides that the bankruptcy court may grant "any appropriate relief," including "any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."  11 U.S.C. § 1521(a)(7);  *In re Condor Ins. Ltd*, 601 F.3d at 322 ("The foreign representatives seek relief under section 1521(a) of Chapter 15.").  The defendant, relying particularly upon the exception contained in section 1521(a)(7) of the Code (the "U.S. Avoidance Law Exception"), moved to dismiss for lack of subject matter jurisdiction and failure to state a claim, contending that the Nevis Avoidance Claims could be brought only within the context of a plenary proceeding commenced under another chapter of the Code.  *See id.* at § 1523 ("[T]he foreign representative has standing in a case concerning the debtor pending under another chapter of this title to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a).").  While the bankruptcy court, and later the Mississippi District Court, agreed with the defendant, the Fifth Circuit reversed.

The Fifth Circuit, reading section 1521(a)(7) of the Code in the context of chapter 15 as a whole, rejected the theory that the liquidators were prohibited from bringing Nevis Avoidance Claims. Rather, the court held, "[a]s Chapter 15 was intended to facilitate cooperation between U.S. courts and foreign bankruptcy proceedings, we read section 1521(a)(7) in that light and hold that a court has authority to permit relief under foreign avoidance law." *In re Condor Ins. Ltd.*, 601 F.3d at 329; *See also In re Atlas Shipping A/S*, 404 B.R. at 744 ("The . . . conclusion that Congress intended to prevent a foreign representative from bringing avoidance actions based on foreign law is not supported by anything specifically in the legislative history. . . [and] ignores cases decided under § 304 [the predecessor to chapter 15]."). The Court acknowledged that the U.S. Avoidance Law Exception prohibits a foreign representative from utilizing, in relevant part, "the 'strong arm' power, which permits the trustee to act as a judicial lien creditor (§ 544) . . . the power to avoid transactions as 'preferences' (§ 547), [and] the power to avoid fraudulent transfers (§ 548)," but did not find these exclusions to prohibit the Nevis Avoidance Claims. *In re Condor Ins. Ltd*, 601 F.3d at 323. The structure of chapter 15, the court reasoned, "suggests a broad reading of the powers granted to the district court in order to advance the goals of comity to foreign jurisdictions." *Id.* at 325.

This Court agrees and finds that, under the circumstances here, subject matter jurisdiction over the Actions as a whole is consistent with chapter 15, the tenor of which is to provide deference to the laws and policies of the foreign main proceeding in the interests of comity. *See* 11 U.S.C. § 1501. The main thrust of section 1521 of the Code is not the U.S. Avoidance Law Exception—which itself must be read to protect, rather than restrict, deference to the laws of the foreign main proceeding—but the broad grant that "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of creditors, the court may, at

21

the request of the foreign representative, grant any appropriate relief." 11 U.S.C. § 1521(a); *In re JSC BTA Bank*, 434 B.R. 334, 341 (Bankr. S.D.N.Y. 2010) (noting the "ancillary character of a chapter 15 case and the auxiliary role of the bankruptcy court"). Indeed, sections 1521 and 1522 of the Code allow the bankruptcy court "exceedingly broad" discretion to grant appropriate relief, *In re Atlas Shipping*, 404 B.R. at 739, and "additional assistance" is available where necessary to effectuate the purposes of chapter 15, 11 U.S.C. § 1507. In the context of these cases, efficient and effective ancillary assistance properly entails overseeing both the BVI Avoidance Claims and the Common Law Claims, which do not seek to substitute excluded U.S. avoidance laws for the laws of the foreign main proceedings, but rather are authorized under BVI law to be pursued by the Foreign Representatives on behalf of the Debtors. BVI Insolvency Order, pp. 11–13; BVI Order Permitting Amendments, ¶¶ 1–2; Supp. Krys Decl., ¶ 20 & Ex. G (stating that claims "to recover improperly-calculated redemption payments made by the Debtors" to shareholders have also been asserted in the BVI Proceedings); *see also In re Atlas Shipping A/S*, 404 B.R. at 744, n.16 ("[A] preference action under foreign law would not appear to depend on status as a judgment lien creditor and, therefore, § 544(b) would appear inapplicable to such claims. A preference action under foreign law might be available as 'additional assistance' under § 1507."). Therefore, the Court finds that its subject matter jurisdiction over the Actions is supported by chapter 15 and its mandate to "cooperate to the maximum extent possible with a foreign court or a foreign representative."[16] 11 U.S.C. §1525.

---

[16] In an attempt to remove the Actions from the clear holding of *Condor*, the Movants urge that the Court must ignore the BVI Avoidance Claims in determining the Remand Motions because they were added by amendment subsequent to removal. *See* HSBC Supp. Mot., pp. 9–10 ("The only claims relevant to the remand motions are the [Common Law Claims] in the original complaints[.]"). While pleadings are "generally" viewed as of the time of removal, *Vera v. Saks & Co.*, 335 F.3d 109, 116, n.2 (2d Cir. 2003) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (U.S. 1939)), "[c]ourts have distinguished between a post-filing change intended to deprive the court of jurisdiction and a post-filing change intended to solidify the court's jurisdiction," *County of Suffolk v. Amerada Hess Corp., et al. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 510 F. Supp. 2d 299, 307 (S.D.N.Y.

At bottom, adjudication of the Actions in the same forum as the remaining identical Redeemer Actions, the Sentry Direct Action, and the BLMIS Trustee's Action, is necessary to ease communication and cooperation with the BVI Court, avoid inconsistent outcomes, streamline judicial efforts, and facilitate potential settlement between the Debtors and their largest creditor, providing the most "fair and efficient administration . . . that protects the interests of all creditors, and other interested entities, including the debtor," as contemplated by chapter 15.  11 U.S.C. § 1501(A)(3).  As the District Court has held,

> These cases are closely related in terms of the underlying facts to other Madoff-related proceedings pending before the bankruptcy court.  Bankruptcy Judge Lifland presided over the chapter 15 proceedings in this case, which involved substantial filings and resulted in a ten-page order.  He is assigned to these cases now.  Judge Lifland is also presiding over the BLMIS liquidation proceedings.  The Plaintiffs are defendants in an adversary action seeking return of avoidable transfers from claimants in the BLMIS liquidation before Judge Lifland.  And the Plaintiffs have sued their investment advisors for recovery of fees paid with assets Plaintiffs withdrew from BLMIS in an action now pending before Judge Lifland as well.  *Having these intimately related cases consolidated before one judge who is familiar with the background of these actions therefore will be more efficient and promote the uniform application of the bankruptcy laws.*

*In re Fairfield Sentry Ltd., et al.*, 2010 WL 4910119, at \*3 (citations omitted) (emphasis added).[17]  Indeed, the Foreign Representatives have made substantial progress in proposing a settlement of the BLMIS Trustee's Action that will be presented for approval to the BVI Court,

---

2007); *see also In re WorldCom, Inc. Sec. Litig.*, 294 B.R. 553, 556  (S.D.N.Y. 2003) (holding that jurisdiction "may not be *divested* by subsequent events.") (emphasis added).  As the BVI Avoidance Claims solidify this Court's federal jurisdiction over the Actions, as discussed above, they are properly considered.  *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996) ("[I]f . . . the plaintiff voluntarily amends the complaint [post-removal] to allege federal claims, we will not remand for want of jurisdiction.").  Evaluating the original complaints in isolation would be particularly illogical here, where "[i]t only makes sense that all of these cases proceed together, given their substantial factual and legal overlap." HSBC Supp. Mot., p. 16, n.15.  In any event, this argument is futile, as the Court must consider the identical BVI Avoidance Claims asserted in post-recognition Redeemer Actions in determining whether remanding the Common Law Claims alone would serve comity between the courts and the efficient administration of the BVI estate.  *See infra* at Section II; *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991).

[17]  The District Court also noted that it was "suspicious of forum-shopping motivations here," which could have motivated both the Withdrawal Motions and the Remand Motions before this Court.  *In re Fairfield Sentry Ltd., et al.*, 2010 WL 4910119, at \*4.

as well as to this Court in the context of the BLMIS Trustee's Action.    Evidencing the interrelatedness of these proceedings, the preliminary settlement would appear to, *inter alia*, allow the Debtors a $230 million dollar claim in the BLMIS SIPA liquidation, stay the enforcement of a multibillion dollar judgment against the Debtors in the BLMIS Trustee's Action, and effectuate cooperative litigation and recovery strategies of claims, including those asserted in the Sentry Direct Action.  *See Picard v. Fairfield Sentry Ltd., et al.*, Adv. Pro. No. 09-01239 (Bankr. S.D.N.Y.), Dkt. No. 69.

Accordingly, the Foreign Representatives have established core subject matter jurisdiction over the Actions sufficient to defeat the Remand Motions.

**B.   THIS COURT HAS "RELATED TO" JURISDICTION OVER THE ACTIONS**

Even if the Actions were not core proceedings, jurisdiction is supported on the grounds that the they are "related to" the Debtors' chapter 15 cases.  28 U.S.C. § 157(c)(1).  As recently reaffirmed by the Second Circuit Court of Appeals under the predecessor statute to chapter 15, "[f]or purposes of removal jurisdiction, a civil proceeding is 'related to' a title 11 case if the action's outcome might have *any 'conceivable effect'* on the bankrupt estate."  *Parmalat*, 2011 WL 1365008, at *4 (quoting *Publicker Indus. Inc. v. U.S. (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)) (emphasis added); *see also Hart v. Bello*, No. 11-CIV-67, 2011 WL 1584577, at *2 (S.D.N.Y. Apr. 27, 2011).

This recent decision puts to rest Movants' arguments that there cannot be "related to" jurisdiction over a proceeding in a chapter 15 case "because no estate exists on which the claims could have any conceivable affect [sic]."  EFG Bank Mot., p. 6.[18]  The relevant estate on which

---

[18] EFG Bank AGS Motion to Withdraw the Reference to the United States Bankruptcy Court and Motion to Remand, Adv. Pro.No. 10-03625, Dkt. No. 4.

the Actions must have a "conceivable effect" is not a worldwide "section 541 estate," which does not exist in a chapter 15 case, but the foreign BVI estate: "In the context of § 1334(b), there is no need to distinguish between estates administered principally in foreign forums and those administered principally in domestic forums." *Parmalat*, 2011 WL 1365008, at *4; *see also Toth v. Bodyonics, Ltd.*, No. 06-1617, 2007 WL 792172, at *2 (E.D. Pa. 2007) (denying remand motion and transferring state law action as "related to" chapter 15 bankruptcy case).

Here, as in *Parmalat*, "[i]t is not difficult to conclude that the 'conceivable effect' test is satisfied." *Id.* at *3 (finding "related to" jurisdiction over state law actions against debtor's principals). As the District Court has acknowledged in these cases, to the extent the Foreign Representatives succeed in litigating, settling or otherwise pursuing the Actions, "[a]ny recovery . . . would accrue to the benefit of the Plaintiffs' bankruptcy estates" by becoming available for distribution to stakeholders. *In re Fairfield Sentry Ltd., et al.*, 2010 WL 4910119, at *1; *see also Parmalat*, 2011 WL 1365008, at *3; ("[T]he funds they recover will benefit the respective bankruptcy estates.") (citing *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005) ("[The liquidating entity's] success or lack of success in securing a share of the trust corpus will directly impact the amount of the liquidating dividend eventually paid to [the debtor's] creditors. That is a matter intimately connected with the efficacy of the bankruptcy proceeding."); *Krys v. Sugrue*, Nos. 08-CIV-3065 *et al.*, 2008 WL 4700920, at *6 (S.D.N.Y. Oct. 23, 2008) (finding claims in litigation trust closely "related to" bankruptcy where, *inter alia*, "any funds recovered . . . will go directly to [debtor's] largest creditors . . . ."). The Actions involve the Debtors and the Debtors' shareholders themselves, and have a more direct conceivable effect on the BVI estate than has been held necessary to satisfy this broad standard. *See, e.g.*, *Toth*, 2007 WL 792172, at *2 (finding products liability action between non-debtor

parties "related to" bankruptcy case where success of action would result in estate liability under indemnification agreement); *Drexel Burnham Lambert Group, Inc.*, 130 B.R. at 408 (finding "related to" jurisdiction where defendants were not creditors or otherwise involved in the bankruptcy).

The enhancement in value to the BVI estate that may potentially be achieved is a substantial "conceivable effect" creating "related to" jurisdiction.

## II.    EQUITABLE REMAND AND PERMISSIVE ABSTENTION ARE UNAVAILABLE OR OTHERWISE DENIED

Turning now to remand, the Movants argue that the Court should decline exercising its subject matter jurisdiction and remand the removed Actions pursuant to 28 U.S.C. section 1452(b) "on any equitable ground." 28 U.S.C. § 1452(b). They similarly argue that the Court should abstain in its discretion pursuant to 28 U.S.C. section 1334(c)(1), which provides,

> [e]xcept with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

*Id.* at § 1334(c)(1).

As a preliminary matter, at least permissive abstention is unavailable here on the face of the statute. The Actions are proceedings "with respect to a case under chapter 15 of title 11," and therefore expressly excluded from the permissive abstention statute.[19] 28 U.S.C. §

---

[19] This Court's reading of the chapter 15 exception to permissive abstention differs from an unbinding decision of a single court, which found that the language of the statute excludes only core proceedings arising "under" the chapter 15 case. *See Abrams v. Gen. Nutrition Cos., Inc.*, No. 06-1820, 2006 WL 2739642, at *7 (D.N.J. Sept. 25, 2006) ("[This court] cannot abstain from hearing a case 'under' chapter 15 of the Bankruptcy Code. . . . *[T]his action is only 'related to', not 'under' that bankruptcy case.* Accordingly, the chapter 15 exception to the discretionary abstention doctrine does not apply here.") (emphasis added). However, this reading conflates the terms "proceeding" and "case." The language of the statute provides that the case, not the proceeding, exists "under" title 11; the proceeding still need only "aris[e] under title 11 or aris[e] in or [be] related to a case under title 11." 28 U.S.C. § 1334(c)(1) ("Except with respect to *a case under* chapter 15 of title 11, nothing in this section prevents a district court . . . from abstaining from hearing *a particular proceeding arising under title 11 or arising in or related*

1334(c)(1) ("Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court . . . from abstaining from hearing a particular proceeding . . . ."). Nevertheless, the Court will consider this argument on its merits, bearing in mind that "federal courts should be sparing in their exercise of discretionary abstention." *Hart*, 2011 WL 1584577, at *3 (quoting *In re Texaco Inc.*, 182 B.R. 937, 946–47 (Bankr. S.D.N.Y. 1995)) (internal quotations omitted).

Courts in this District have held that "the factors for equitable remand are virtually identical to the factors for discretionary abstention pursuant to § 1334(c)(1)." *Certain Underwriters*, 2004 WL 224505, at *8; *see also Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, Nos. 04-CIV-708, *et al.*, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004) ("Courts in this district have treated the analysis under [equitable remand and permissive abstention] as essentially identical.").[20]   These factors include (1) the effect of remand on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity with state courts; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; (7) prejudice to the involuntarily removed parties; and (8) the potential for duplicative and uneconomical use of judicial resources and the possibility of inconsistent results. *See Kerusa Co. LLC*, 2004 WL1048239, at *3; *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. at 407; *In re River Ctr. Holdings, LLC.*, 288 B.R. 59, 68 (Bankr. S.D.N.Y. 2003).

---

*to a case under title 11*.") (emphasis added).  As a result, the statute would seem to exclude core and non-core proceedings that exist "with respect to" cases under chapter 15. *Id.*  This interpretational difference is immaterial here, however, as the Actions are core proceedings excluded under either reading, and permissive abstention, even if applicable, is inappropriate on the merits, as discussed below.

[20] Therefore, for the same reasons prohibiting permissive abstention. equitable remand is likely unavailable for proceedings with respect to chapter 15 cases

Application of these factors establishes that remand is inappropriate. The parties apparently agree that, at the very least, the Actions should proceed as a whole, including the BVI Avoidance Claims and the Common Law Claims. *See* HSBC Supp. Mot., p. 15, n.14 ("The court should abstain from hearing the BVI Avoidance claims to avoid the bifurcation of claims and actions between two courts . . . ."). However, New York state law issues do not exist with respect to the BVI Avoidance Claims, which arise under foreign law and have raised U.S. bankruptcy issues, and thus do not predominate in the Actions as a whole (factor 2). Moreover, the Common Law Claims, even if they could be feasibly severed, are not novel state law claims outside the abilities of the bankruptcy court to adjudicate, as they are based upon "long-established principle[s]" of unjust enrichment, restitution, constructive trust, and mistaken payment arising out of the same facts as the Madoff Ponzi scheme with which this Court lives, particularly with respect to the BLMIS Trustee's Action involving the Debtors (factor 3). *Williamson v. Stallone*, 905 N.Y.S.2d 740, 747 (Sup. Ct. 2010) (adjudicating mistaken payments as a result of overvaluation of investment fund) (internal quotations omitted); *see also Caldor Corp. v. S. Plaza Assocs. L.P. (In re Caldor, Inc.)*, 217 B.R. 121, 128 (Bankr. S.D.N.Y. 1998) (deciding that a debtor's claim for unjust enrichment constituted a core proceeding); *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters., Inc.)*, 73 B.R. 470, 493 (Bankr. D.Vt. 1987) (same). Moreover, bifurcating them from the BVI Avoidance Claims or remanding the removed Actions without the post-recognition Redeemer Actions proceeding here would result in duplicative efforts on the parts of the parties and the courts and risk inconsistent rulings (factor 8).

The degree of relatedness to the BVI estate is high, as the Actions seek restitution of transfers from the Debtors themselves for a potentially substantial recovery to creditors, and they

"turn largely on issues that are intertwined" with claims pursued in the BVI, as well as adversary proceedings ongoing before this Court (factors 1, 5). *Hart*, 2011 WL 1584577, at *5 (internal quotations omitted). While the existence of a right to a jury trial favors remand, at least the Foreign Representatives seem to have retracted their requests, arguing that "under BVI law, there is no right to a jury trial in connection with adjudicating the BVI Avoidance Claims," and that severing the Common Law Claims to allow jury trials would be inefficient (factor 6). Foreign Reps. Supp. Opp., p. 18.[21] Finally, the Court can conceive of no prejudice to the Movants in having the Actions proceed in this Court, rather than the State Court. Conversely, bifurcating the Actions by remanding Common Law Claims, which are the only claims touching upon New York state law, would dramatically prejudice the BVI estate and the Foreign Representatives, who would "bear[] the expense of litigating in two different courts issues that arise out of . . . common operative facts" (factor 7). *Hart*, 2011 WL 1584577, at *6 (internal quotations omitted); *see also* Supp. Krys Decl., ¶ 16 ("[B]ifurcated proceedings in the United States . . . will be paid from the Debtors' estates and further diminish and prolong distribution to the Debtors' stakeholders in the BVI.").

Accordingly, equitable factors militate strongly against remand or abstention.

### III. MANDATORY ABSTENTION IS UNAVAILABLE AND OTHERWISE DENIED

Movants argue that despite all of the foregoing, the Court is required to abstain from hearing the Actions pursuant to 28 U.S.C. section 1334(c)(2), which provides,

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent

---

[21] Foreign Representatives' Omnibus Supplemental Memorandum of Law in Opposition to Defendants' Motions to Remand or Abstain, Adv. Pro. No. 10-03496, Dkt. No. 90.

jurisdiction under this section, the district court *shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).  Abstention is required only where all of the following elements of the statute are satisfied:  (1) the abstention motion was timely brought; (2) the action is based upon a state law claim; (3) the action is related to a bankruptcy case, as opposed to arising under the Code or arising in a case under the Code; (4) the sole federal jurisdiction for the action is 28 U.S.C. § 1334; (5) an action was commenced in state court; and (6) the action can be timely adjudicated in state court.  *In re Adelphia Comm'n Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002).

Here, mandatory abstention is inapplicable on the face of the statute itself, as well as under factor 3, given that the Actions fall within this Court's core bankruptcy jurisdiction as, *inter alia*, requiring adjudication of issues arising under the Code, affecting liquidation of assets of the BVI estate, and directly affecting this Court's core bankruptcy functions under chapter 15. *See supra* at Section I; 28 U.S.C. § 1334(c)(2) ("[I]n a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 *but not arising under title 11 or arising in a case under title 11* . . . the district court shall abstain . . . .") (emphasis added); *see also  In re Gen. Growth Props., Inc.*, 2011 WL 766129, at *6 ("Since the State Court Action is one 'arising in' a bankruptcy case and within this Court's core jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable on its own terms.").  Thus, abstention is properly denied on this basis alone.

Moreover, even if the Actions were non-core, at least factor 2 is also not clearly satisfied. The Actions as a whole are not "based upon a State law claim," but rather implicate foreign and U.S. insolvency law: the BVI Avoidance Claims arise directly under foreign insolvency law and

require adjudication of issues arising under the Code,[22] *see supra* at Section I, and the theories asserted in the Common Law Claims are available to the Foreign Representatives under BVI law, have been asserted in the BVI, and have evoked from defendants in the BVI defenses grounded in BVI law, Supp. Krys Decl., ¶ 20 & Ex. G.  While the Common Law Claims commenced in New York State Court will implicate equitable and restitutionary principles of New York common law, certain Movants have previewed to the Court that "there's an argument for Dutch law [and] [t]here's an argument for BVI law" applying to service issues and "perhaps even on the merits" of the Redeemer Actions, and adjudication will therefore not be simply based upon state law.  *See* Quinn Decl., Ex. I, Consolidation Hr'g Tr., p. 44.

With respect to timely adjudication under factor 6, the Second Circuit has recently held that the following considerations are relevant: (a) the backlog of the state court's calendar relative to the federal court's calendar; (b) the complexity of the issues presented and the respective expertise of each forum; (c) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (d) whether the state court proceeding would prolong the administration or liquidation of the foreign estate.  *Parmalat*, 2011 WL 1365008, at *5, *6.

Notwithstanding the undoubted abilities of the State Court, the Actions' unique procedural posture as substantially identical to numerous post-recognition Redeemer Actions remaining here, as well as their strong substantive ties to the laws and administration of the BVI estate, overwhelmingly support that the most timely adjudication will be in this Court, as the "single court" fully informed of the facts and status of the Debtors' foreign proceedings.  Daniel M. Glosband *et al.*, *The American Bankruptcy Institute Guide to Cross-Border Insolvency in The United States*, 26 (American Bankruptcy Institute 2008).  Procedurally, as over 160 Redeemer

---

[22] In addition, the BVI Avoidance Claims were not commenced in state court, as required by factor 5.

Actions were not commenced in a state forum, abstention from only those Actions, or claims,

subject to mandatory abstention would undermine joint discovery and litigation efforts, duplicate

costs, and thus undoubtedly prolong the time by which the BVI Court can administer the estate

in accordance with potentially conflicting rulings from this Court and the State Court (factor d).

*See* Supp. Krys Decl., ¶ 16 ("[B]ifurcated proceedings in the United States . . . will require more

administrative manpower on the parts of the Liquidators and U.S. Counsel, all of which will be

paid from the Debtors' estates and further diminish and prolong distribution to the Debtors'

stakeholders in the BVI.").  Substantively, the Movants have acknowledged "the complexity of

the issues that could arise on the motion to dismiss, both with regard to jurisdiction, service and

the merits," and this Court's familiarity with the facts and procedure of the chapter 15 and

foreign main proceeding have equipped it to handle these issues in a more timely manner than

can be accomplished in the State Court (factor b).

## IV.    REMAND FOR UNTIMELY REMOVAL IS UNWARRANTED

Finally, Movants argue that the Actions should be remanded on the basis that the Foreign

Representatives did not timely file their respective notices of removal.

Where, as here, an action is removed under 28 U.S.C. section 1452 as related to a

bankruptcy case, the deadline applicable to the filing of the notice of removal depends upon

whether the action was asserted before or after the "commencement of the case under the Code."

FED. R. BANKR. P. 9027(a)(2), (3).  Where the action is asserted prior to the commencement of

the bankruptcy case, the notice of removal must be filed within 90 days of the order for relief.

FED. R. BANKR. P. 9027(a)(2).  Where the action is commenced after the case, the notice may be

filed "30 days after receipt, through service or otherwise, of a copy of the initial pleading setting

forth the claim or cause of action sought to be removed."  FED. R. BANKR. P. 9027(a)(3).  It is

undisputed that the instant chapter 15 cases were commenced on the Petition Date of June 14, 2010. *See* 11 U.S.C. § 1504 ("A case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515.").

Movants' objections to the timeliness of removal rely principally upon assumptions that (i) with regard to pre-petition Actions, the 30-day deadline under 28 U.S.C. section 1446, rather than the 90-day deadline of Bankruptcy Rule 9027(a)(2), applies in a chapter 15 case because it lacks a defined "order for relief";[23] and (ii) with regard to post-petition Actions, the date from which the deadline in Bankruptcy Rule 9027(a)(3) should run is the date of the *filing* of the summons with notice, as the plaintiffs seeking removal do not require *receipt* of their own claims to ascertain removability, and any future claims raised by defendants in their answers or responsive pleadings are irrelevant to removal currently sought.[24]

Contrary to the Movants' first argument, this Court joins the great weight of authority in holding that the 90-day deadline of Bankruptcy Rule 9027, rather than the 30-day deadline of 28 U.S.C. section 1446, indeed governs removal of the Actions. As distinguished from general removal governed substantively by 28 U.S.C. section 1441 and procedurally by 28 U.S.C. section 1446, "the removal of claims or causes of action related to bankruptcy cases is now governed substantively by 28 U.S.C.[] § 1452(a) and procedurally by [Bankruptcy Rule] 9027."

---

[23] *See, e.g.*, Memorandum in Support of FIBI Bank (Switzerland)'s Motion to Remand or Abstain, Adv. Pro. No. 10-03779, Dkt. No. 7 [hereinafter "FIBI Bank Mot."] pp. 9–10 ("[T]he 90-day period set forth in Rule 9027 does not apply because the circumstances set forth in the Rule do not apply – *i.e.*, . . . there is no "order for relief" in a chapter 15 case . . . ."); Memorandum in Support of Pictet & Cie's Motion to Remand or Abstain, Adv. Pro. No. 10-03764, Dkt. No. 6, p. 11 [hereinafter "Pictet & Cie Mot."] (same).

[24] *See, e.g.*, Reply Memorandum of Law in Further Support of Safra National Bank of New York's Motion to Remand or Abstain, Adv. Pro. No. 10-03496 , Dkt. No. 68, p. 7 [hereinafter "Safra Reply"] ("[W]here a plaintiff seeks to remove its own claims, it must remove the claims within 30 days of initiating them with the 'initial' filing."); HSBC Mot., p. 27 ("The date upon which the Actions were served on the Moving Defendants is thus entirely irrelevant."); J.P. Morgan Reply, p. 15 ("The fact that JPM Cayman was not served until October 2010 is irrelevant . . . . There is no conceivable rationale for setting the deadline for plaintiff to remove its own action to the defendant's receipt of the initial pleading.").

*In re Boyer*, 108 B.R. 19, 24 (N.D.N.Y. 1988); *see also Gilbert v. AGCO Corp.*, No. 1:09-CV-962, 2009 WL 3672071, at *1 (N.D.N.Y. Oct. 30, 2009) ("This Court agrees with the majority rule . . . that . . . removals pursuant to § 1452 continue to be covered by the times set forth in Bankruptcy Rule 9027."); *see also Shared Network Users Group, Inc. v. WorldCom Techs., Inc.*, 309 B.R. 446, 449 (E.D. Pa. 2004) ("To superimpose the bright line 30 day removal deadline of § 1446(b) would undermine the specific statutory scheme of § 1452.  Bankruptcy Rule 9027(a) is carefully crafted to fit with the purpose of § 1452."); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington)*, 194 B.R. 750, 756 (D.N.J. 1996) ("The majority of courts have upheld the applicability of Bankruptcy Rule 9027 to Section 1452 and enforced a ninety day time limitation.").  A contrary result merely because these are chapter 15 cases without an explicitly defined "order for relief" is unwarranted; a recognition order has been held to be an order for relief, as it triggers the rights, remedies, and other relief available to foreign representatives under the Code.  *In re Condor Ins. Ltd.*, Case No. 07-51045, Dkt. No. 44, p. 1 (Bankr. S.D. Miss. Oct. 10, 2007) ("[S]ection 108 of the Bankruptcy Code applies to this chapter 15 proceeding with August 21, 2007 [the recognition date] being the date of the 'order for relief' for purposes of section 108."); *see also In re SPhinX, Ltd.*, 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006) ("The first step to obtaining relief under chapter 15 (with the exception of interim relief under section 1519) is receiving recognition of the foreign proceeding under sections 1515 and 1517(a) of the Bankruptcy Code.").

Proceeding from this premise, all removal notices filed in Actions asserted prior to the commencement of these cases were timely filed within 90 days from the date of entry of the Recognition Order.  To illustrate, it is undisputed that the Action involving Movant-defendant FIBI Bank was asserted on May 14, 2010, before the commencement of these cases on June 14,

2010.  *See* FIBI Bank Mot., p. 1, Adv. Pro. No. 10-03779, Dkt. No. 7.  The Action thus falls

under Bankruptcy Rule 9027(a)(2), whereby a notice of removal must be filed within 90 days

after the order for relief.  This time expired on October 20, 2010, 90 days after the Recognition

Date of July 22, 2010.  The notice of removal of the FIBI Bank Action was filed on September

10, 2010, well before the October 20, 2010 deadline.  *See id.* at p. 2.

With respect to post-petition Actions governed by Bankruptcy Rule 9027(a)(3), the Court

adopts neither the construction proposed by Movants, nor that favored by the Foreign

Representatives.  Courts have not had much occasion to apply Bankruptcy Rule 9027(a)(3) to a

factual scenario where, as here, the party in "receipt" of the claim and seeking to remove the

claim is simultaneously the party who *asserted* the claim.  *See* COLLIER ON BANKRUPTCY ¶

9027.05[2] at 9027-10 ("If the removing party is the plaintiff, the initial pleading will generally

be a responsive pleading filed by the defendant that sets out a claim or cause of action against the

plaintiff.").  The Movants posit that upon such facts "[t]here is no conceivable rationale for

setting the deadline for plaintiff to remove its own action to the defendant's receipt of the initial

pleading," JP Morgan Reply, p. 15, and proceed to concoct a more suitable statute that would

read, "where a plaintiff seeks to remove its own claims, it must remove the claims within 30 days

of initiating them with the 'initial' *filing*," Safra Reply, p. 7 (emphasis added).  The Foreign

Representatives, on the other hand, claim that time runs from receipt of the answers, irrespective

of the fact that the claims they seek to remove were raised not in the answers but in the earlier

summonses with notice.[25]  Although reliance upon the answers, which are not due until 45 days

---

[25] The cases relied upon by the Foreign Representatives for their position are not clearly analogous.  In *Brandt*,
unlike here, receipt of the responsive pleading logically triggered time for removal, as it was the first pleading
setting forth the claim sought to be removed by the other party.  *See Brandt v. 47-49 Charles St., Inc. (In re 47-49
Charles St.)*, No. 98-CIV-4669, 1999 WL 138929, at *1 (S.D.N.Y. Mar. 15, 1999) (plaintiff removing subrogation
claim asserted by defendant in responsive motion).  In the remaining two cases, the courts found removal ineffectual
for reasons other than untimeliness, and thus did not explicitly assess whether the claims sought to be removed were

after the issuance of this decision, would surely subsume all post-petition Actions within the allotted time, the Foreign Representatives cannot dispute that any claims that might arise in the answers are not those upon which their earlier removal notices were based. *See* FED. R. BANKR. P. 9027(a)(3) (providing that time runs from receipt of the "initial pleading *setting forth the claim or cause of action sought to be removed*") (emphasis added).

While cognizant of the unique factual posture of these cases for purposes of applying Bankruptcy Rule 9027(a)(3), the Court finds that the plain and unambiguous language controls and, contrary to the Movants' arguments, is consistent with sound policy. The initial pleadings here were the summonses with notice filed in the State Court. The Foreign Representatives do not dispute that these pleadings set forth the claims sought to be removed. The receipt thereof by the Movant-Defendants therefore triggered the time within which *either party* could file a notice of removal. 28 U.S.C. § 1452 ("*A party* may remove any claim . . . .") (emphasis added). It is not as inconceivable as the Movants suggest that this is an intended result based upon the reasonable rationale that the 30 days should neatly expire on one date, irrespective of which party filed the notice of removal, and that it should begin to run only once both the asserting and non-asserting parties have received notice and an opportunity to evaluate the removability of the claims. Moreover, the Movants' proposal that time run from the filing of the initial pleading in these circumstances is arbitrary, as the party filing a pleading presumably has actual notice of its claims on some earlier date. In any event, the language of the Bankruptcy Rule is unambiguous, and "the sole function of the court[] is to enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (internal quotations omitted); *see also Ransom v. FIA*

first asserted in the respective answers. *See Lowenbraun v. Frentz (In re Lowenbraun)*, 313 B.R. 408, 411 (Bankr. W.D. Ky. 2004) ("[T]he issue of abstention can be answered regardless of the timeliness of the notice of removal."); *In re Boyer*, 108 B.R. 19 (Bankr. N.D.N.Y. 1988) (removal notice was not filed before the proper court).

*Card Servs., N.A.*, 131 S.Ct. 716, 723 (2011) ("Our interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself."); *Term Loan Holder Comm. v. Ozer Group, LLC (In re The Caldor Corp.)*, 303 F.3d 161, 167 (2d Cir. 2002) (same). As such, time for removal of the post-petition Actions expired 30 days from receipt of the initial summonses with notice by the Movant-defendants.

Applying this analysis, the vast majority of the post-petition Actions were also timely removed. The Action involving Movant-defendant J.P. Morgan, for example, was initiated on July 16, 2010, after the Petition Date of June 14, 2010 (but before the Recognition Date, it should be noted), falling under Bankruptcy Rule 9027(a)(3). *See* J.P. Morgan Reply, pp. 13, 14. For purposes of this decision, service of the summons with notice was effectuated on September 13, 2010. *See* Quinn Decl., Ex. J (noting applicable deadlines, including service). Time to file the removal notice expired 30 days thereafter, on October 13, 2010. The notice of removal was filed on September 3, 2010, well before the October deadline.[26]

While the result is the same for the majority of post-petition Actions, the Foreign Representatives' declarations and supporting exhibits indicate that four Actions were removed

---

[26] J.P. Morgan additionally argues that the filing date of the summons, rather than the service date, should be utilized in its particular case because "receipt, through service or otherwise, or a copy of the initial pleading" occurred when the summons with notice was earlier "publicly filed on the docket of the New York State Supreme Court and retrieved by JPM Cayman's counsel." J.P. Morgan Reply, p. 15. Contrary to this argument, actual notice of the claims sought to be removed, in the absence of properly effectuated service, is insufficient to trigger time for removal. *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 576 (E.D.N.Y. 2009) ("Despite the language of 28 U.S.C. § 1446(b) indicating that the time period for removal accrues upon service or otherwise, of a copy of the initial pleading, it is well-settled that the time to file a notice of removal under § 1446(b) is not triggered until service of the initial pleading has been properly effectuated.") (internal quotations omitted); *see also id.* at n.5 ("There appears to be no reason why the cases interpreting § 1446(b) should not apply to Bankruptcy Rule 9027(a)(3), which contains identical language.").

after the 30-day deadline.[27]  *See* Quinn Decl., Ex. J.  (Nos. 10-03626, 10-03627, 10-03777 and 10-03761).  The Court therefore finds removal untimely in these four limited instances.[28]

Despite this finding, the Court recognizes that under the extant circumstances, accepting these few untimely removal applications is necessary to promote efficiency and otherwise safeguard the adjudicative process for the overall benefit of the litigants and the judicial system. It has been recognized, with keen application to the circumstances now presented, that

> in the context of bankruptcy court litigation . . . acceptance of an untimely application for removal may be necessary to enable the expeditious and effective administration of the bankruptcy proceeding . . . .  Circumstances may exist in which a bankruptcy court's automatic decline of the exercise of jurisdiction over a removed matter on the ground of procedural untimeliness may have substantive ramifications.

*Am. Fidelity Inv. v. Gagel*, 20 B.R. 122, 124–25 (Bankr. Ohio 1982) (internal citations omitted). The 209 pending Redeemer Actions seek over $5.79 billion in potential BVI estate assets, the realization of which is the Foreign Representatives' responsibility under the Code and in the BVI Proceedings.  As discussed previously, this Court's function to provide effective and efficient ancillary assistance to that effort, as well as the BVI Court's ability to timely and economically administer the estate, would be substantially undermined by bifurcating these identical actions among multiple jurisdictions at the risk of inconsistent rulings.[29]  *See In re Fairfield Sentry Ltd.,*

---

[27] In addition, two Redeemer Actions that did not receive remand motions, or other objections to timeliness, were untimely removed, as well as one that is no longer pending.  *See* Quinn Decl., Ex. J (pending Adv. Pro. Nos. 10-03790 and 10-03753, action against State Street Bank Luxembourg SA, *et al.*).  To the extent necessary, the Court's rationale in declining remand applies equally to these actions.

[28] With regard to the first three Actions, Movant-defendants BNP Paribas Luxembourg SA, BNP Paribas Securities Services Luxembourg and Kookmin Bank received service on June 22, 2010.  Time to file the removal notice expired 30 days thereafter, on July 22, 2010.  The notices of removal were untimely filed on September 3, 2010. With respect to the fourth Action, defendant Safra National Bank also received service on June 22, 2010.  Time to file the removal notice expired 30 days thereafter, on July 22, 2010.  The notice of removal, however, was filed on August 25, 2010, rendering removal untimely.  It should be noted that these Actions were commenced only one day after the Petition Date; had they been filed pre-petition, their removal would have been timely noticed, under Bankruptcy Rule 9027(a)(2), well within 90 days of the Recognition Date of July 22, 2010.

[29] It should be noted that the Court may enlarge the time for filing a notice of removal after it has expired upon a proper motion and showing of "excusable neglect."  FED. R. BANKR. P. 9006.  While the Foreign Representatives

*et al.*, 2010 WL 4910119, at *3 ("Having these intimately related cases consolidated before one judge who is familiar with the background of these actions therefore will be more efficient and promote the uniform application of the bankruptcy laws."); *Sugrue*, 2008 WL 4700920, at *10 ("[R]emanding these actions, which have a common factual core, to two different state courts would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court.") (internal quotations omitted); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, Nos. 02-CIV-9804, *et al.*, 2003 WL 23018802, at *2 (S.D.N.Y. Dec. 23, 2003) ("Retaining the cases as a part of the multidistrict litigation will have some beneficial effect on the administration of the Adelphia estate in that retention will permit consolidation (at least for pretrial proceedings) of the three cases with many others similar in nature."). In sum, any prejudice to the Movants that may have resulted from the delay in noticing removal is necessarily outweighed by the undeniable call for coordination and judicial efficiency in these chapter 15 cases, as has been acknowledged by the District Court.[30] *See In re Fairfield Sentry Ltd., et al.*, 2010 WL 4910119, at *4 (noting "other efficiency and uniformity factors involved in this case.").

---

have not so moved, there has been no showing or allegation of bad faith here, and the delay in filing the removal notices had no prejudicial effect on the proceedings. *See Samson Res. Co. v. Valero Mktg. & Supply Co.*, Nos. 09-CIV-0272, *et al.*, 2009 WL 4042912, at *4 (W.D. Okla. Nov. 19, 2009) (enlarging time for removal under Bankruptcy Rule 9027(a)(3) apparently *sua sponte* where no bad faith or prejudice was present). Thus, the Court is confident, "taking account of all relevant circumstances," that the equities here tip in favor of the Foreign Representatives. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) ("[T]he determination [of excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.").

[30] Indeed, that the short delay in filing removal notices resulted in any prejudice to the Movants is dubious; in the period between the commencement of these Actions and the filing of the removal notices, the Movant-defendants, sophisticated financial institutions with capable legal counsel, presumably saw approximately 200 other substantially identical Redeemer Actions removed to or initiated in this Court, where the plaintiffs in such Actions were engaged in chapter 15 proceedings as of the Petition Date.

## CONCLUSION

For the reasons set forth, the Remand Motions are DENIED.


**IT IS SO ORDERED**.

Dated: New York, New York
   May 23, 2011

/s/ Burton R. Lifland    
United States Bankruptcy Judge
