**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

In re:

FAIRFIELD SENTRY LIMITED, *et al.*,

        Debtors in Foreign Proceedings.

-----------------------------------------------------------X

**FOR PUBLICATION**

Chapter 15

Case No. 10-13164 (BRL)

(Jointly Administered)

APPEARANCES**:**

BROWN RUDNICK LLP
Seven Times Square
New York, New York 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 589-4201
<u>By</u>:    David J. Molton
       May Orenstein
       Daniel Saval
       Kerry L. Quinn

*Attorneys for the Foreign Representatives*

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000
<u>By</u>:    John F. Savarese
       Amy R. Wolf
       Emil A. Kleinhaus
       Meredith L. Turner

*Attorneys for J.P. Morgan Securities Limited*

PATTON BOGGS LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:    (646) 557-5100
Facsimile:    (646) 557-5101
<u>By</u>:    Michael P. Richman
       Anthony Nguyen

*Attorneys for Defendant Theodoor GGC Amsterdam*

MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone:    (212) 554-7800
Facsimile:    (212) 554-7700
<u>By</u>:    Alan Kolod
        Mark N. Parry

*Attorneys for Defendant Deutsche Bank Trust Company Americas*

KING & SPALDING LLP
1185 Avenue of the Americas, Suite 3400
New York, New York 10036-4003
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222
<u>By</u>:    Richard A. Cirillo
        Lauren W. Mitchell

*Attorneys for NBK Banque Privée (Suisse) S.A.*

WROBEL & SCHATZ, LLP
1040 Avenue of the Americas, Suite 1101
New York, New York 10018-3703
Telephone:    (212) 421-8100
Facsimile:    (212) 421-8170
<u>By</u>:    Philip R. Schatz

*Attorneys for Northern Navigation America Inc.*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

## <u>MEMORANDUM DECISION AND ORDER GRANTING FOREIGN REPRESENTATIVES' MOTION FOR RELIEF UNDER 11 U.S.C. § 108 AND SETTING THE DATE OF THE "ORDER FOR RELIEF"</u>

Before the Court is the Motion (the "Motion") of Kenneth Krys ("Krys") and Joanna Lau

("Lau," and together with Krys and their predecessors, the "Foreign Representatives"), Foreign

Representatives of the liquidation proceedings (the "BVI Proceedings") of Fairfield Sentry

Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited

("Lambda," and together with Sentry and Sigma, the "Debtors") pending before the Commercial

Division of the High Court of Justice, British Virgin Islands (the "BVI Court"), recognized by

2

this Court as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code (the "Code") on July 22, 2010 (the "Recognition Order"),[1] seeking an order pursuant to sections 103(a), 105(a), 1507(a) and 1521(a)(7) of the Code granting relief under section 108 of the Code ("Section 108") and setting July 22, 2010 as the date of the "order for relief" for purposes of Section 108.

The rather straightforward relief sought in the Motion is this Court's application of the tolling provisions of Section 108, allowing the Foreign Representatives extensions of time from the date upon which they stepped into the shoes of the Debtors in these chapter 15 cases to assert causes of action and meet applicable deadlines on the Debtors' behalf with respect to currently pending and potential litigation. The Foreign Representatives assert that for these purposes, the date of the "order for relief" is July 22, 2010, when this Court entered the Recognition Order. The Foreign Representatives argue both that the relief provided by Section 108 is automatically applicable in a chapter 15 case, as in a chapter 11 case, and that such relief is otherwise necessary to effectuate the purposes of chapter 15 pursuant to sections 1507(a) and 1521(a)(7) of the Code.[2]

Briefs in opposition to the Motion were filed by certain defendants (the "Objectors") to the Foreign Representatives' 209 pending adversary proceedings (the "Redeemer Actions"), whereby the Foreign Representatives seek to recover substantial potential BVI estate assets. The

---

[1] *In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010) ("Exhibit A – Bench Memorandum and Order Granting Chapter 15 Petitions of Fairfield Sentry Limited, Fairfield Sigma Limited, and Fairfield Lambda Limited For Recognition of Foreign Proceedings."), Dkt. No. 47, as amended by Errata Orders at Dkt. Nos. 48, 51.

[2] *See* Foreign Representatives' Motion Pursuant to 11 U.S.C. §§ 1507(a) and 1521 (a)(7) for an Order (I) Granting the Foreign Representatives Relief Under 11 U.S.C. § 108 and (II) Setting the Date of the "Order For Relief", Dkt. No. 95, p. 7 ("[T]he Bankruptcy Code is silent as to whether the relief provided in section 108 is automatically available to a foreign representative and, to date, there is no dispositive case law on the issue. Nevertheless, the legislative history of section 1520 indicates that Congress intended for section 108 to be available in Chapter 15 cases. Moreover, the Court has the authority to grant the Foreign Representatives the relief available in section 108 of the Bankruptcy Code pursuant to sections 1507(a) and 1521(a)(7) . . . .").

Objectors argue, *inter alia*, that the tolling provisions of Section 108 are not available in a chapter 15 case, and that the Foreign Representatives are otherwise unentitled to the extension of such relief to them.

For the reasons set forth below and at oral argument, the Motion is GRANTED.

## BACKGROUND

### I.    THE DEBTORS AND THE CHAPTER 15 CASES

The Debtors were established for the purpose of allowing mainly non-U.S. persons and certain tax-exempt U.S. entities to invest with Bernard L. Madoff Investment Securities LLC ("BLMIS").  On December 11, 2008, it was revealed that Bernard L. Madoff ("Madoff") had for decades perpetrated a Ponzi scheme through the investment advisory side of BLMIS, which is currently in liquidation before this Court pursuant to 15 U.S.C. §§ 78aaa *et seq*., the Securities Investor Protection Act ("SIPA").  *Sec. Inv. Prot. Corp. v. BLMIS (In re BLMIS)*, No. 08-01789 (Bankr. S.D.N.Y. 2008).

Subsequent to the revelation of the BLMIS fraud, certain of the Debtors' shareholders and creditors commenced insolvency proceedings on behalf of the Debtors in the British Virgin Islands (the "BVI") before the BVI Court.  The BVI Proceedings were commenced on separate dates with respect to each of the Debtors: Lambda on February 27, 2009, Sentry on April 21, 2009, and Sigma on April 23, 2009.  The BVI Court appointed Christopher Stride ("Stride") as liquidator of Lambda by order dated April 23, 2009 and Stride and Krys as joint liquidators of Sentry and Sigma by orders dated July 21, 2009.  Lau subsequently succeeded to Stride's liquidator positions, and Krys was appointed as joint liquidator of Lambda with Lau.  As a result, Krys and Lau are the current joint court-appointed liquidators of the Debtors estates and the Foreign Representatives with respect to each of the Debtors' chapter 15 cases.  *See* Notice of

Change in Status of Foreign Representatives' Appointment Pursuant to 11 U.S.C. § 1518, Dkt. No. 77.[3]

The Foreign Representatives filed the Debtors' chapter 15 petitions seeking recognition of the BVI Proceedings before this Court on June 14, 2010 (the "Petition Date"). The Debtors' chapter 15 cases were consolidated for administrative purposes by order dated June 17, 2010. Amended Order Authorizing Joint Administration of Cases Pursuant to Bankruptcy Rule 1015, Dkt. No. 11. On July 22, 2010 (the "Recognition Date"), after a hearing held on the matter, this Court entered the Recognition Order recognizing the Debtors' BVI Proceedings as foreign main proceedings and granting other relief under sections 1517(b)(1) and 1521 of the Code. *See generally In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010).

## II.    THE FOREIGN REPRESENTATIVES' ROLE AND THE PENDING ACTIONS

As the Debtors are the largest of the so-called "feeder funds" to have invested with Madoff through BLMIS, the Debtors' investors are not only creditors to this proceeding, but also victims of the massive Ponzi scheme. In order to marshal assets for fair and efficient distribution among these creditors and victims, in accordance with BVI insolvency law, the Foreign Representatives are "entrust[ed] [with] the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States." 11 U.S.C. § 1521(a)(5); *see also In re Fairfield Sentry Ltd.*, 440 B.R. at 67 ("[G]ranting the requested relief under section 1521 of the Code fosters the 'fair and efficient administration of [the Debtors'] cross-border insolvencies' by ensuring that only one unbiased party-the Liquidators-quarterback the Debtors' causes of action 'in the interests of all creditors and other interested entities, including the debtor.' ") (quoting 11 U.S.C. § 1501(a)(3)). Recognition of the BVI Proceedings as foreign

---

[3] Citations to docket numbers refer to the main case, Case No. 10-13164, unless otherwise indicated.

5

main proceedings under chapter 15, among other things, grants the Foreign Representatives "the capacity to sue and be sued in a court of the United States" and the ability to "apply directly to a court in the United States for appropriate relief in that court."    11 U.S.C. § 1509(b)(1), (2) ("Right of Direct Access").   Moreover, as liquidators appointed by order of the BVI Court, the Foreign Representatives "have custody and control of all the assets" of the Debtors and the powers to, *inter alia*, "commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company [the Debtors] in the British Virgin Islands or elsewhere" and "all other things incidental to the exercise of" such powers.   BVI Insolvency Order, pp. 11–12.[4]

In furtherance of these powers and duties, the Foreign Representatives have identified and asserted causes of action against a number of parties on behalf of the Debtors.   In April 2010, with the BVI Court's approval, the Foreign Representatives began commencing the Redeemer Actions in the United States against direct or indirect subscribers for the return of redemption payments withdrawn from Sentry's BLMIS account.   The Redeemer Actions are currently pending before this Court,[5] in substantially identical form, asserting equitable and restitutionary common law claims of unjust enrichment, money had and received, mistaken payment and constructive trust, as well as BVI avoidance claims under sections 245 and 246 of the BVI Insolvency Act for "unfair preferences" and "undervalue transactions."   At the time of this decision, there are 209 adversary proceedings pending, seeking in the aggregate over $5.79 billion, including fictitious profits in excess of $690 million.   Ltr. to Hon. Burton R. Lifland re:

---

[4] Verified Petition, Dkt. No. 2, Ex. A, *In re The Insolvency Act 2003 and Fairfield Sentry Ltd.*, BVIHCV2009/136 (Eastern Caribbean Supreme Court, High Court of Justice, July 21, 2009) [hereinafter "BVI Insolvency Order"].

[5] Those Redeemer Actions originally filed in New York State Court prior to the Recognition Order have been either discontinued or removed pursuant to 28 U.S.C. section 1452 and Bankruptcy Rule 9027 to this Court.

Statistics on Redeemer Actions, Dkt. No. 415.

After a hearing held on November 9, 2010, these Redeemer Actions, and "any other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the Redeemer Actions," were procedurally consolidated for pretrial and discovery purposes by order dated November 10, 2010, as amended by order dated November 17, 2010. *See* Amended Order Authorizing the Consolidation of Redeemer Actions Pursuant to Federal Rule of Bankruptcy Procedure 7042, Dkt. No. 257, ¶ 2. This Court additionally entered a Preliminary Scheduling Order implementing a coordinated schedule for the Actions. Preliminary Scheduling Order for Redeemer Actions, Dkt. No. 245. The Foreign Representatives continue to gather information to determine when, and to whom, all of the Debtors' assets were transferred in order to commence related actions. The total number of suits to be commenced is not yet known and could potentially be hundreds.[6]

In addition to the Redeemer Actions, the Foreign Representatives are pursuing Sentry's action against its former investment advisors, including Fairfield Greenwich Group, Fairfield Greenwich Limited, Fairfield Greenwich (Bermuda) Limited, Fairfield Greenwich Advisors LLC, Fairfield International Managers, Inc. and certain related individuals, seeking in excess of $919 million in investment management and performance fees from Sentry's BLMIS account (the "Sentry Direct Action"). The Sentry Direct Action was commenced in the Commercial Division of the Supreme Court of the State of New York, New York County, on May 29, 2009,

---

[6] Certain defendants to the Redeemer Actions removed from New York State Court filed motions for remand or abstention the "Remand Motions"). Certain of the Remand Motions were filed before the District Court for the Southern District of New York (the "District Court") as part of larger motions requesting withdrawal of the reference, which were consolidated before a single judge and denied by Memorandum and Order dated November 22, 1010, transferring the remand issue to this Court. *See In re Fairfield Sentry Ltd., et al.*, 10-CIV-7340 (S.D.N.Y. Nov. 22, 2010), Dkt. No. 15, p. 6. In a written opinion issued concurrently herewith, this Court denied the Remand Motions, retaining the Redeemer Actions and the Debtors' other causes of action together in one forum. *See Fairfield Sentry Ltd., et al. v. Theodoor GGC, et al. (In re Fairfield Sentry Ltd., et al.)*, Adv. Pro. No. 10-03496, Dkt. No. 268 (Bankr. S.D.N.Y. 2011).

and ultimately removed to the District Court and referred to this Court, where it is currently

pending. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Group, et al.*, Adv. Pro. No. 10-03800.

The parties entered into a Stipulation whereby the defendants' time to move, answer, or

otherwise respond to the complaint is set for June 6, 2011. Motion of Foreign Representatives

Kenneth Krys and Christopher Stride To Authorize Joint Administration of Cases Pursuant to 11

U.S.C. §§ 1519 and 1521, Dkt. No. 8.

In addition to the Actions now pending, the Foreign Representatives are investigating

potential claims against any parties bearing responsibility for the Debtors' massive losses in

value in connection with their BLMIS investments. The Foreign Representatives represent that

pivotal deadlines for commencing additional civil actions, and for performing acts required to

continue the Actions that have already been commenced, are quickly approaching, and they are

required to take action in order to preserve the Debtors' rights.

## DISCUSSION

### I. SECTION 108 RELIEF IS APPLICABLE IN THESE CHAPTER 15 CASES

While there is no dispositive case law addressing whether Section 108 relief is

automatically applicable in these chapter 15 cases, this question is squarely addressed by section

103(a) of the Code, which incorporates Section 108 into a chapter 15 proceeding. The Court's

analysis therefore "begins where all such inquiries must begin: with the language" of these two

relevant statutes themselves. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989); *see

also Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 723 (2011) ("Our interpretation of the

Bankruptcy Code starts where all such inquires must begin: with the language of the statute

itself.") (internal quotations omitted); *In re JSC BTA Bank*, 434 B.R. 334, 340 (Bankr. S.D.N.Y.

2010) ("In interpreting the meaning of section 1520(a)(1), the Court is bound by the plain

meaning of the statute."). Where, as here, the language of the relevant statutes is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms." *Ron Pair Enters.*, 489 U.S. at 240-41 (internal quotations omitted). Consistent with well-established principles of statutory interpretation, this Court finds that the plain language of section 103(a) of the Code instructs that the tolling provisions of Section 108 are automatically available to the Foreign Representatives in these chapter 15 cases.

The tolling provisions of Section 108 essentially grant a two-year extension of time for a trustee in bankruptcy to commence actions in the interests of the estate, provided that the applicable time period had not expired before the filing of the petition. The statute states:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a). Similarly, subsection (b) of Section 108 provides a short extension of time for filing pleadings, curing defaults, and performing other acts on behalf of the debtor:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of – (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

11 U.S.C. § 108(b). These provisions allow a trustee additional time, upon stepping into the shoes of the debtor, to discover and evaluate potential causes of action or perform other acts required to preserve the debtor's rights. *See* H.R. Rep. No. 95-595, at 318 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6275.

The instant dispute as to whether these tolling provisions may be utilized by the Foreign

Representatives falls under the purview of section 103(a) of the Code, which governs whether a particular provision applies in a case under a particular chapter of the Code. Titled "applicability of chapters," section 103(a) of the Code states, in relevant part:

> chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and *this chapter*, sections 307, 362(n), 555 through 557, and 559 through 562 apply in a case under chapter 15.

11 U.S.C. § 103(a) (emphasis added). While only certain sections of chapters 3 and 5 apply in a chapter 15 case, section 103(a) unambiguously states that "this chapter,"—chapter one—applies in its entirety. In turn, Section 108 in particular is a general provision, which is not restricted to, or excluded from, cases under any specific chapter of the Code. Daniel M. Glosband, *et al.*, *The American Bankruptcy Institute Guide to Cross-Border Insolvency in The United States*, 18 (American Bankruptcy Institute 2008) ("Section 103 of the Bankruptcy Code, Applicability of Chapters, was amended by BAPCPA to provide that chapter 1 of the Code, "General Provisions," would apply to cases under chapter 15."). Thus, in reading section 103(a), this Court need only assume that "Congress says in a statute what it means and means in a statute what it says." *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 89 (2d Cir. 2002) (addressing issues of apparent first impression among the circuits) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000)). Accordingly, the tolling provisions of Section 108(a), as part of chapter one, are certainly applicable here.

The Objectors' argument that section 1520 of the Code, which grants certain additional effects of recognition of a foreign main proceeding, somehow eliminates the tolling provisions from these cases is unavailing. The Objectors incorrectly assume that section 1520(a)(3), granting the foreign representative the ability to "operate the debtor's business and . . . exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552," operates to the exclusion of the separate and additional relief available under Section 108. 11

10

U.S.C. § 1520(a). They argue that the Foreign Representatives are not "trustees," and section 1520(a)(3) provides the exclusive relief that can be transferred from "trustees" to foreign representatives, without including Section 108 relief. *See, e.g.*, Theodoor Obj., ¶¶ 9, 10[7] ("To the extent that Congress intended to convey certain powers and rights of a trustee to a foreign representative, it already did so in an express, limited grant under section 1520(a) . . . . [N]otably absent is any mention of section 108."); J.P. Morgan Obj., ¶ 18[8] ("[I]f section 108(a) were intended to apply automatically in a chapter 15 case, that provision would be expressly mentioned in section 1520(a)(3), which specifies the rights and powers of a 'trustee' that a 'foreign representative' obtains upon recognition of a foreign main proceeding.").

This Court disagrees. Because sections 363 and 552 are not incorporated into chapter 15 cases *ab initio* by section 103(a), there was a need to expressly incorporate them under section 1520(a)(3) that did not exist with respect to Section 108. 11 U.S.C. § 103(a) ("[T]his chapter, sections 307, 362(n), 555 through 557, and 559 through 562 apply in a case under chapter 15."). This rationale applies consistently throughout the remaining subsections of section 1520, which further incorporate sections 361, 362 and 549 in limited circumstances, as these provisions are likewise not incorporated by section 103(a) of the Code. *See id.* Simply put, inclusion of Section 108 relief in section 1520 would have been superfluous in light of the plain language of section 103(a) of the Code. It is well established that courts endeavor to "avoid whenever possible statutory interpretations that result in superfluous language." *See U.S. v. Novak*, 476 F.3d 1041, 1048 (9th Cir. 2007) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

---

[7] Objection of Theodoor GGC to the Foreign Representatives' Motion for Relief under 11 U.S.C. § 108, Dkt. No. 193 [hereinafter "Theodoor Obj."].

[8] Objection of J.P. Morgan Securities Limited to Foreign Representatives' Motion Pursuant to 11 U.S.C. §§ 1507(a) and 1521(a)(7) for an Order (I) Granting the Foreign Representatives Relief Under 11 U.S.C. § 108 and (II) Setting the Date of the "Order for Relief", Dkt. No. 185 [hereinafter "J.P. Morgan Obj."].

Neither does the Objectors' narrow reading of "trustee" in Section 108 persuade this Court that relief is unavailable to the Foreign Representatives. First, the definition of "trustee" in chapter 15 is not as restrictive as the Objectors would have it be, as it uniquely utilizes the term "includes," rather than "means," and broadly encompasses trustees and debtors-in-possession alike. *Compare* 11 U.S.C. §1502(6) (" '[T]rustee' *includes* a trustee, a debtor in possession in a case under any chapter of this title, or a debtor under chapter 9 of this title.") (emphasis added) *with* § 1502(1) (" 'debtor' *means* . . . .") (emphasis added); *see also* 11 U.S.C. § 102(3) (" 'includes' and 'including' are not limiting[.]"). The United States Supreme Court has specifically held that the words "include" and "mean," as have been deliberately selected in defining "trustee" here, "are not used synonymously or loosely, but with discrimination and a purpose to give to each a meaning not attributable to the other." *Am. Sur. Co. of New York v. Marotta*, 287 U.S. 513, 517 (1933) (" '[I]nclude' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation."). Thus, the use of the word "trustee" in Section 108 is by no means dispositive evidence that its tolling relief is unavailable for use by the Foreign Representatives here.

Second, the Foreign Representatives are indistinguishable from trustees with respect to the purpose of Section 108 to provide the entity stepping into the shoes of the debtor additional time to evaluate and preserve a debtor's rights. Where entities, such as the Foreign Representatives, "essentially function[] as the trustee," the Second Circuit has found entitlement to Section 108 relief. *See Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, v. Custom Air Sys., Inc.*, 333 F.3d 345, 348 (2d Cir. 2003) ("We can think of no policy justification for affording the protections of § 108(b) to a trustee in a Chapter 7 or a Chapter 13 bankruptcy proceeding but not to a debtor in possession in a Chapter 11 bankruptcy proceeding, where the

debtor in possession essentially functions as the trustee."); *see also In re Olympia & York Maiden Lane Co., LLC*, 233 B.R. 662, 667 (Bankr. S.D.N.Y. 1999) ("[W]e do not read the exclusion of a "receiver" from § 108 to bar a state court equity receiver . . . from obtaining the [Section 108] relief he is seeking on behalf of the debtors . . . .").  Although not trustees in name, the Foreign Representatives are likewise the "one unbiased party" responsible for "quarterback[ing] the Debtors' causes of action 'in the interests of all creditors and other interested entities, including the debtor.' "  *In re Fairfield Sentry Ltd.*, 440 B.R. at 67 (quoting 11 U.S.C. § 1501(a)(3)); *see also* BVI Insolvency Order (listing powers and duties of the Foreign Representatives as liquidators); 11 U.S.C. § 1509(b) (granting the Foreign Representatives "direct access" to United States courts).  The purposes of Section 108 are particularly relevant here, given the Foreign Representatives' daunting task to "piece together a tangled web of complex financial transfers and determine the propriety of prosecuting claims and causes of action against a considerable number of defendants and potential defendants" arising out of the largest investment funds' involvement in Madoff's massive, international Ponzi scheme.  Foreign Reps. Reply, ¶ 7.[9]

This Court's plain language reading is supported by the legislative history of section 1520 of the Code, which confirms Congress' awareness of the application of Section 108 in a chapter 15 proceeding.  The purpose of chapter 15 is "to incorporate the Model Law on Cross-Border Insolvency" (the "Model Law").  11 U.S.C. §1501.  Pursuant to the Model Law, the stay imposed upon recognition "does not affect the right to commence individual actions or proceedings to the extent necessary to preserve a claim against the debtor."  Model Law, Article

---

[9] Foreign Representatives' Omnibus Reply in Support of Motion Pursuant to 11 U.S.C. §§ 1507(a) and 1521(a)(7) for an Order (I) Granting the Foreign Representatives Relief Under 11 U.S.C. § 108 and (II) Setting the Date of the "Order for Relief", Dkt. No. 210 [hereinafter "Foreign Reps. Reply"].

20, ¶ 3.  The corollary provision of chapter 15 deviates from this paragraph of the Model Law,

providing that the stay "does not affect the right to commence an individual action or proceeding

*in a foreign country* to the extent necessary to preserve a claim against the debtor."  11 U.S.C. §

1520(b) (emphasis added).  The explanation for this difference is found in the legislative history

of section 1520(b) and supports the applicability of Section 108 to a chapter 15 ancillary

proceeding: "*Section 108 of the Bankruptcy Code provides the tolling protection intended by*

*Model Law article 20(3)*, so no exception is necessary [in section 1520] for claims that might be

extinguished under United States law." H.R. Rep. No. 109-31(I), at 115 (2005), *as reprinted in*

2005 U.S.C.C.A.N. 88 (emphasis added).  This legislative history confirms that Congress was

aware of the application of at least certain provisions of Section 108 to a chapter 15

proceeding.[10]

        While the parties have not cited a decision, and this Court is aware of none, in which the

merits of this issue have been analyzed, extant law supports this Court's analysis.  In *In re*

*Condor Insurance Ltd.*, the bankruptcy court issued an order directing that "the application of

section 108 of the Bankruptcy Code is relief available to a trustee and therefore can be granted to

the Foreign Representatives under section 1521(a)(7)."  Order Granting Motion for Relief

Pursuant to 11 U.S.C. § 1521(a)(7) for the Application of 11 U.S.C. § 108, *In re Condor Ins.*

*Ltd.*, No. 07-51045, Dkt. No. 44, p. 1 (Bankr. S.D. Miss. Oct. 10, 2007) (the "Condor Order.").

While the *Condor* court relied upon section 1521(a)(7) of the Code, it did not indicate any

objection to the automatic availability of such relief or consider section 103(a) of the Code.  *See*

---

[10] Thus, the Court finds arguments that the legislative history is irrelevant because it is in the context of section
108(c) rather than 108(a) unpersuasive.  The legislative history refers broadly to "[s]ection 108 of the Bankruptcy
Code," and the Court can conceive of no reason why the same policy goals should not be enforced with respect to
actions by and against the debtor for these purposes.  H.R. Rep. No. 109-31(I), at 115 (2005), *as reprinted in* 2005
U.S.C.C.A.N. 88 (emphasis added).

14

*id.*    The National Conference of Bankruptcy Judges' comprehensive law journal article examining chapter 15 jurisprudence considers the Condor Order in conjunction with section 103(a) of the Code and concludes, consistent with this Court's reasoning, that "[r]ights afforded by Chapter 1, such as extensions of time under § 108, apply in a Chapter 15 case by virtue of § 103(a).  Thus, there should be no need to obtain an order under § 105, 1507, or 1521 declaring that § 108 is applicable in a Chapter 15 case."  NATIONAL CONFERENCE OF BANKRUPTCY JUDGES, 82 AM. BANKR. L. J. 269, 313 (Spring 2008).

The only additional case that touches upon this issue does not hold otherwise.  Contrary to certain Objectors' arguments, the Section 108 issue that is squarely before this Court was never analyzed or decided in *In re Bancredit Cayman Ltd. (Bancredit I)*, No. 06-11026, 2007 WL 3254369, at *3 (Bankr. S.D.N.Y. Nov. 2, 2007), *aff'd, (Bancredit II)*, No. 07-CIV-11338, 2008 WL 919533 (S.D.N.Y. Mar. 31, 2008).  The court itself could not have stated so any more clearly:  "Nothing in this decision should be read to decide the ultimate issue: whether § 108 is available to foreign representatives."  *Id*; *see also Bancredit II*, 2008 WL 919533 at *3 ("The real question before the Bankruptcy Court . . . was whether it had jurisdiction.").  The court thus qualified its language pertaining to the Section 108 issue as "identifying the potential weaknesses of the foreign representatives' arguments . . . simply . . . to show that the issue is not as uncontroversial as [the foreign representatives] suppose, and requires that I hear both sides."  *Id.* The court did not conduct an analysis of the plain language or legislative history of the relevant Code sections or mention section 103(a) of the Code, but rather held that "[n]either the background to this proceeding nor underlying merit of the Foreign Representatives request to extend § 108 is important to the pending motion."  *Id.* at *1.  Indeed, at least one of the Objectors rightly concedes that the *Bancredit* cases do not decide the Section 108 issue presented here.  *See*

Theodoor Obj., ¶ 9, n.2 ("Courts in this District . . . have had the opportunity to touch upon this issue, while not deciding it . . . .").

Nevertheless, the Objectors erroneously import issues present in the *Bancredit* cases, arguing that this Court lacks jurisdiction to grant the Motion, the Motion seeks an advisory opinion, or there is no case or controversy. *See Bancredit I*, 2007 WL 3254369, at *3. ("There is no case or controversy brewing; the Foreign Representatives . . . seek piece [sic] of mind at the expense of those who may be adversely affected by the relief they seek, even though those persons did not receive notice or the chance to argue . . . ."). Here, unlike in *Bancredit*, the Objectors have filed multiple briefs and presented oral argument in opposition to the Motion, and thus cannot credulously argue that notice is deficient as to them or that there has not been a full and fair opportunity for litigation of this issue. As to future adversary proceedings, notice is also not deficient. Unlike in the *Bancredit cases*, where the foreign representatives "failed to give notice of their application to anyone who might controvert it" and "had not sued anyone," *Bancredit I*, at *2–3, the Foreign Representatives adequately noticed, *inter alia*, all parties to the litigation pending in the United States in which any Debtor is a party or their counsel; all registered shareholders; the Debtors' former directors, investment manager, auditors, and other service providers or their counsel; and all parties that have filed a notice of appearance in the case; and they have commenced, among other suits, 209 Redeemer Actions against defendants including the Objectors. Certificate of Service, Dkt. No. 105. Moreover, the automatic application of Section 108 to toll deadlines relating to future adversary proceedings exists precisely because trustees in general, and the Foreign Representatives in particular, do not necessarily know at the time of stepping into the shoes of the Debtors all of the transfers and defendants relevant to their potential claims. Thus, waiting for an adversary proceeding to be

asserted and a statute of limitations defense to be raised and defended against in order to determine the Foreign Representatives' entitlement to Section 108 relief defies logic and subverts the purpose of the statute.

Accordingly, this Court cannot find that the Objectors' arguments are sufficient to overcome the plain language of section 103(a), which applies Section 108 outright in these chapter 15 cases and must be enforced "according to its terms." *See Ron Pair Enters.*, 489 U.S. at 240–41.

Finally, the Recognition Date is properly deemed the date of the "order for relief" for purposes of calculating the Foreign Representatives time under Section 108, as recognition allowed the Foreign Representatives to avail themselves of the rights and remedies under the Code. *See, e.g.*, 11 U.S.C. §§ 1509–21; *In re SPhinX, Ltd.*, 351 B.R. 103, 115 (Bankr. S.D.N.Y. 2006) ("The first step to obtaining relief under chapter 15 (with the exception of interim relief under section 1519) is receiving 'recognition' of the foreign proceeding under section 1515 and 1517(a) of the Bankruptcy Code."); Condor Order, p. 2 ("[S]ection 108 of the Bankruptcy Code applies to this chapter 15 proceeding with August 21, 2007 [the recognition date] being the date of the "order for relief" for purposes of section 108."). The Objectors' arguments that chapter 15 must technically define "order for relief" for utilization of Section 108 is therefore rejected. In addition to contradicting the plain meaning of section 103(a) of the code, adoption of the Objectors' logic would write an exclusion of Section 108 relief into section 1521(a)(7) of the Code, pitting the two statutes against each other and contradicting the outcome in *Condor*. *See* 1521(a)(7) (granting "any" relief available to a trustee to a foreign representative); Condor Order, p. 1 ("[T]he application of section 108 of the Bankruptcy Code is relief available to a trustee and therefore can be granted to the Foreign Representatives under section 1521(a)(7).");

*Roe v. City of New York*, 232 F. Supp.2d 240, 254 (S.D.N.Y. 2002) ("It is not the function of the court . . . to declare one statute the victor over another if the statutes may be read together, without misdirecting the one, or breaking the spirit of the other.").

## II.    EXTENSION OF SECTION 108 TO THE FOREIGN REPRESENTATIVES IS OTHERWISE NECESSARY UNDER SECTIONS 1507 AND 1521(a)(7) OF THE CODE

Even if section 108 were not a self-executing statute with respect to chapter 15 cases, sections 1507 and 1521(a)(7) of the Code provide the ancillary court with strong flexibility to extend the relief requested here.

Section 108 relief is available under section 1521(a)(7) of the Code, which empowers the ancillary court to grant "any additional relief that may be available to a trustee, except for relief available under section 522, 544, 545, 547, 548, 550, and 724(a)[,]" where such relief is "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." *Id.* at 1521(a)(7).  In addition, "the court, if recognition is granted, may provide additional assistance to a foreign representative under [the Code] or under other laws of the United States." 11 U.S.C. § 1507(a).

Here, the Court finds that Section 108 relief is "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1521(a).  The tolling extension under Section 108 will foster the objectives of chapter 15 by facilitating the duties of the Foreign Representatives, who are "entrust[ed] [with] the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States," to comply procedurally in pursuing and defending substantial litigation within the United States. 11 U.S.C. § 1521(a)(5). The Foreign Representatives are charged with pursuing the Sentry Direct Action and 209 pending Redeemer Actions, as well as investigating potential claims against other parties bearing responsibility for the Debtors' massive losses in

18

value in connection with their BLMIS investments.    Additional time will allow them to effectively investigate complex financial transfers, commence actions within applicable statute of limitations periods, and otherwise "untangle the web created by the Madoff fraud without the looming expiration of statute of limitations periods."  Foreign Reps. Reply, ¶¶ 2, 7.  Such relief is necessary to aid their efforts to achieve multibillion-dollar recoveries for the benefit of stakeholders of the largest feeder fund in the largest Ponzi scheme in United States history. Accordingly, Section 108 relief is necessary under the circumstances for the fair and efficient administration of this cross-border insolvency and the effective protection and maximization of the value of the Debtors' principle assets, which are its causes of action.  11 U.S.C. § 1501(a)(4).

## CONCLUSION

In consideration of the plain language of the relevant sections of the Code and Model Law, legislative history, and extant case law, the Court finds that Section 108 Relief is automatically available to the Foreign Representatives.   In addition, the requested relief is warranted under sections 1507 and 1521(a)(7) of the code.  Accordingly, the Motion is hereby GRANTED.

**IT IS SO ORDERED**.

Dated: New York, New York
        May 23, 2011

                                        /s/ Burton R. Lifland
                                        United States Bankruptcy Judge