UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
In re:                                                  :
                                                        :
FAIRFIELD SENTRY LIMITED, et al.                        :       Case No. 10-13164 (SMB)
                                                        :       Chapter 15
         Debtors in Foreign Proceedings.                :       Jointly Administered
-------------------------------------------------------------X

## MEMORANDUM DECISION GRANTING FOREIGN REPRESENTATIVE'S MOTION TO DISAPPROVE SALE AND DENYING FARNUM'S MOTION TO MODIFY THE RECOGNITION ORDER

**A P P E A R A N C E S :**

BROWN RUDNICK LLP
*Attorneys for Kenneth M. Krys, in his capacity as*
  *Foreign Representative of Fairfield Sentry Limited*
Seven Times Square
New York, NY 10036

         David J. Molton, Esq.
         May Orenstein, Esq.
         Daniel J. Saval, Esq.
         Marek P. Krzyzowski, Esq.
                  Of Counsel

QUINN EMANUEL URQUHART & SULLIVAN LLP
*Attorneys for Farnum Place, LLC*
51 Madison Ave., 22nd Floor
New York, NY 10010

         Robert Juman, Esq.
         Scott C. Shelley, Esq.
         Eric D. Winston, Esq.
         Shane McKenzie, Esq.
         Matthew Scheck, Esq.
                  Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

         This matter comes before the Court on remand from the Second Circuit Court of Appeals

following its decision in *Krys v. Farnum Place, LLC* (*In re Fairfield Sentry Ltd.*), 768 F.3d 239

(2d Cir. 2014) ("*Fairfield Sentry*").  In *Fairfield Sentry,* the Second Circuit reversed the

Bankruptcy and District Courts, and held that the sale of Fairfield Sentry Ltd.'s ("Sentry")

customer claim (the "Sentry Claim") in the Bernard L. Madoff Investment Securities LLC

("BLMIS") liquidation to Farnum Place, LLC ("Farnum") required review under section 363 of

the Bankruptcy Code.  *Id.* at 246-47.  On remand to this Court, Kenneth Krys (the "Foreign

Representative"), the foreign representative of Sentry, seeks *disapproval* of the sale pursuant to

11 U.S.C. §§ 363(b) and 1520(a)(2) because the value of the Sentry Claim has risen

dramatically.  Alternatively, the Foreign Representative seeks authority to conduct a new sale.

Farnum separately moves (i) to modify the order recognizing these Chapter 15 proceedings (the

"Recognition Order")[1] to provide that 11 U.S.C. § 363 does not apply or, in the alternative, (ii)

for an order confirming that 11 U.S.C. § 363 does not apply to the instant sale.  For the reasons

that follow, the Foreign Representative's motion to disapprove the sale is granted and Farnum's

motion is denied.  In addition, Farnum's related motion to compel discovery is also denied.

## BACKGROUND

The background to this proceeding is detailed in *In re Fairfield Sentry Ltd.*, 484 B.R. 615,

618-22 (Bankr. S.D.N.Y. 2013), *aff'd*, *Krys v. Farnum Place, LLC* (*In re Fairfield Sentry Ltd.*),

No. 13 Civ. 1524 (AKH) (S.D.N.Y. July 3, 2013), *rev'd,* 768 F.3d 239 (2d Cir. 2014).  The Court

assumes familiarity with this decision and limits the factual discussion to what is necessary to

decide the motions.

---

[1]       *See Minute Order Granting Chapter 15 Petitions of Fairfield Sentry Limited, Fairfield Sigma Limited and Fairfield Lambda Limited for Recognition of Foreign Proceedings*, dated July 22, 2010 (ECF Doc. # 47) and accompanying Bench Memorandum, as amended by Errata Orders, dated July 26, 2010 (ECF Doc. # 48) and July 30, 2010 (ECF Doc. # 51).

## A.    Sentry's Sale of its SIPA Claim to Farnum

Sentry was an investment fund formed in the British Virgin Islands ("BVI") that invested 95% of its assets in BLMIS.  Following the revelation that Madoff operated BLMIS as a Ponzi scheme, the District Court placed BLMIS into liquidation under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), and appointed Irving Picard ("Trustee") as the SIPA trustee.

Sentry was also placed into liquidation in July 2009 in the BVI, and Krys and Joanna Lau were appointed Joint Liquidators by the BVI Court.  In June 2010, Krys filed a chapter 15 petition in this Court seeking recognition of Sentry's BVI proceeding as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517.  This Court granted recognition as a foreign main proceeding, and the District Court and the Second Circuit Court of Appeals affirmed.  *See Morning Mist Holdings Ltd. v. Krys* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127, 138-39 (2d Cir. 2013).

Sentry filed three customer claims in the BLMIS SIPA liquidation aggregating $6,284,321,581 which reflected amounts listed on Sentry's final BLMIS account statement.  (*See Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rule 2002(a)(3) and 9019(a) of the Federal Rules of Bankruptcy Procedure Approving an Agreement by and between the Trustee and Joint Liquidators*, dated May 9, 2011, at ¶ 10 (ECF Adv. P. No. 09-01239 Doc. # 69).)  Under the Trustee's preferred "net investment method," which omitted fictitious profits from the calculation of a customer's net equity, Sentry's customer claims totaled $1,192,536,342.  (*Id*. at ¶ 11.) [2]  The Trustee counterclaimed, commencing an adversary

---

[2]      The Second Circuit subsequently endorsed the Net Investment Method under which the customer's net equity is calculated by subtracting the amount the customer withdrew from its BLMIS account from the amount the

proceeding against Sentry and affiliated chapter 15 debtors and seeking recovery of

$3,054,000,000 in transfers and the disallowance of Sentry's customer claims.  (*Id.* at ¶ 7.)

Negotiations led to a May 2011 settlement (the "Settlement").  Among other things, the

Trustee allowed Sentry's customer claim in the sum of $230 million (*i.e.*, the Sentry Claim).

This Court granted the Trustee's motion to approve the Settlement in the SIPA proceeding, and

the BVI Court granted the Foreign Representative's motion to approve the Settlement in the BVI

proceeding.  The Foreign Representative did not also seek approval of the Settlement in the

chapter 15 case.

**B.**    **Approval of the Trade Confirmation by BVI, Bankruptcy, and District Courts**

Prior to the Settlement, the Joint Liquidators had commenced an auction process in the

BVI to sell Sentry's rights in the Sentry Claim during the summer of 2010.  Farnum won the

auction with an offer to purchase the Sentry Claim for 32.125% of its allowed amount, which

was then in dispute.  Farnum and the Foreign Representative entered into a trade confirmation

("Trade Confirmation")[3] memorializing the sale on December 14, 2010.  The Trade

Confirmation stated that the Sentry Claim was worth as much as $2 billion if calculated under

the Net Investment Method and $10,539,420,000 under the Last Statement Method.  (Trade

Confirmation at 2.)  The Trade Confirmation stated that it was subject to approval by the U.S.

Bankruptcy Court and the BVI Court.  (*Id.* at 1.)

---

customer invested.  The Court rejected the alternative Last Statement Method under which net equity is equal to the
value of securities reflected on the final, November 2008 BLMIS account statement.  *In re BLMIS*, 654 F.3d 229,
235-238 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012).

[3]        A copy of the Trade Confirmation is annexed as Exhibit A to the *Krys Declaration* (defined below).

Three days after the Trade Confirmation was signed, the Trustee announced a significant

settlement with the estate of Jeffry Picower and related entities under which the BLMIS estate

would receive $5 billion.  As a result, the market value of a BLMIS customer claim rose to over

50% of the claim's face value.  In terms of the Sentry Claim, an increase from 32.125% to 50%

equated to roughly a $40 million increase in value.

As a result of the Picower settlement, the proposed sale no longer made economic sense,

and the Joint Liquidators balked at seeking the BVI Court's approval of the transaction.

Consequently, in October 2011, Farnum moved in the BVI Court to compel the Joint Liquidators

to approve the Trade Confirmation.  The BVI Court conducted several days of hearings,

approved the terms of the Trade Confirmation and directed the Foreign Representative to seek

the approval or *disapproval* of the Trade Confirmation in this Court.  The BVI Court expressed

no views "on the issues that will arise for determination by the U.S. Bankruptcy Court" and

made "clear that . . . the U.S. Bankruptcy Court is presented with a choice whether or not to

approve [the Trade Confirmation]."  *Fairfield Sentry*, 768 F.3d at 242-43.

In April 2012, the Foreign Representative filed an application in this Court seeking

*disapproval* of the Trade Confirmation pursuant to 11 U.S.C. § 363(b).  This Court denied the

Foreign Representative's request characterizing it as "seller's remorse" and a "last-ditch effort"

to avoid the terms of the Trade Confirmation.  *In re Fairfield Sentry Ltd.*, 484 B.R. at 617, 618.

The District Court affirmed the Bankruptcy Court.

## C.    Second Circuit's Reversal and Denial of Rehearing Petition

The Second Circuit reversed the lower courts.  The Court of Appeals held that the sale of

the Sentry Claim pursuant to the Trade Confirmation constituted a transfer of Sentry's property

5

located within the territorial jurisdiction of the United States that was subject to review pursuant to Bankruptcy Code §§ 363 and 1520(a)(2). *Fairfield Sentry*, 768 F.3d at 245. Furthermore, the Bankruptcy Court was not required to give deference to the BVI Court's prior approval of the sale under principles of comity. *Id.* at 245-46.

After the Second Circuit issued its decision, Farnum petitioned for panel rehearing or rehearing *en banc*. (*Pet. for Panel Reh'g or Reh'g En Banc*, Krys v. Farnum Place LLC, No. 13-3000 (2d Cir. Oct. 10, 2014) ("*Rehearing Petition*"), ECF Doc. # 96.) The majority of the *Rehearing Petition* argued that the Circuit Court's decision was wrong, but also requested that the Court amend its opinion to clarify, among other things, that Farnum's alternative arguments were not foreclosed on remand. (*Rehearing Petition* at 14-15.) The *Rehearing Petition* did not list those arguments, and instead, cited to a portion of Farnum's prior appellate brief at which it argued that (i) the application of 11 U.S.C. § 363 was not mandatory because 11 U.S.C. § 1520(a)(3) provided that a foreign representative *may* exercise the rights and powers under section 363, (ii) the entrustment power granted under 11 U.S.C. § 1521(a)(5) allowed the Foreign Representative to administer and realize Sentry's U.S. assets without Court approval (the "Entrustment Argument"), and (iii) the sale of the Sentry Claim was an ordinary course transaction for which section 363 approval was not required (the "Ordinary Course Argument"). (*Br. for Appellee* at 47-49, *Krys v. Farnum Place LLC*, No. 13-3000 (2d Cir. Feb. 14, 2014), ("*Br. for Appellee*") ECF Doc. # 48.)

By order dated November 3, 2014, the Second Circuit requested that the Foreign Representative respond but only to Farnum's "contention that the Court's opinion should be

modified to permit the District Court[4], on remand, to consider any issues not already adjudicated that might preclude the need for a section 363 hearing." (*Order*, Krys v. Farnum Place LLC, No. 13-3000 (2d Cir. Nov. 3, 2014), ECF Doc. # 98.)  In his response, the Foreign Representative disputed Farnum's contention that the lower courts had failed to address Farnum's alternative theories and also responded to the merits of those theories.  On January 13, 2015, the Second Circuit denied the *Rehearing Petition* in its entirety. (*Order*, Krys v. Farnum Place LLC, No. 13-3000 (2d Cir. Jan. 13, 2015), ECF Doc. # 102.)

### D.    Foreign Representative's Motion on Remand

Following remand by the Second Circuit Court of Appeals, the Foreign Representative filed his *Motion Following Remand From the Second Circuit Court of Appeals for Review Pursuant to 11 U.S.C. §§ 363(b) and 1520(a)(2), and Disapproval, in Accordance with the Foreign Representative's Business Judgment, of the Contemplated Sale of Fairfield Sentry's SIPA Claim to Farnum Place LLC*, dated February 13, 2015 ("*Foreign Representative Motion*") (ECF Doc. # 752).[5]

The Foreign Representative explained the business reasons for seeking disapproval in his declaration.  He stated that although the sale of the Sentry Claim for 32.125% of the claim's face value made business sense at the time, (*Krys Declaration* at ¶ 9 (stating that the market value for BLMIS customer claims was "approximately 20% to 30% of the face amount of such claims" at the time he entered into the Trade Confirmation)), the anticipated recovery following the

---

[4]    Although referring to the District Court in the order, the Court's mandate was to "REMAND to the district court with instruction to REMAND to the bankruptcy court" to conduct a section 363 analysis. *Fairfield Sentry*, 768 F.3d at 247.

[5]    The *Foreign Representative Motion* was supported by the *Declaration of Daniel J. Saval in Support of the Foreign Representative Motion*, dated Feb. 13, 2015 (ECF Doc. # 753) and *Declaration of Kenneth Krys in Support of the Foreign Representative Motion*, dated Feb. 13, 2015 ("*Krys Declaration*") (ECF Doc. # 754).

7

Picower settlement increased to "at least 50% of the allowed amount of their claims."  (*Id.* at ¶

11.)  As a result, "there was no longer a good business reason for consummating the" Trade

Confirmation.  (*Id.* at ¶ 12.)  In fact, to date, Sentry had already received interim cash

distributions on account of the Sentry Claim totaling $112.2 million which represented 48.8% of

the $230 million Sentry Claim, (*id.* at ¶ 18), and the Foreign Representative believed that the

Sentry estate would receive additional amounts in the future.[6]  (*Id.* at ¶ 19.)  The Foreign

Representative was unaware of any Sentry stakeholder who supported the transaction, and

certain members of an *ad hoc* non-statutory committee of Sentry investors (the "Liquidation

Committee") with whom he consulted from time to time on matters relating to the Sentry

liquidation had indicated their opposition to the transaction with Farnum.  (*Id.* at ¶ 21.)  In fact,

several Sentry stakeholders have also filed statements supporting disapproval of the Trade

Confirmation.[7]  In short, there was no business justification to proceed with the Trade

Confirmation.  (*Foreign Representative Motion* at ¶¶ 26-41.)  Lastly, the Foreign Representative

requested that "in the event that the Court were to consider approving the [Trade Confirmation],

the Foreign Representative should be granted leave to conduct a sales process in accordance with

this Court's Amended Guidelines for Conduct of Asset Sales."  (*Id.* at ¶¶ 6, 42-45.)

---

[6]      In *SIPC v. 2427 Parent Corp.* (*In re BLMIS*), 779 F.3d 74 (2d Cir.), *cert. denied*, 2015 WL 4468041 (Oct. 5, 2015), the Court held that a customer's net equity calculation should not be adjusted to account for time-based damages such as inflation or interest.  *Id.* at 81, 83.  The Trustee thereafter moved to distribute over $900 million previously reserved pending resolution of that litigation.  (*See Motion for an Order Approving Sixth Allocation of Property to the Fund of Customer Property and Authorizing Sixth Interim Distribution to Customers* at ¶ 9, SIPC v. BLMIS, No. 08-1789 (Bankr. S.D.N.Y. Apr. 15, 2015), ECF Doc. # 9895.)  The application was held in abeyance pending possible Supreme Court review of the Second Circuit's decision, but the Supreme Court denied the petition for a writ of *certiorari* on October 5, 2015.  Its denial paves the way for the additional distribution of the reserved funds.  The Trustee estimates that the additional distribution "will provide up to 55.685% of each customer's allowed claim amount…."  (*Id.*)  When applied to the Sentry Claim, a 55.685% distribution would result in a recovery exceeding $128 million.

[7]      *See Statement of Nordea Liv & Pension, et al.*, dated Mar. 3, 2015 (ECF Doc. # 763), *Statement of Anwar Class Plaintiffs*, dated Mar. 3, 2015 (ECF Doc. # 769), and *Letter of Haven Ltd. and Novastar Ltd.*, dated Feb. 25, 2015 (ECF Doc. # 779).

Not surprisingly, Farnum opposed the *Foreign Representative Motion*.[8]  It argued that the

Foreign Representative overemphasized the importance of the increase in value of the Sentry

Claim to the exclusion of other factors encompassing a section 363 review.  (*Farnum Opposition*

at 1-2.)  These factors included: (i) the integrity of the auction process, (ii) aiding the main

insolvency proceeding in the BVI, (iii) greater certainty as to the allowance of the Sentry Claim,

and (iv) the Foreign Representative's inequitable conduct throughout the sale process.  (*Farnum

Opposition* at 9-24.)

The Foreign Representative replied to the *Farnum Opposition*[9] reiterating his arguments

in the *Foreign Representative Motion* on March 17, 2015.  He also argued that Farnum, as a

mere prospective purchaser, lacked standing to participate in the remanded section 363

proceeding.  (*Foreign Representative Reply* at ¶¶ 11-19.)[10]

## E.    Farnum's Motion on Remand

Farnum also filed a cross-motion.  (*See Motion Requesting (i) Modification of

Recognition Order and (ii) Confirmation that Sale of Sentry Claim Does Not Require Review

under Bankruptcy Code § 1520(a)(2)*, dated February 14, 2015 ("*Farnum Motion*," and together

with the *Foreign Representative Motion*, the "*Motions*") (ECF Doc. # 757).)  The *Farnum

Motion* had two components.  First, it sought to modify the Recognition Order to eliminate the

---

[8]      *See Opposition of Farnum to Foreign Representative Motion*, dated Mar. 3, 2015 ("*Farnum Opposition*")
(ECF Doc. # 770), supported by *Declaration of Scott C. Shelley*, dated Mar. 3, 2015 (ECF Doc. # 771).

[9]      *See Foreign Representative's Reply to the Farnum Opposition*, dated Mar. 17, 2015 ("*Foreign
Representative Reply*") (ECF Doc. # 781) supported by *Supplemental Declaration of Daniel J. Saval in Support of
the Foreign Representative Reply*, dated Mar. 17, 2015 (ECF Doc. # 782) and *Supplemental Declaration of Kenneth
Krys in Support of the Foreign Representative Reply*, dated Mar. 17, 2015 (ECF Doc. # 783).

[10]     The Foreign Representative and Farnum also submitted short letter briefs in response to an inquiry of the
Court at the hearing on the *Foreign Representative Motion*.  (ECF Doc. Nos. 786 & 787.)

need for § 363 review.  According to Farnum, the Foreign Representative never intended that the

section 363 approval requirement apply to transactions in this chapter 15 case. (*Farnum Motion*

at 27-30).  Second, and notwithstanding the Second Circuit's opposite conclusion, Farnum

sought confirmation that the sale of the Sentry Claim was not subject to review under

Bankruptcy Code § 1520(a)(2).  In support, Farnum repeated its Entrustment Argument, (*id.* at

30-32), and its Ordinary Course Argument.  (*Id.* at 32-35.)

The Foreign Representative opposed the *Farnum Motion*,[11] asserting, among other things,

that it was an improper collateral attack on the Second Circuit's *Fairfield Sentry* decision and

was foreclosed by the mandate rule.  (*Foreign Representative Opposition at ¶¶* 11-30.)  Morning

Mist Holdings Limited and Miguel Lomeli—Sentry shareholders—also objected to the *Farnum

Motion*.[12]  Farnum replied to those objections on March 17, 2015.[13]  Farnum and the Foreign

Representative subsequently entered into a *Stipulation Concerning Admissibility of Declarations

and Exhibits*, so-ordered by the Court on March 27, 2015 ("*Evidence Stipulation*") (ECF Doc. #

784), and a hearing on the *Motions* was held on March 31, 2015.

## DISCUSSION

### A.    Farnum's Standing

As a threshold matter, the Foreign Representative contends that Farnum is merely a

prospective purchaser who lacks standing to be heard in a Bankruptcy Court proceeding to

---

[11]    *See Foreign Representative's Objection to Farnum Motion*, dated Mar. 3, 2015 ("*Foreign Representative Opposition*") (ECF Doc. # 767), supported by *Declaration of Daniel J. Saval in Support of Foreign Representative Opposition*, dated Mar. 3, 2015 (ECF Doc. # 768).

[12]    *See Morning Mist Holdings Limited and Miguel Lomeli's Objection to Farnum Motion*, dated Mar. 3, 2015 (ECF Doc. # 764).

[13]    *See Reply to Objections to Farnum Motion*, dated Mar. 17, 2015 (ECF Doc. # 780).

consider approval of a sale under section 363 of the Bankruptcy Code.  *See Wallach v. Kirschenbaum*, No. 11 CV 0795 (SJF), 2011 WL 2470609, at *4 (E.D.N.Y. June 16, 2011) ("A prospective purchaser … lacks standing to challenge a bankruptcy court's disallowance of a proposed sale of an asset of the bankruptcy estate."); *In re Planned Sys., Inc.*, 82 B.R. 919, 922-23 (Bankr. S.D. Ohio 1988) ("frustrated bidder," who made the highest offer lacked standing to object to the sale, but Court would still consider the higher offer in connection with § 363 review); *In re NEPSCO, Inc.*, 36 B.R. 25, 26-27 (Bankr. D. Me. 1983)("potential purchasers" are not within the "zone of interests" intended to be protected under 11 U.S.C. § 363(b)).  Farnum counters that it has standing as a Sentry creditor because the BVI Court awarded costs to Farnum in connection with the trial to approve the Trade Confirmation.[14]

Creditors have standing to object to bankruptcy sales, 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 363.02[1][c] at 363-14 (16th ed. 2015) ("COLLIER ON BANKRUPTCY"), and the Trustee does not dispute the general proposition that a Sentry creditor has the right to participate in, and if appropriate object to, the *Foreign Representative Motion*. However, he contests Farnum's standing as a creditor because its interests are at odds with the interests of all other Sentry creditors, the BVI cost award is on appeal in the BVI in light of the Second Circuit's reversal, and if the cost award is upheld, it will be paid in full as an administrative claim.

---

[14]        *See Request for Judicial Notice in Support of Farnum Motion*, dated Feb. 13, 2015 at Ex. 10 (BVI Court Order, entered Feb. 25, 2014, awarding trial costs) (ECF Doc. # 758), admitted into evidence pursuant to the *Evidence Stipulation*.

Although it discussed appellate standing in bankruptcy proceedings,[15] *Licensing By Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380 (2d Cir. 1997) provides a helpful analogy.  In *Gucci*, creditors Trackwise and Orologi submitted unsuccessful bids in a section 363 sale of the debtor's assets.  *Id.* at 384-87.  They appealed the sale order, and the bankruptcy trustee and winning bidder challenged the standing of losing bidders, including Trackwise and Orologi, to appeal the lower courts' approval of the sale.  *Id.* at 387-88.  They argued that Trackwise and Orologi were "appealing as disappointed bidders, not as creditors" pointing out that the other unsecured creditors did not oppose the sale.  *Id.* at 388.  The Second Circuit rejected the standing challenge:

> Orologi and Trackwise in fact declare that Guccio Gucci's conduct diminished the value of the estate's assets, thereby limiting their recovery as creditors.  The other unsecured creditors' support for the sale order does not refute Trackwise's and Orologi's status as creditors.  Nor is our decision swayed by the fact that these two appellants are motivated, at least in part, by the hope that they may purchase the estate's assets at a resale.  In sum, Orologi and Trackwise have standing to appeal Guccio Gucci's status as a good faith purchaser.

*Id.* at 388.

Farnum has suggested that approval of the Trade Confirmation will lend greater certainty to the Foreign Representative's recovery, but like the bidders in *Gucci*, its status as a creditor of the Sentry estate is not motivating its position.  Nevertheless, Farnum holds an unstayed BVI Court order awarding it costs, and is a creditor of the Sentry estate even if it stands alone in opposition.  Furthermore, the appeal of the award of costs does not change its status because at

---

[15]    Appellate standing in bankruptcy proceedings requires that the appellant be an "aggrieved person" directly and adversely affected pecuniarily by the Bankruptcy Court order; this standard is more stringent than the "injury in fact" standard under Article III.  *Licensing By Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 388 (2d Cir. 1997).

worst, it holds a disputed claim and is still a creditor. Accordingly, it has standing to oppose the

*Foreign Representative Motion*.[16]

## B.    Foreign Representative Motion

The Foreign Representative seeks disapproval of the sale to Farnum pursuant to 11

U.S.C. § 363(b) made applicable to this chapter 15 case by 11 U.S.C. § 1520(a)(2).[17] Section

363(b) of the Bankruptcy Code provides that the "trustee, after notice and hearing, may use, sell

or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. §

363(b). The *Fairfield Sentry* Court provided no view on the merits but identified "some guiding

principles" from its prior precedent. 768 F.3d at 246. In its seminal decision, *Comm. of Equity*

*Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir. 1983), the Second

Circuit identified a non-exclusive list of "salient factors" the bankruptcy judge should consider

when deciding if the trustee has shown a sound business reason for the relief he seeks:

He might, for example, look to such relevant factors as the proportionate value of

---

[16]    The Foreign Representative contends that Farnum's status as a creditor does not provide it standing because it is advancing its interests as a prospective purchaser and not as a creditor. (*Letter from David J. Molton, Esq. to the Court*, dated Apr. 7, 2015, at 5 n. 6 (ECF Doc. # 786).) For support, the Foreign Representative cited this Court's opinion in *In re Ampal-Am. Israel Corp.*, 502 B.R. 361 (Bankr. S.D.N.Y. 2013). In *Ampal*, the Court concluded that former officers and directors of the debtor lacked standing under 11 U.S.C. § 363(k)(1) to seek damages to their non-creditor interests resulting from a violation of the automatic stay. *Id.* at 372-73. The conclusion was based on the purpose of the automatic stay and its rationale did not affect their standing as creditors to participate in the chapter 7 case.

[17]    The *Foreign Representative Motion* is unusual in that he seeks disapproval of the transaction under § 363. Unless a court order pre-approves the auction results and renders a further order unnecessary, *see In re Linton Props., LLC*, 400 B.R. 1, 2-3 (Bankr. D. D.C. 2009), an estate is not bound by a contract until the bankruptcy court approves it. *G-K Dev. Co., Inc. v. Broadmoor Place Invs., L.P.* (*In re Broadmoor Place Invs., L.P.*), 994 F.2d 744, 745 n.1 (10th Cir. 1993) ("While G–K calls its collective signed instruments here a 'contract', this is a misnomer since there can be no contract in this situation without Bankruptcy Court approval."), *cert. denied*, 510 U.S. 1071 (1994); *In re Asia Global Crossing, Ltd.*, 326 B.R. 240, 256 (Bankr.S.D.N.Y.2005) (debtor was not bound to perform the contract to sell its assets until it was approved by the Court pursuant to 11 U.S.C. § 363(b)(1)); *In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 303 (Bankr.S.D.N.Y.1994) (agreement subject to § 363(b)(1) "is not enforceable absent notice and a hearing"). Hence, a trustee can abandon a bad deal and decline to seek approval under § 363. *Asia Global Crossing*, 326 B.R. at 256. In this case, the Foreign Representative could not simply abandon the Trade Confirmation because the Second Circuit mandated a review under § 363. Furthermore, the BVI Court directed him to seek approval or disapproval of the Trade Confirmation in this Court.

13

the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, *most importantly perhaps, whether the asset is increasing or decreasing in value.*

*Id.* at 1071 (emphasis added).  Emphasizing *Lionel*'s last "salient factor," the *Fairfield Sentry*

Court stated:

While we intimate no view on the merits of the section 363 review on remand, we provide some guiding principles from our case law.  We have held that "a judge determining a § 363(b) application [is required to] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."  *In re Lionel Corp.,* 722 F.2d at 1071.  "In fashioning its findings, a bankruptcy judge ... should consider all salient factors pertaining to the proceeding...."  *Id.*  Such salient factors include "whether the asset is increasing or decreasing in value."  *Id.*  We have also recognized that bankruptcy courts must have "broad discretion and flexibility ... to enhance the value of the estates before it." *Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.),* 980 F.2d 165, 169 (2d Cir.1992)  And we have recognized also that the bankruptcy court's "principal responsibility ... is to secure for the benefit of creditors the best possible bid." *Id.*

*Fairfield Sentry*, 768 F.3d at 246-47.

Underscoring the importance of the increasing value of the Sentry Claim, the Court

concluded that the Bankruptcy Court "must consider as part of its section 363 review the

increase in value of the Sentry Claim between the signing of the Trade Confirmation and

approval by the bankruptcy court," and "[n]othing in the language of section 363 or our case law

limits the bankruptcy court's review to the date of signing the Trade Confirmation."  *Id.* at 247.

Here, the Foreign Representative has demonstrated a sound business reason for seeking

disapproval of the sale of the Sentry Claim to Farnum.  Based on the allowed amount of the

Sentry Claim ($230 million), the purchase price under the Trade Confirmation is $73,887,500.

The Foreign Representative has already received interim distributions that exceed Farnum's

14

purchase price by almost $40 million.  If the Court denies the *Foreign Representative Motion*

and directs him to consummate the sale, he will have to pay in excess of $112 million in

distributions to Farnum in exchange for Farnum's payment of approximately $74 million.

Furthermore, the value of the Sentry Claim has increased because if the Court approves his

application, the Trustee will distribute amounts held in reserve pending the disposition of the

customers' rights to recover the time-value of their investments.  *See supra* note 6.  In addition,

the value of the Sentry Claim may continue to rise if the Trustee recovers more customer

property or removes other restrictions on the distribution of customer property he is holding in

reserve against unresolved litigation.  As a result, the most important factor and the one factor

the Second Circuit specifically directed this Court to consider plainly weighs against the

approval of the sale.

Although not discussed by the parties, the other relevant *Lionel* factors also favor

disapproval.[18]  The sale price of the Sentry Claim under the Trade Confirmation is

disproportionately low in light of its increased value, and the alternative to the sale to Farnum,

under which the Foreign Representative will hold the claim and receive his distribution or sell it

to someone else at a much higher price, is in the best interest of the Sentry estate.

Farnum nevertheless asserts that aside from the increase in value of the Sentry Claim,

other salient factors (not expressly identified in *Lionel*) favor approval of the Trade

Confirmation.  In particular, Farnum maintains that the finality of the auction and the integrity of

---

[18]        The *Lionel* Court acknowledged a concern about the use of a § 363 sale to bypass the disclosure and voting
process required to confirm a plan.  *See* 722 F.2d at 1071.  Several of the *Lionel* factors are keyed to concern over
foreclosing other resolutions of a chapter 11 case (*e.g.,* "the amount of elapsed time since the filing, the likelihood
that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition
on future plans of reorganization").  These concerns are not relevant in a liquidating case where the trustee marshals
the assets and reduces them to cash.

the auction process are factors that outweigh the increase in the value of the Sentry Claim. (*Farnum Opposition* at 9-17.)  Courts are rightly concerned about efforts by a losing bidder to withhold or fail to make a better bid at the auction only to seek to reopen the bidding and improve its bid after the auction.  Indeed, Farnum cites cases in which courts have refused to entertain a topping bid after the close of an auction.  *E.g.*, *In re Gil-Bern Indus., Inc.*, 526 F.2d 627, 628-29 (1st Cir. 1975) (a post auction bid "merely to gain a few extra dollars" should not be permitted absent a local custom to the contrary)[19]; *In re Bigler, LP*, 443 B.R. 101, 107 (Bankr. S.D. Tex. 2010) (auction would not be reopened to allow a losing bidder to make a topping bid that was $500,000 higher than winning bidder's $20.5 million bid); *In re Bryan*, No. 12-31486 (WRS), 2013 WL 4716194, at *3 (Bankr. M.D. Ala. Sept. 3, 2013) (debtors were not permitted to make additional bid over winning bidder where "despite being allowed to make an untimely 'final' bid, the best offer of the Debtors was only to match the existing offer").[20]  Even so, the decision whether to reopen the auction is committed to the bankruptcy court's discretion.  *Fin. News*, 980 F.2d at 166.

---

[19]     The First Circuit in a subsequent case, *In re Muscongus Bay Co.*, 597 F.2d 11 (1st Cir. 1979), recognized that despite its holding in *Gil-Bern*, "there are certain circumstances in which the best interests of the estate and creditors may warrant a bankruptcy court's refusal to confirm" a highest bid at auction.  *Muscongus Bay Co.*, 597 F.2d at 13 (Bankruptcy Court acted within its discretion in refusing to confirm highest bid at auction, and instead, accepting a late bid that was 12.3% higher), *accord Consumer News and Bus. Channel P'ship v. Fin. News Network Inc.* (*In re Fin. News Network Inc.*), 980 F.2d 165, 169 (2d Cir. 1992) ("We do not question the reasoning of *Gil-Bern* as a general proposition, but it should not be blindly applied so as to reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance the value of the estates before it.").

[20]     Farnum also cites *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761 (7th Cir. 2004), but that case did permit a post-auction bid through a second auction where the Bankruptcy Court had not yet entered an order approving the sale and the topping bidder was not aware that a provision in the asset purchase agreement had been removed.  *Id.* at 772 ("On these facts, the bankruptcy court was entitled to conclude that [original auction winner's] expectations as the high bidder, and the public interest in the finality of the sale proceedings, were not so solidified as to preclude a second auction.").

In this case, however, the Court is not being asked to reopen the auction. Instead, the Foreign Representative is asking the Court to disapprove a bid that is woefully inadequate in light of changed circumstances. If the integrity of the auction process was a more important consideration, a bankruptcy court could never disapprove a proposed sale of an asset that was increasing in value, and *Lionel*'s most important factor would always be irrelevant.

Farnum also contends that several additional factors favor approval of the Trade Confirmation. First, Farnum argues that approval best aids the BVI liquidation proceeding emphasizing the BVI Court's approval of the Trade Confirmation. (*Farnum Opposition* at 17-19.) This argument is unpersuasive. The Second Circuit concluded that this Court was not required to defer to the BVI Court and was required to perform an independent review under Bankruptcy Code § 363. Furthermore, the BVI Court found that the increased market value was irrelevant to its decision to approve the Trade Confirmation, (*BVI Judgment* at ¶ 50),[21] yet the Second Circuit identified this factor as the most important in deciding whether to approve or disapprove the transaction.

Second, Farnum argues that the Trade Confirmation provides Sentry creditors with greater certainty of recovery on account of the Sentry Claim. (*Farnum Opposition* at 19-22.) According to Farnum, the Second Circuit mandate also means that the Settlement must be reviewed in this chapter 15 proceeding under § 363. Any purchaser other than Farnum does not know whether the Settlement, which gave rise to the Sentry Claim, is enforceable.

The question of whether a compromise of a claim is a sale within the meaning of § 363 is a fair ground for litigation. *See Cadle Co. v. Mims* (*In re Moore*), 608 F.3d 253, 264-65 & n. 21

---

[21]    A copy of the *BVI Judgment* is annexed as Exhibit B to the *Krys Declaration*.

(5th Cir. 2010) (discussing circuit split and concluding that a compromise is a sale).  At bottom, however, Farnum's argument relies on at least three assumptions: (1) the law of this Circuit will treat the Settlement as a sale under § 363 and refuse to approve it; (2) if the Court denies the Foreign Representative's motion and directs him to consummate the Trade Confirmation, no other creditor will insist on § 363 review of the Settlement; and (3) if the Court disapproves the Settlement, the Sentry's customer claim will be worth less than Farnum is prepared to pay.

Given the speculative nature of these assumptions, approval of the Trade Confirmation does not give any greater certainty of recovery to Sentry's creditors than the Foreign Representative's current intention to hold on to the Sentry Claim and collect distributions from the BLMIS customer property estate.  Assuming that § 363 applies to the Settlement – an issue not before the Court – any Sentry creditor could invoke it.  If the Court then disapproved the Settlement, the Foreign Representative would be left with a disputed claim that might ultimately be disallowed following litigation.  In that event, Farnum would pay the Sentry estate 32.125% of zero.  Thus, approving the Trade Confirmation and requiring the Foreign Representative to consummate it does not provide any greater certainty to the Sentry estate or its creditors than disapproving it.

Third, Farnum alleges that the Court should factor in the Foreign Representative's inequitable conduct, including his targeting only Farnum in exercising § 363 of the Bankruptcy Code, not seeking Court approval of the Trade Confirmation until Farnum initiated proceedings in the BVI, secretly seeking the BVI Court's disapproval of the Trade Confirmation, refusing to disclose his intentions and making misleading representations and doing nothing to advance the resolution of the Trade Confirmation.  (*Farnum Opposition* at 22-24.)  This argument also lacks merit.  Initially, if Farnum has complaints about the Foreign Representative's conduct in the BVI

18

proceeding, it should address its complaints to the BVI Court.  In addition, the parties agreed that
the Trade Confirmation required Bankruptcy Court approval, and Farnum's "targeting" claim
overlooks this.

Finally, the proceedings before the BVI Court that resulted in its approval of the Trade
Confirmation reflected a good faith dispute regarding the Foreign Representative's fiduciary
obligation to refrain from seeking approval of the Trade Confirmation.  The BVI Court received
expert reports and heard expert testimony from former New York Court of Appeals Judge Joseph
W. Bellacosa and Professor Joseph Perillo on whether a "fiduciary out" under New York law
excused the Foreign Representative from seeking approval of the Trade Confirmation,[22] and
from former Chief Bankruptcy Judge Melanie Cyganowski and Charles D. Axelrod, Esq. on
related questions of bankruptcy law.  The BVI Court concluded that the Trade Confirmation was
a binding contract under New York law, but the Foreign Representative could not be faulted for
failing to seek relief in the BVI Court.  (*See BVI Judgment* at ¶¶ 32, 38.)  The BVI Court directed
the Foreign Representative to seek the "approval (or non-approval)" of the Trade Confirmation
in this Court, (*BVI Judgment* at ¶ 51), and the Foreign Representative promptly followed the BVI
Court's direction.

In sum, the Court concludes that the Foreign Representative exercised appropriate
business judgment and provided a sound business reason for seeking disapproval of the Trade
Confirmation.

---

[22]        The Trade Confirmation is governed by New York law.  (Trade Confirmation at 9.)

### C.    Farnum Motion

The *Farnum Motion* attempts an end run around the Second Circuit's mandate.  It asks the Court to modify the Recognition Order to provide that 11 U.S.C. § 363 does not apply in the chapter 15 case (the "Modification Argument").  Alternatively, argues that even if it does apply, § 363 review is not required based on Farnum's Entrustment Argument and Ordinary Course Argument.  The Foreign Representative responds that these arguments are foreclosed by the Second Circuit's mandate explicitly requiring § 363 review for the sale of the Sentry Claim.

### 1.    Modification Argument

Section 1517(d) of the Bankruptcy Code permits "modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition."  According to Farnum, Sentry's Chapter 15 case "was never intended to serve as a forum for the [Foreign Representative] to undo transactions that the BVI Court … has already approved."  (*Farnum Motion* at 26.)  Consequently, this Court should modify the Recognition Order to limit the effect of 11 U.S.C. § 1520(a)(2) (the provision applying section 363 to the sale of the Sentry Claim) by removing the requirement of section 363 approval for transactions approved by the BVI Court. (*Id*.)  Farnum also cites Bankruptcy Code § 1520(a)(3) in support.

Although a close question, I do not read the Second Circuit's mandate to preclude a separate motion to modify the Recognition Order.  The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis omitted) (quoting *United States v. Bell*, 5F.3d 64, 66 (4th Cir. 1993)).  "To

20

determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).  On the one hand, the Modification Argument is an obvious attempt to circumvent the Second Circuit's mandate.  On the other hand, the Bankruptcy Court expressly provides for such a motion and the mandate does not foreclose its consideration.

On the merits, however, the Modification Argument is lacking.  It is predicated on the notion that the Foreign Representative can file a chapter 15 case with the intention not to be subject to Bankruptcy Code § 363, and if that be his intention, § 363 must give way.  But § 1520(a)(2) unambiguously makes § 363 applicable to chapter 15 cases: "[u]pon recognition of a foreign proceeding that is a foreign main proceeding – sections 363, 549, and 552 apply to a transfer of an interest of the debtor that is within the territorial jurisdiction of the United States…." 11 U.S.C. § 1520(a)(2).  The Second Circuit held that the plain language of § 1520(a)(2) mandated the automatic application of § 363 explaining that "the bankruptcy court is *required* to conduct a section 363 review when the debtor seeks a transfer of an interest in property within the territorial jurisdiction of the United States." *Fairfield Sentry*, 768 F.3d at 246 (emphasis in original); *see Morning Mist Holdings Ltd. v. Krys*, 714 F.3d at 133 ("Upon recognition of a foreign main proceeding, Section 1520 provides certain automatic, nondiscretionary relief…").  The legislative history to § 1517 of the Bankruptcy Code confirms the automatic application of 11 U.S.C. § 1520(a) upon recognition as a foreign main proceeding and emphasizes that the application of section 1520(a) cannot be modified:

> Consistent with the position of various civil law representatives in
> the drafting of the [UNCITRAL Model Law on Cross-Border
> Insolvency], recognition creates a status with the effects set forth

21

> in section 1520, *so those effects are not viewed as orders to be modified*, as are orders granting relief under sections 1519 and 1521.

H.R. REP. NO. 109-31, at 113 (2005) (emphasis added).

Notwithstanding a foreign representative's contrary intention, he can no more "opt out" of § 363 than can a debtor in possession under chapter 11 or a trustee under chapter 7. The parties' "intent" is irrelevant because § 363 applies like it or not. In addition, Farnum's factual position is undercut by the oft overlooked fact that the parties expressly bargained for Bankruptcy Court approval of the Trade Confirmation. If they didn't mean § 363 review, Farnum has not suggested what they did mean.

Furthermore, 11 U.S.C. § 1520(a)(3) does not authorize the Court to gut § 363. Section 1520(a)(3) states that "*unless the court orders otherwise*, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552." (Emphasis added). Thus, § 1520(a)(3) automatically grants the foreign representative in a main proceeding the power to lease, sell or use property of the estate in the ordinary course of business without notice or a hearing, 11 U.S.C. § 363(c)(1), but prohibits him from exercising that power in connection with a transaction outside of the ordinary course of business except after notice and a hearing. 11 U.S.C. § 363(b).

The introductory clause "unless the court orders otherwise" addresses a situation where the court chooses to limit the foreign representative's ability to operate the debtor's business. *See* H.R. REP. NO. 109-31, at 1520 (2005) ("A foreign representative of a foreign main proceeding may need to continue a business operation to maintain value and granting that authority automatically will eliminate the risk of delay. If the court is uncomfortable about this

22

authority in a particular situation, it can 'order otherwise' as part of the order granting

recognition.").  It does not permit the court to allow a foreign representative to operate the

business free of the constraints imposed by § 363 and mandated by § 1520(a)(2).

### 2.    Entrustment Argument

Section 1521(a) lists discretionary relief the Court may provide upon recognition as a

main or nonmain proceeding, including "entrusting the administration or realization of all or part

of the debtor's assets within the territorial jurisdiction of the United States to the foreign

representative or another person…."  11 U.S.C. § 1521(a)(5).  The Recognition Order granted

the Foreign Representative these rights.  Farnum argues that as a consequence, the Court was not

required to approve the Trade Confirmation because the Foreign Representative already had the

power to administer and realize the value of the Sentry Claim pursuant the his rights under 11

U.S.C. § 1521(a)(5).  (*Farnum Motion* at 30-32.)

Initially, the Entrustment Argument is foreclosed by the mandate rule.  Although not

explicitly rejected in *Fairfield Sentry*, the Entrustment Argument was rejected by necessary

implication.  The Entrustment Argument was made, along with other arguments, in connection

with Farnum's assertion that section 363 review was not necessary.  The Second Court

nevertheless ruled that section 363 applied.  The Second Circuit could not have reached this

conclusion without implicitly rejecting the argument that § 363 did not apply based on the

application of § 1521(a)(5).  Consequently, the Entrustment Argument and the Second Circuit

mandate are incompatible, and the Entrustment Argument is foreclosed by the mandate rule.

Second Circuit's denial of Farnum's *Rehearing Petition* lends further support for this

conclusion.  The Second Circuit specifically requested a response from the Foreign

Representative limited to Farnum's request to clarify the decision so that its alternative arguments (including the Entrustment Argument and Ordinary Course Argument) were not foreclosed on remand.  The Foreign Representative responded, *inter alia*, that these arguments had been considered and rejected, and the Second Circuit summarily denied the *Rehearing Petition* in its entirety.  While denials of rehearing petitions are generally not afforded precedential weight, *Fernandez v. Chardon*, 681 F.2d 42, 51 n. 7 (1st Cir. 1982), *aff'd,* 462 U.S. 650 (1983), the proceedings leading to the Second Circuit's denial in this instance imply a rejection of Farnum's position.

Even if the mandate rule did not bar the Entrustment Argument, it lacks merit.  Section 1521(a)(5) of the Bankruptcy Code "permits the delivery of assets located in the United States to a foreign representative or another person for administration or realization but stops short of allowing repatriation or distribution, which are dealt with in section 1521(b)."  8 COLLIER ON BANKRUPTCY ¶ 1521.02, at 1521-4 to 1521-5.  "Realization" refers to the conversion of noncash assets into cash.  BLACK'S LAW DICTIONARY 1456 (10th ed. 2014).  The power to administer and realize assets is similar to the power of a trustee or debtor in possession in chapter 11 who is not required to liquidate the estate's noncash assets, *see* 11 U.S.C. § 1106(a)(1) (excluding the chapter 7 trustee's duty to liquidate from the mandatory duties imposed on a chapter 11 trustee, and hence, a debtor in possession), but the chapter 11 trustee obviously has the power to do so especially in a liquidating chapter 11 case.  The chapter 11 trustee or the debtor in possession must still "realize" the estate's assets subject to the requirements of § 363.  Similarly, the entrustment of the administration and realization of property under § 1521(a)(5) does not exempt the Foreign Representative from automatic application of § 363 as mandated by § 1520(a)(2).

24

### 3.    Ordinary Course Argument

Farnum argues that the transfer of the Sentry Claim is an ordinary course transaction and

§ 363 review is not, therefore, required.  (*Farnum Motion* at 32-35.)  Like the Entrustment

Argument, the Ordinary Course Argument was made to the Second Circuit, rejected by

necessary implication, and barred by the mandate rule.  In fact, the rejection of the Ordinary

Course Argument is even clearer than the rejection of the Entrustment Argument.   The Second

Circuit did not direct the Court to decide whether the sale of the Sentry Claim was in the

ordinary course of business.  Instead, it provided "guiding principles" for "a judge determining a

§ 363(b) application."  *Fairfield Sentry*, 768 F.3d at 246.  Section 363(b) applies to non-ordinary

course transactions.

The Ordinary Course Argument likewise lacks merit.  Farnum asserts that the Trade

Confirmation is an ordinary course transaction because Sentry is in liquidation, and as a result,

liquidating assets is in the ordinary course of business for the Foreign Representative.  Its focus

on the Foreign Representative's "business" rather than Sentry's business is mistaken.

"The term 'ordinary course of business' generally has been accepted 'to embrace the

reasonable expectations of interested parties of the nature of transactions that the debtor would

likely enter in the course of its normal, daily business.'"  *Med. Malpractice Ins. Ass'n v. Hirsch*

(*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997) (quoting *In re Watford*, 159 B.R. 597, 599

(M.D.Ga.1993), *aff'd without opinion,* 61 F.3d 30 (11th Cir.1995)).  To determine whether a

transaction is an ordinary course transaction, courts apply the "vertical" test, which asks whether

the transaction subjects creditors to economic risks different from those accepted at the time of

contract with the debtor, and the "horizontal" test, which asks whether the transaction is the type

that similar businesses engage in as part of their ordinary business operations.  *Id.* at 384-85.

25

"Under this two-part analysis, '[t]he touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.'"  *Id.* at 384-85 (quoting *Indian Motorcycle Assocs., Inc. v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*)*,* 157 B.R. 532, 537 (S.D.N.Y. 1993) (quoting *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*)*,* 29 B.R. 391, 394 (S.D.N.Y.1983))) (alteration in original).  Thus, the Court must examine the debtor's business and similar businesses in the same industry.

Farnum contends that "for purposes of section 363, Sentry's 'business' was the liquidation of its assets."  (*Farnum Motion* at 33.)  This may be the Foreign Representative's current mandate but it was never Sentry's "normal, daily business."  Sentry operated as an investment fund; it took money from its investors and reinvested those funds with BLMIS.  At the time its investors invested with Sentry, they anticipated the usual economic risks associated with their investment activities – the rise and fall of the market value of the securities it thought it owned through its investment in BLMIS.  They did not anticipate the risk that Sentry would sell a cause of action (most if not all of its assets) that the Trade Confirmation estimated could be worth as much as $10,539,420,000 if calculated under the Last Statement Method.  (*See* Trade Confirmation at 3.)  The risks associated with the disposition of a potential $10 billion claim are clearly different from risks associated with the market fluctuations of the securities that Sentry was supposedly trading indirectly through BLMIS.  Farnum fairs no better under the horizontal test because it focuses on the liquidation of the Sentry estate and ignores whether the transaction is typical of similar investment funds.

Furthermore, Farnum's argument would mean that a chapter 7 trustee could liquidate property of the estate, regardless of its value, without complying with § 363.  Section 363(b),

however, applies "both when the business is not authorized to be operated, for example because

the debtor is being liquidated, and when the business is authorized to be operated and the

proposed action is not in the ordinary course of business," 3 COLLIER ON BANKRUPTCY ¶ 363.02,

at 363-10, and section 363 applies "to the same extent" in chapter 15 case as in a chapter 7

liquidation or chapter 11 reorganization.  11 U.S.C. § 1520(a)(2).

### D.    Farnum's Discovery Motion

Farnum also filed a related motion to compel discovery pursuant to Federal Bankruptcy

Rule 7037.  (*See Motion of Farnum Place, LLC Pursuant to Bankruptcy Rule 7037 and 11

U.S.C. § 105(a) for an Order Directing the Liquidator to Produce Requested Documents*, dated

Feb. 27, 2015 ("*Discovery Motion*") (ECF Doc. # 761).)  It sought communications between the

Foreign Representative on the one hand and the Liquidation Committee or the Trustee on the

other hand, that went to the integrity of the 2010 auction, (*Discovery Motion* at 9-11) the Foreign

Representative's business judgment in 2010, (*id*. at 11-12) and whether the purpose of the

chapter 15 case has changed since 2010.  (*Id*. at 12; *see also id.* at 3.)

These issues went well beyond the Second Circuit's mandate and/or are irrelevant to the

disposition of the *Motions*.  Neither the integrity nor the results of the 2010 auction are at issue,

disputed or relevant.  Farnum made the highest and best offer for the Sentry Claim, and the

Foreign Representative accepted it for sound business reasons at the time.  Instead, the question

is whether the sale should be approved or disapproved under § 363 based on the present

circumstances.  Finally, Farnum never contended that the purpose of the chapter 15, to assist the

BVI Court and the Foreign Representative in liquidating Sentry's assets and paying its creditors,

has changed.  Instead, Farnum argued that the Recognition Order should be modified based on

the Foreign Representative's intent respecting the applicability of § 363.  For the reasons

discussed, § 363 applies notwithstanding the possibility of the Foreign Representative's different intent.  Accordingly, the requested discovery will not lead to the discovery of any matter relevant to the issues raised by the *Motions*, and Farnum's *Discovery Motion* is denied.

## CONCLUSION

For the reasons stated, the *Foreign Representative Motion* is granted to the extent of disapproving the sale of the Sentry Claim to Farnum.  It is, therefore, unnecessary to consider the Foreign Representative's alternative argument for leave to reopen the sale process although he remains free to do so in the event he decides to sell the Sentry Claim.  The *Farnum Motion* and its *Discovery Motion* are denied in their entirety.  The Court has considered the parties' other arguments not explicitly discussed in this opinion and concludes that they lack merit or have been rendered moot by the disposition of the *Motions*.  Settle separate orders on notice for each *Motion* and the *Discovery Motion*.

Dated:  New York, New York
        October 13, 2015

                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge

28