UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                       :
                                                             :
FAIRFIELD SENTRY LIMITED, *et al.*                           :   Case No. 10-13164 (SMB)
                                                             :   Chapter 15
    Debtors in Foreign Proceedings.                       :   Jointly Administered
------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO APPROVE ASSIGNMENT OF CLAIMS PURSUANT TO 11 U.S.C. §§ 363(b)(1) & 1520(a)(2) WITHOUT PREJUDICE

**A P P E A R A N C E S:**

BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036

    David J. Molton, Esq.
    May Orenstein, Esq.
    Daniel J. Saval, Esq.
    Marek P. Krzyzowski, Esq.
        Of Counsel

*Attorneys for Kenneth Krys & Charlotte Caulfield,*
  *Foreign Representatives of Fairfield Sentry Limited,*
  *Fairfield Sigma Limited, and Fairfield Lambda Limited*

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Thomas L. Long, Esq.
    Catherine E. Woltering, Esq.
        Of Counsel

*Attorneys for Irving H. Picard, Trustee for the Substantively*
  *Consolidated Liquidation of Bernard L. Madoff Investment*
  *Securities LLC and Representative for the*
  *Estate of Bernard L. Madoff*

MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119

Robert A. Wallner, Esq.
Kristi Stahnke McGregor, Esq.
   Of Counsel

- and –

SEEGER WEISS LLP
77 Water Street
New York, NY 10005

Stephen A. Weiss, Esq.
Parvin Aminolroaya, Esq.
   Of Counsel

*Attorneys for Morning Mist Holdings Limited and Miguel Lomeli*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Kenneth Krys and Charlotte Caulfield (collectively, the "Liquidators")[1], in their capacities as liquidators and foreign representatives of Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda," and together with Sentry and Sigma, the "Fairfield Funds") seek approval of the 2011 assignment of certain claims to Irving H. Picard ("Trustee"), the trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"). (*See Foreign Representatives' Motion Pursuant to 11 U.S.C. §§ 363(b)(1) and 1520(a)(2) for an Order Approving the Assignment of the Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with the Global Settlement Agreement*, dated June 20, 2016 ("Motion") (ECF Doc. # 806).) The Motion is opposed by Morning Mist Holdings Limited and Miguel Lomeli (collectively, the "Objectors"), allegedly

---

[1] The identities of the Liquidators have changed over time. The references to the "Liquidators" in this opinion refer to the Liquidators at the time of the actions described.

2

beneficial owners of shares in Sentry. For the reasons that follow, the Motion is denied without prejudice.

## BACKGROUND

A.  **The Fairfield BVI Liquidation and this Chapter 15 Case**

Much of the background relating to the Fairfield Funds, their demise, and their relationship to BLMIS is discussed in *Morning Mist Holdings Ltd. v. Krys* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127 (2d Cir. 2013) ("*Fairfield Sentry I*"), *Krys v. Farnum Place, LLC* (*In re Fairfield Sentry Ltd.*), 768 F.3d 239 (2d Cir. 2014) ("*Fairfield Sentry II*") and *In re Fairfield Sentry Ltd.*, 539 B.R. 658 (Bankr. S.D.N.Y. 2015) ("*Fairfield Sentry III*"). I assume familiarity with those decisions, and limit the discussion to the facts pertinent to the Motion.

Sentry was a British Virgin Islands ("BVI") entity that served as a BLMIS "feeder fund" investing approximately 95% of its assets with BLMIS. Sigma and Lambda, also BVI entities, operated as sub-feeder funds that invested their assets with Sentry, and hence, invested indirectly through Sentry with BLMIS. Within months of the revelation of Madoff's Ponzi scheme and the appointment of the Trustee to liquidate BLMIS under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, *see SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 124-32 (Bankr. S.D.N.Y. 2010) (describing the Trustee's appointment and Madoff's Ponzi scheme), *aff'd*, 654 F.3d 229 (2d Cir. 2011) ("*Net Equity Decision*"), *cert. denied*, 133 S. Ct. 24 (2012), liquidation proceedings were also commenced against the Fairfield Funds in the BVI (the "Fairfield BVI

3

Liquidation"),[2] and the Eastern Caribbean Supreme Court, in the High Court of Justice, Commercial Division, of the BVI ("BVI Court") appointed the Liquidators.

Following their appointment, the Liquidators commenced a lawsuit in New York Supreme Court against the individuals and entities that managed the Fairfield Funds. Their claims sounded in breach of contract, breach of fiduciary duty, unjust enrichment, rescission, accounting and constructive trust. The Liquidators sought equitable and declaratory relief as well as damages in excess of $919 million representing the fees paid for investment management and performance services purportedly provided by the named defendants (the "Management Claims").[3]

In June 2010, the Liquidators filed a case under chapter 15 of the Bankruptcy Code in this Court seeking recognition of the Fairfield BVI Liquidation as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517. The Objectors opposed the application for recognition, but this Court granted recognition over their opposition, and its order was ultimately affirmed by the Second Circuit Court of Appeals. *Fairfield Sentry I*, 714 F.3d at 140. Armed with the recognition order, the Liquidators, now the foreign representatives in the chapter 15 case, removed the state court action to the United States District Court for the Southern District of New York, and the lawsuit was automatically referred to this Court. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), Adv. P. No. 10-03800 (SMB).

---

[2]    Lambda's, Sentry's and Sigma's liquidations were commenced on February 27, April 21 and April 23, 2009, respectively.

[3]    A copy of the state court complaint is annexed as an exhibit to the Notice of Removal, dated Sept. 10, 2010. (ECF Adv. Pro. No. 10-03800 Doc. # 1.)

**B.      The Settlement Agreement among the Liquidators and the Trustee**

The Fairfield Funds held several accounts with BLMIS, and each filed customer claims. The Sentry claim aggregated $6,284,321,581 (it had several accounts with BLMIS), but these claims were computed under the Last Statement Method which was rejected by the Court of Appeals in the *Net Equity Decision*. (Settlement Agreement, ¶ L.)[4] The value of Sentry's customer claims has since been fixed at approximately $960 million (the "SIPA Claim")[5] under the "net investment" method.[6] (*See Declaration of Kenneth Krys in Support of Foreign Representatives' Motion pursuant to 11 U.S.C. § 363(b)(1) and 1520 (a)(2) for an Order Approving the Assignment of the Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with Global Settlement Agreement*, dated June 20, 2016 at ¶ 7 ("*Krys Declaration*") (ECF Doc. # 807).)

The Trustee counterclaimed, commencing an adversary proceeding (the "Clawback Action") against the Fairfield Funds and others seeking to avoid and recover approximately $3 billion that Sentry had withdrawn from its BLMIS accounts in the years leading up the BLMIS liquidation. (Settlement Agreement, ¶ P.) The Trustee also sought to disallow Sentry's SIPA Claim pursuant to 11 U.S.C. § 502(d), or equitably subordinate the claim pursuant to 11 U.S.C. § 510(c). Finally, the Trustee sought to recover the avoided transfers from Sentry's subsequent

---

[4]     The May 9, 2011 "Settlement Agreement" between the Liquidators and the Trustee was admitted into evidence during the July 12, 2016 hearing, and a copy is available at ECF Doc. # 817-2.

[5]     According to the Settlement Agreement discussed in the text, *infra*, the net equity claim was stated to be $1,192,536,342. (Settlement Agreement, ¶ M.)

[6]     The "net investment" method for calculating net equity credits the amount of cash deposited by a customer and subtracts the amounts withdrawn. *Net Equity Decision*, 654 F.3d at 233.

transferees. (*Id.*) Since Sentry had used funds withdrawn from BLMIS to pay the fees that the Liquidators were seeking to recover through the Management Claims, the Trustee was for the most part seeking to recover the same fees as subsequent transfers from the same group of defendants.

The Liquidators and the Trustee eventually reached a settlement in 2011 that was memorialized in the Settlement Agreement. The settlement was a comprehensive and complex deal that involved the resolution of claims *inter se*, the assignment of claims, mutual releases and the sharing of litigation proceeds. Among other things, (i) Sentry consented to the entry of judgment in the amount of $3,054,000,000 as well as judgments against Lambda and Sigma in lesser though still substantial amounts, (ii) the Trustee agreed to forebear from collecting a part of the judgment from the Sentry estate, (iii) Sentry agreed to pay $70 million to the Trustee, (iv) the Trustee allowed the Fairfield Sentry SIPA Claim in the amount of $230 million, and (iv) the parties exchanged mutual releases. (Settlement Agreement, §§ 1, 2, 13, 15, 16.)

The Settlement Agreement also included provisions addressing the prosecution of claims in various suits against the Fairfield Funds' shareholders, managers, and service providers. Relevant to the instant application, the Liquidators assigned the Management Claims to the Trustee. (Settlement Agreement, § 5.) If the Trustee recovered more than $200 million on account of the Management Claims, the Liquidators would receive 15% of the excess recoveries. (*Id.*) In addition, the parties agreed to share other recoveries in various percentages and amounts derived from the lawsuits the Liquidators had brought against the Fairfield Funds' shareholders, (*id.*, §§ 4, 8, 9), the claims and causes of action held by the Liquidators against the Fairfield

6

Funds' service providers, (*id.*, § 6), the Trustee's subsequent transferee claims, (*id.*, §§ 7, 8, 9), and the Trustee's claims against J.P Morgan Chase, BLMIS' banker. (*Id.*, § 10.)

The Settlement Agreement was subject to approval in both courts. The Trustee sought authorization to enter into the Settlement Agreement in the SIPA proceeding, the Objectors opposed that application, but the Court authorized and approved the Settlement Agreement by order dated June 10, 2011. (*See* ECF Adv. P. No. 09-01239 Doc. # 95.) The Liquidators also sought approval of the Settlement Agreement in the Fairfield BVI Liquidation. Several parties – but not the Objectors – opposed the settlement, and the BVI Court approved the Settlement Agreement by orders dated June 24, 2011. (*See* ECF Case No. 10-13164 Doc. # 452-1.) As a result of the settlement, the Sentry estate has already received a $133 million distribution on its SIPA Claim (less the $70 million paid under the Settlement Agreement) plus another $50 million representing its share of the proceeds of a settlement that the Trustee reached with JP Morgan Chase. (*Krys Declaration*, ¶ 13.) Furthermore, the Trustee continues to recover money and will make additional distributions in the future on the SIPA Claim, and possibly, from recoveries obtained from third parties in accordance with the Settlement Agreement.

C.     **The Instant Motion**

The Liquidators never sought approval of the Settlement Agreement from this Court in the chapter 15 case, and still don't. Instead, the Motion seeks approval of their assignment of the Management Claims to the Trustee under section 363(b)(1) of the Bankruptcy Code. Trustee supports the Motion adding that denial of the Motion might result in the abrogation of the Settlement Agreement and uncertainty for the Liquidators and the Trustee. (*See Trustee's Response in Support of Foreign Representatives' Motion Pursuant to 11 U.S.C. §§ 363(b)(1) and*

7

*1520(a)(2) for an Order Approving the Assignment of the Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with the Global Settlement Agreement*, dated July 5, 2016 ("Trustee Brief") at 6 (ECF Doc. # 810).)

The Objectors oppose the Motion. (*Morning Mist Holdings Limited and Miguel Lomeli's Objection to Foreign Representatives' Motion for Approval of Assignment of Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with Global Settlement Agreement*, dated July 6, 2016 (the "Objection") (ECF Doc. # 809).) Their principal argument is that the development of fraudulent transfer law in the context of the BLMIS SIPA Liquidation since 2011 has favored former BLMIS customers such as Sentry who have been sued in claw back actions. As a result, even if the terms of the Settlement Agreement were fair when entered into in May 2011, they are no longer fair, and the Liquidators should renegotiate the settlement. (Objection, ¶¶ 10-20.)

The Liquidators replied in further support of the Motion, adding that the Objectors lacked standing to be heard in connection with the Motion. First, the Objectors were advancing their interests as plaintiffs in a derivative action rather than any economic interest in the Sentry liquidation, and were acting adversely to the shareholders and creditors of the Sentry estate. (*See Foreign Representatives' Reply in Further Support of Motion Pursuant to 11 U.S.C. §§ 363(b)(1) and 1520(a)(2) for an Order Approving the Assignment of the Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with the Global Settlement Agreement*, dated July 8, 2016, ¶¶ 6-7 (ECF Doc. # 816).) Second, they were not registered

8

shareholders of Sentry, and had no right to receive distributions from Sentry under BVI law. (*Declaration of Alistair Abbott in Support of Foreign Representatives' Reply in Further Support of Motion Pursuant to 11 U.S.C. §§ 363(b)(1) and 1520(a)(2) for an Order Approving the Assignment of the Debtors' Claims Against Fairfield Greenwich Group and Related Parties to the Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC in Connection with the Global Settlement Agreement*, dated July 8, 2016, at ¶ 8 (ECF Doc. No. 818).)

Following a July 12, 2016 hearing, the Court requested supplemental briefing on the standing issue.[7]

## DISCUSSION

It is unnecessary to resolve the issue of the Objectors' standing at this time because the Motion seeks relief that cannot be granted in the manner it is sought. As a threshold matter, the Liquidators cannot carve the Management Claims out from the Settlement Agreement and seek approval of that one part of the settlement without seeking approval of the Settlement Agreement as a whole. (Objection, ¶¶ 6, 27.) The Settlement Agreement is a complex agreement with substantial give and take on both sides. The assignment of the Management Claims is one part of the overall bargain, and Settlement Agreement does not separate the Management Claims from the rest of the consideration, or allocate any specific consideration received by Sentry on account of the assignment. The Trustee has essentially acknowledged this observing that the denial of the Motion may jeopardize the entire settlement. (Trustee Brief at 6.)

---

[7] *See* ECF Doc. Nos. 828, 831, and 834.

9

Section 363 in this regard requires a court to expressly find that there is a good business reason to approve a proposed sale. *Fairfield Sentry II*, 768 F.3d at 243; *Official Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir.1983). It is not possible to conclude that the "sale" of the Management Claims, standing alone, is a good business decision without considering the rest of the bargain in the context of a motion to approve the Settlement Agreement under Federal Bankruptcy Rule 9019.

Accordingly, the Motion is denied without prejudice to the Liquidators' right to seek approval of the Settlement Agreement if they deem it necessary and appropriate. The Court has previously observed that there is a split of authority regarding whether a compromise of a claim is a sale within the meaning of § 363, *Fairfield Sentry III*, 539 B.R. at 671, and nothing that has been said is meant to resolve that question.

So ordered.

Dated: New York, New York
November 22, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge